UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WELLS FARGO BANK, N.A. : | |
|     Plaintiff : | |
| : | |
| v. : | Case No. 3:05 CV 1924 (CFD) |
| : | |
| MICHAEL KONOVER, ET AL. : | |
|     Defendant. : | |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

The plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo") brought this suit seeking to recover upon a judgment entered by the Circuit Court for Baltimore, Maryland in an action entitled <u>Wells Fargo Bank Minnesota, N.A., Trustee v. Diamond Point Plaza Limited Partnership, et al.</u>, No. 03-C-03-002449 (the "Maryland action") against Diamond Point Plaza, L.P. ("Diamond Point"), Oriole Commercial Associates, L.P., Konover Management Corporation ("KMC," a/k/a Peerless Corporation), Diamond Point Management Corporation ("DPMC"), American Way Commercial Associates, L.P. ("American Way"), and Michael Konover (collectively the "Judgment Debtors"), as well as others.[1] In its amended complaint Wells Fargo asserts seven counts against Michael Konover, Konover Development Corporation ("KDC"), Konover Construction Corporation ("KCC"), Konover & Associates, Inc. ("K&A"), Blackboard LLC, and Ripple LLC (collectively the "CT defendants"). The CT defendants move for summary judgment, claiming that Counts One, Two and part of Count Three are barred by the

---

[1] Sam's PW, Inc., Wal-Mart Stores, Inc. and MCK, Inc.

1

doctrine of res judicata.[2]

I.  Background[3]

    A.  The Konover Organization

Michael Konover is the sole shareholder, sole director and an officer of KDC, K&A, and until March 2007, KCC. Konover is the sole member of Blackboard and Ripple, and it is claimed that he also controls and substantially owns the Judgment Debtors. Wells Fargo alleges that together the Judgment Debtors, the CT defendants and other entities owned and controlled by Konover constitute a single business enterprise (the "Konover Organization"). The principal business of the Konover organization is the development of commercial real estate in the United States.

    B.  The Maryland Action

One of the properties developed by the Konover Organization was a shopping center known as Diamond Point Plaza in Baltimore, Maryland. In June 2002, Diamond Point borrowed $15.3 million from Pinnacle Capital Group, L.P., to refinance the mortgage on the Diamond Point Plaza. The mortgage was then assigned to Wells Fargo. Although the mortgage was non-recourse, KMC, DPMC, Diamond Point and Oriole were jointly and severally liable in the event of fraud or certain other inequitable conduct.

On November 1, 2002, Diamond Point failed to make its mortgage payment and went into default on November 6, 2002. On November 22, 2002, Diamond Point transferred $633,000

---

[2] Currently pending is a motion to dismiss Counts Four, Five, Six, Seven, and a portion of Count Three. This motion will be resolved through a separate order.

[3] The following facts are taken from the Rule 56 statements submitted by the parties, and the Findings of Fact and Conclusions of Law in the Maryland action.

2

in rental payments to Konover. On November 26, 2002, the Maryland Court appointed a receiver to manage the property.

In March 2003, Wells Fargo initiated the Maryland action seeking to hold the judgment debtors liable for the mortgage. The final amended complaint was filed in the Maryland action in July 2004. That third amended complaint asserted claims seeking to hold KMC, DPMC, Diamond Point and Oriole liable under the mortgage for fraud, intentional misrepresentation and gross negligence based on misrepresentations made by Diamond Point near the time the loan closed, for waste, and for wrongful transfer of rent payments after the default. The third amended complaint also sought to hold Konover, MCK, Inc. and American Way liable for the rental payment transfer.[4]

In May 2005, the Maryland court announced its intent to enter a substantial judgment for the plaintiffs, and in November 2005, the amended final judgment was entered. That judgment awarded over $22.8 million to Wells Fargo, including $633,000 as to Michael Konover. Following entry of the judgment, Wells Fargo engaged in post-judgment discovery aimed at locating the assets of KMC and the other judgment debtors.

C. Allegations against CT Defendants

Wells Fargo alleges that during post-judgment discovery it learned that, as it became increasingly apparent that KMC would be held liable for the mortgage, the CT defendants used their control over the judgment debtors to drain funds away from KMC and the other judgment debtors. For example, among other transfers, Wells Fargo alleges that in December 2002, KMC

---

[4] The Maryland Court found that "the heart of Wells Fargo's claims is for breach of contract under the non-recourse provisions of the Note, Mortgage and Guaranty."

made a $1.1 million "excess cash distribution" to Konover. Wells Fargo maintains that although KMC was insolvent by March 2003, it still had assets it could have used to satisfy a judgment at that point. Instead, more than $12 million of the Maryland Judgment remains unsatisfied.

II. Res Judicata[5]

"The doctrine of res judicata bars the litigation of a cause of action or claim after it has already been or could have been decided." Gertz v. Anne Arundel County, 339 Md. 261, 269, 661 A.2d 1157, 1161 (Md. 1995). As the Court of Appeals of Maryland explained in Gertz, res judicata "is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." Id. The elements of res judicata are:

> (1) the parties in the present litigation should be the same or in privity with the parties to the earlier case; (2) the second suit must present the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction.

Id.; see also Colandrea v. Wilde Lake Community Ass'n, Inc., 361 Md. 371, 389, 761 A.2d 899, 908 (Md. 2000).

The parties agree that the first and third elements are satisfied. Further, it is clear Wells Fargo's veil piercing claims were not brought in the Maryland action. The only issue in dispute is thus whether the veil piercing claims should have been included in the Maryland action.

---

[5] The parties agree that Maryland law controls the res judicata effect of the Maryland judgment. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986). The Court notes that both Connecticut and Maryland follow the Restatement (Second), Judgments (1982) on res judicata. See Comm'r of Envt'l Prot. V. Conn. Bldg. Wrecking Co., 227 Conn. 175, 189-90, 629 A.2d 1116 (1993)**;** Kent County Bd. And Educ. V. Bilbrough, 309 Md. 487, 499, 525 A.2d 232 (1987).

Determining whether a claim "could have been" litigated in the first suit is not always straightforward. In dealing with this issue, the Maryland courts "have adopted the 'transactional' approach set forth in § 24 of the restatement (Second) of Judgments: When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Colandrea v. Wilde Lake Community Ass'n, Inc., 361 Md. at 389-390 (internal quotation marks and alteration omitted). "In deciding whether a factual grouping constitutes a 'transaction,' the restatement directs a pragmatic approach, 'giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Id. (quoting Restatement (Second), § 24(2)).

Different legal theories based on the same episode do not create multiple claims, even if "the several legal theories depend on different shadings of facts, or would emphasize different elements of facts." Anne Arundel County Bd. of Educ. v. Norville, 390 Md. 93, 111, 887 A.2d 1029, 1039 (Md. 2005). However, a second theory of liability resting on the same facts might not be barred by res judicata if the second theory of liability had not acrued when the first action was litigated. Cf. Gertz v. Anne Arundel County, 339 Md. at 270 (holding that res judicata did not apply where the theory of liability in the second action "did not exist when the earlier suit was litigated.")

Wells Fargo argues (1) that the doctrine of res judicata does not bar its claims because

5

this is an action upon the Maryland judgment, and (2) that its claims here are distinct from its Maryland claims. Konover argues that Wells Fargo's Counts 1, 2 and a portion of 3 are so broad that they invite re-litigation of the Maryland action. Konover seeks to have these counts dismissed, and to require Wells Fargo to proceed, if at all, on narrowly tailored counts that more clearly plead only an action upon the Maryland judgment and new conduct.

    A.    <u>Veil Piercing under Instrumentality and Identity Theories</u>[6]

"The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." <u>Zaist v. Olson</u>, 154 Conn. 563, 575, 227 A.2d 552, 558 (Conn. 1967).

In <u>Zaist</u> the Supreme Court of Connecticut described the identity rule as follows:

> 'If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.'

---

[6] "The law of the state of incorporation determines when the corporate form will be disregarded." <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995) (applying New York choice of law principles); see also <u>Weber v. U.S. Sterling Securities, Inc.</u>, 282 Conn. 722, 730, 924 A.2d 816, 823 (Conn. 2007).

Id. at 576.

Under either theory, a court will ordinarily disregard the corporate structure and pierce the corporate veil, "only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc., 187 Conn. 544, 557, 447 A.2d 406 (1982) (internal quotation marks omitted).

Under both theories, matters presented in the Maryland action will be relevant to proving "complete domination" of the Judgment Debtors or "unity of interest" of the entities within the Konover Organization. In addition, both actions involve similar allegations and similar motivations–fraud and inequitable conduct within the Konover Organization to benefit members of the Organization at the expense of outside creditors. However, that both actions implicate some of the same evidence does not necessarily mean that the transactional test is satisfied or that res judicata applies.

Counts 1 and 2 are clearly addressed at recovering for a loss distinct from those at issue in Maryland. The claims here are based on the Judgment Debtors' inability to satisfy the Maryland judgment, rather than the mortgage default underlying that judgment.

Further, Counts 1 and 2 are substantially based on conduct that could not have been included in the Maryland action, or would have been beyond the scope of that action. Significant conduct is alleged to have occurred during and after the Maryland trial. Counts 1 and 2 also depend on conduct beyond the scope of the Maryland litigation because not directly related to Diamond Point Plaza. This conduct may be essential to proving "exceptional circumstances" warranting disregard of the corporate form, but would not have been part of a "convenient trial

7

unit" in Maryland.

Thus, although the facts at issue in the Maryland action overlap with the facts at issue in this case, the differences are more significant than mere "shadings of facts." Instead the cases lack a "common nucleus of operative facts."  See GLF Constr. Corp. v. LAN/STV, 414 F.3d 553, 555 n.2 (5th Cir. 2005) (claims and defenses are the same for res judicata purposes when they arise from a "common nucleus of operative facts") cited by Anne Arundel County Bd. of Educ. v. Norville, 390 Md. at 109.  Accordingly, the Court finds that the doctrine of res judicata does not require entry of summary judgment in favor of the defendants on Counts 1 and 2.

B.  Fraudulent Transfer

The defendants only challenge Count 3 to the extent it seeks to re-litigate the $633,000 rental payment transfer to Konover.  Wells Fargo maintains that this transfer is not included in Count 3, and admits that this transfer was fully litigated in Maryland.  To the extent that the $633,000 transfer is included in Count 3, the Court finds that it is barred by the doctrine of res judicata.

III.  Conclusion

The defendants' motions for summary judgment [Dkt. ## 164, 168] are GRANTED in part and DENIED in part.

SO ORDERED this  20th   day of March 2008 at Hartford, Connecticut.

   /s Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**