UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WELLS FARGO BANK, N.A. TRUSTEE | : |
| Plaintiff, | : |
| vs. | : No. 3:05CV1924(CFD)(WIG) |
| MICHAEL KONOVER, et al | : |
| Defendants. | : MARCH 4, 2009 |

**RULING ON PLAINTIFF'S MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA DUCES TECUM (DOC. # 80)**

By motion dated July 27, 2006, Plaintiff moved, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to compel compliance with a subpoena duces tecum dated July 11, 2006 served on non-party Kostin Ruffkess & Company, LLC ("Kostin Ruffkess"). For the reasons stated herein, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

This action was commenced on December 15, 2005 by plaintiff Wells Fargo Bank, N.A., Trustee, against defendants Michael Konover, Konover Development Corp., ("KDC"), Konover Construction Corp., ("KCM"), Konover & Associates, Inc. ("K&A"), Blackboard LLC ("Blackboard") and Ripple LLC ("Ripple"). In its original four-count complaint, Plaintiff alleged that on November 16, 2005, it obtained a judgment against non-parties Diamond Point Plaza, L.P. ("Diamond Point"), Oriole Commercial Associates, L.P. ("Oriole"), Konover Management Corp. ("KMC") and Diamond Point Management Corp. ("Diamond Point Management") (collectively referred to herein as the "Maryland Judgment Debtors") equal to more than $22.8 million in the Circuit Court for Baltimore County, Maryland in an action entitled <u>Wells Fargo Bank Minnesota, N.A., Trustee v. Diamond Point Plaza Limited</u>

Partnership, et al, No. 03-C-03-002449, of which more than $12 million remains unpaid. In addition, it was alleged that defendant Michael Konover was held liable for a fraudulent transfer of $633,000 of rents of non-party Diamond Point Plaza, L.P. for which Michael Konover has posted bond in connection with his appeal of the Maryland Judgment (Complaint ¶ 9-10). In the First and Second Counts of the Complaint, Plaintiff sought to pierce the corporate veil between the Maryland Judgment Debtors and the Defendants so as to impose liability on the Defendants for the Maryland judgment against the Maryland Judgment Debtors. In the Third Count, Plaintiff sought to have certain Defendants held accountable for three specific transfers or categories of transfers from one or more of the non-party Maryland Judgment Debtors to one or more of the Defendants. In the Fourth Count, Plaintiff alleged that the Defendants tortiously interfered with a contract and prospective contract between it and Wal-Mart/Sam's and The Wire.

By ruling dated April 12, 2007 (Doc. # 176) ("April 12 Ruling"), clarified on April 26, 2007 (Doc. # 180) ("April 26 Ruling"), the Special Master denied in part and denied without prejudice in part Plaintiff's motion to compel defendants Michael Konover, Blackboard, Ripple, KDC, KCC and K&A to produce documents responsive to Plaintiff's First Requests for Production of Documents dated July 11, 2006. These Rulings were confirmed by the Court by order dated September 12, 2007 (Doc. # 261). The document requests which were the subject of the April 12, 2007 and April 26, 2007 Rulings, related to non-parties referred to as "Defendant Affiliated Entities" and to transactions between or among the Defendants and between or among the Defendants and "Defendant Related Entities" from June 2, 2000 to the present.

In the April 12, 2007 Ruling, the Special Master held that the documents sought concerning "Defendant Affiliated Entities" and transactions between Defendants and those

2

entities were not relevant to any claim or defense of any party in this action in part because the Complaint alleged only three specific categories of fraudulent conveyances between one or more of the Maryland Judgment Debtors and one or more of the Defendants in this action and none involved fraudulent conveyances to nonparty "Defendant Affiliated Entities." (April 12 Ruling at 7). The Special Master also held that the transactions between Defendants and the "Defendant Affiliated Entities" were not relevant to the veil-piercing claims in the First and Second Counts of the Complaint because Plaintiff conceded that these counts did not seek to pierce the corporate veil between Defendants and any of the "Defendant Affiliated Entities," none of which were specifically identified in the Complaint. (April 12 Ruling at 8-9). The Special Master also ruled that even were the transactions with "Defendant Affiliated Entities" relevant to Plaintiff's veil-piercing claims, the relevance was too unsubstantial to outweigh the considerable burden and expense of producing documents relating to 222 or more other entities. (April 12 Ruling at 13-16).

By motion dated April 26, 2007 (Doc. # 179), Plaintiff requested a clarification of the Special Master's April 12, 2007 Ruling to state whether Plaintiff could obtain discovery concerning transfers of the assets or business activities of Maryland Judgment Debtor KMC, now known as Peerless Corporation, to entities that Defendant Michael Konover owned or controlled. By Ruling dated April 26, 2007 (Doc. # 180), the Special Master held that Plaintiff may not discover transfers of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve transfers of assets or business activities between the Maryland Judgment Debtors and the Defendants in this action. The Complaint asserted claims that the corporate veil should be pierced with respect to Defendants and the Maryland Judgment Debtors and Plaintiff conceded that it was not asserting a claim that the corporate veil should be pierced

3

between Maryland Judgment Debtor KMC and entities that Michael Konover controlled. It asserted only three categories of fraudulent conveyances, including a $1.1 million excess cash distribution by Maryland Management Corp. to Michael Konover, transfers in and out of the common bank account of assets and funds of the Maryland Judgment Debtors to the Defendants; and the transfer of Maryland Judgment Debtor KMC assets to defendants Blackboard and Ripple. In the April 26, 2007 Ruling, the Special Master reiterated that even if there were some tangential relevance within the broad scope of relevance applicable to discovery, the expense and burden of collecting and reviewing documents concerning transactions among the Defendants, the Maryland Judgment Debtors and at least 222 other entities would outweigh the likely benefit of this evidence. (April 26 Ruling at 3-4).

     Subsequent to the Court's confirmation of the Special Master's April 12 and 26, 2007 Rulings, Plaintiff amended its complaint. The Amended Complaint dated October 18, 2007 (Doc. # 285), in addition to repeating the general allegations concerning Michael Konover's ownership and control of the Judgment Debtor and "other entities owned or controlled by Michael Konover," included a list of those other entities. (Amend. Compl. ¶ 13 and Ex. A) and made the same general allegations made in paragraphs 14 and 15 of the Complaint that "[t]he constituent entities of the Konover Organization have a unity of interest and ownership that is evidenced, *inter alia*, by the fact that they consistently disregard corporate formalities, and are operated as a single business and share the same officers, employees, bank account, website and some of the same office space" (Amend. Compl. ¶ 14) and that "[t]he Defendants have caused the assets of the Judgment Debtors to be transferred to, or for the benefit of, Michael Konover or to other entities he owns and controls in an effort to put them beyond the reach of the [Plaintiff] Trustee." (Amend. Compl. ¶ 15). Plaintiff

amplified its claim of fraudulent conveyances in the Third Count by specifying a number of specific transfers of Maryland Judgment Debtor KMC to defendant Ripple on June 24, 2005, the transfer of KMC's property interests to defendants Michael Konover, Blackboard and Ripple and the transfer of KMC's share of interest earned on commingled funds in the Konover Organization's joint bank account.

Plaintiff's Amended Complaint also added Fifth, Sixth and Seventh Counts. In the Fifth Count, Plaintiff alleges that defendant Michael Konover breached a fiduciary duty he owed to Plaintiff as a creditor of Maryland Judgment Debtor KMC by failing to preserve the assets of KMC. In the Sixth Count, Plaintiff alleges that defendants KDC, Blackboard and Ripple are liable to Plaintiff for the debts of Maryland Judgment Debtor KMC, as successors in interest to KMC. In the Seventh Count, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's subordination agreement with Maryland Judgment Debtor KMC.

### A.  Documents Plaintiff Seeks from Non-Party Kostin Ruffkess

In connection with Plaintiff's motion to compel production of documents from non-party Kostin Ruffkess, three issues remain unresolved between Plaintiff and Kostin Ruffkess:

1. The scope of documents discoverable from Kostin Ruffkess relating to Konover Management Corp. (now known as Peerless Corporation), a non-party Maryland Judgment Debtor;

2. Whether documents concerning non-party Account Management LLC are discoverable from Kostin Ruffkess; and

3. Whether production of the documents sought from non-party Kostin Ruffkess would be unduly burdensome and expensive.

B.   **Legal Principles Governing Discovery from a Non-Party**

> Fed. R. Civ. P. 26(c) provides:
>
> Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . .
>
> (1) that the disclosure or discovery not be had; . . . (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters; . . . and (7) that a trade secret or other confidential research, development or commercial information not be revealed only in a designated way . . . .

A court is given broad discretion regarding whether to issue a protective order. See, e.g., Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005). However, a court may issue a protective only after the moving party demonstrates good cause. In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987); LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005). "To establish good cause under Rule 26(c), courts require a particularized demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (internal quotation marks and citations omitted). See also Klein v. AIG Trading Group Inc., 228 F.R.D. 418, 422 (D. Conn. 2005) ("[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded by the federal discovery rules, each [request] is not relevant or how each request is overly broad by submitting affidavits or offering evidence revealing the nature of the burden." (quoting Compagnie Francaise d'Asurrance Pour le Commerce Exterieur v. Philips Petroleum Co., 105 F.R.D. 16, 42

(S.D.N.Y. 1984) (internal citations and quotation marks omitted); Lamourex v. Genesis Pharmacy Services, Inc., 226 F.R.D. 154, 159 (D. Conn. 2004) (same).  However, the party seeking discovery must make at least a *prima facie* showing that the discovery sought is more than merely a fishing expedition.  See, e.g., Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); Abu-Nassar v. Elders Futures, Inc., 1991 WL 45062, at *16 (S.D.N.Y. Mar. 28, 1991).  See also Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 (2nd Cir. 1981) ("where a plaintiff fails to produce any specific facts whatsoever to support a[n]. . . allegation, a district court may in its discretion, refuse to permit discovery . . . .").

The permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties.  See, e.g., In re Publication Papers Antitrust Litigation, 2005 WL 169633, at *2 (D. Conn. July 5, 2005) (Underhill, J.) (granting motion to quash deposition subpoena served on individual members of putative class because Court was not convinced that the requested discovery was needed with respect to class certification issues); Richter v. Mutual of Omaha Ins. Co., 2006 WL 1277090, at *2 (E.D. Wis. May 5, 2006); Graham v. Casey's Gen. Stores, 206 F.R.D. 251, 253 (S.D. Ind. 2002) (granting in part and denying in part non-party's motion to quash subpoena).

The burden on the party from which discovery is sought must, of course, be balanced against the need for the information sought.  See, e.g., Abu-Nassar v. Elders Futures, Inc., 1991 WL 45067 (S.D.N.Y. 1991); Jeld-Wen, Inc. v. Nebula Glass International, Inc., 2007 WL 1526649, at *2 (S.D. Fla. May 22, 2007) ("holding the party opposing discovery "must show that the requested discovery does not come within the broad scope of relevance as defined under Rule 26 or . . . is of such marginal relevance

that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad discovery"). Fed. R. Civ. P. 26(b)(20(C) provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

In balancing the need for discovery against the burdens imposed by the discovery requested, some courts have held that the court may consider the fact that discovery is being sought from a third party, which weighs against permitting discovery. See, e.g., Medical Components, Inc. v. Classical Medical, Inc., 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002); Echostar Communications v. The News Corp., Ltd., 180 F.R.D. 391, 394 (D. Colo. 1998).

C.  **The Relevance of the Information and Documents Sought**

   1.  **The limits on discovery imposed by the Special Master's April 12 and April 26, 2007 Rulings**

Defendants argue that discovery concerning the entities and properties not owned at the time of the fraudulent conveyances alleged in the Third Count of the Amended Complaint is beyond the scope of permissible discovery as determined by the Special Master's prior decisions. (Def. Mem. dated Sept. 10, 2008 at 8-10). In the April 12 Ruling, the Special Master held:

> The documents sought concerning "Defendant Affiliated Entities" and transactions between Defendants and those entities are not relevant to any claim or defense of any party in this action. As to Plaintiff's fraudulent conveyance claims in the Third Count, the Complaint only alleges three specific fraudulent conveyances between one or more of the judgment debtors in the Maryland action and one or more of the Defendants in this action. None involve conveyances to nonparty "Defendant Affiliated Entities," (See Complaint, Third Count).

(Apr. 12 Ruling at 7). The Special Master also ruled:

> Nor are transactions between defendants and the "Defendant Affiliated Entities" relevant to the veil-piercing claims in First and Second Counts of the Complaint. Plaintiff concedes that these counts do not seek to pierce the corporate veil between Defendants and any of the "Defendant Affiliated Entities." (Trans. of Arg. on Mar. 21, 2007 at 70).

(Apr. 12 Ruling at 8). In the April 26, 2007 Ruling on Plaintiff's Motion for Clarification, the Special Master held:

> Plaintiffs may not discover transfer of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve transfers of assets or business activities between the judgment debtors in the Maryland Action of the Defendants in the action.

(Apr. 26 Ruling at 1-2). The April 26 Ruling went on to state:

> Finally, Plaintiff appears to have an easily available remedy. If it believes that it has sufficient evidence to support a good faith claim that the corporate veil between the Maryland judgment debtors and one or more of these 222 "Defendant Affiliated Entities" should be pierced, or if it believes that it has sufficient evidence to support a good faith claim that there were fraudulent conveyances between the Maryland judgment debtors and one or more of these "Defendant Affiliated Entities," it can move to amend its Complaint and make them defendants. Under these circumstances, discovery concerning transfers between them and

9

> the Maryland judgment debtors would be "relevant to the claim . . . of any party;" Fed. R. Civ. P. 26 (b)(1); and information concerning those transfers would clearly be discoverable.

(Apr. 26 Ruling at 4).

As the Special Master held in the April 26, Ruling, "Plaintiffs may not discover transfers of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve transfers of assets or business activities between the judgment debtors in the Maryland Action and the defendants in this action. (Apr. 26 Ruling at 1-2). The April 26 Ruling recognized that information concerning transfers of assets and business activities between Defendants and non-party affiliated entities might be relevant to Plaintiff's veil piercing claims between Defendants and the Maryland Judgment Debtors and to Plaintiff's claims of fraudulent transfers between Defendants and the Maryland Judgment Debtors. The resolution of the issue posed by Defendants and non-party Kostin Ruffkess to Plaintiff's motion to compel is whether the information Plaintiff seeks from Kostin Ruffkess is sufficiently relevant to these claims to come within the scope of permissible discovery and whether Plaintiff's need for the documents subpoenaed outweighs the burden and expense of compliance.

2. **Relevance of documents sought**

   a. **Documents concerning the value of Maryland Judgment Debtor KMC (now known as Peerless)**

Defendants and Kostin Ruffkess object to the production by non-party Kostin Ruffkess and information relating to the value of assets and entities in which Maryland Judgment Debtor KMC had an ownership interest during the time period 2000 through 2006. Plaintiff claims that this information is relevant to two issues: (1) the claim in Third Count of the Amended Complaint that the transfer of a number of interests in a number of

limited partnerships and limited liability companies in 2005 from KMC to Michael Konover, defendant Blackboard LLC, and Ripple LLC were fraudulent; (2) the claim that the value of Maryland Judgment Debtor KMC during the period between 2000 and 2006 is relevant to Plaintiff's claim that the corporate veil should be pierced as stated in the First and Second Counts of the Amended Complaint.

Defendants argue that only a relatively small number of interests owned by KMC during the 2000 through 2006 period were owned by KMC in 2005 when the alleged fraudulent transfers were made and that, therefore, the values of the interests which KMC did not own in 2005 are not relevant to Plaintiff's fraudulent transfer claims. (Def. Resp. Mem. dated Sept. 10, 2008 at 6-12). Plaintiff argues that the value of interests owned by Maryland Judgment Debtor KMC are not only relevant to its fraudulent transfer claims, but are also relevant to its veil-piercing claims regarding KMC. (Pl. Mem. dated Aug. 18, 2008 at 2-3; Tr. of Hearing on Nov. 24, 2008, p. 334-35). Plaintiff also argues that valuations prepared prior to 2005 may be relevant to the value of the interests transferred in 2005. (Id. at 336) and that the methods and procedures used to value properties other than those owned in 2005 may be relevant in assessing the valuations prepared concerning the properties owned in 2005 (Id. at 336-37).

Defendants concede that Plaintiff is entitled to discover documents relating to the value of properties owned by the 20 entities referred to in the Third Count and the 33 properties owned by those entities. (Id. at 330-31). This should include not only documents relating to the value of those interests and properties but also documents relating to the value of those properties and interests between 2000 and 2006. However, the production of information relating to interests and properties not claimed to have fraudulently been transferred in 2005 so that Plaintiff can compare the methods and

11

procedures used in those valuations to the valuations of the interests transferred in 2005 and the properties owned by those entities is not likely to produce evidence sufficiently probative of Plaintiff's fraudulent transfer claims to outweigh the substantial burden and expense of production as discussed later in this Ruling.

Whether documents relating to the value of interests not claimed to have fraudulently been transferred and the properties owned by those entities between 2000 and 2006 is reasonably calculated to lead to the discovery of admissible evidence sufficiently probative of Plaintiff's veil-piercing claims to outweigh the substantial burden and expense of production is a closer question. KMC, now known as Peerless, is a Maryland Judgment Debtor and Plaintiff is clearly claiming that the corporate veil between KMC and the Defendants should be pierced. In his Ruling on Non-Party Peerless Corporation's Motion to Modify Subpoena and for Protective Order Dated May 29, 2007 (Doc. # 204) and Plaintiff's Cross-Motion to Compel Deposition Answers Directed at Peerless Corporation Dated June 19, 2007 (Doc. # 218) dated July 7, 2008 (Doc. # 435), the Special Master held that information concerning KMC's (Peerless's) financial statements and financial condition during the time beginning June 2, 2000 to the present, including whether KMC (Peerless) was solvent during the specified time, was relevant to whether KMC (Peerless) was solvent during that time. Id. at 18-21. Inadequate capitalization of an allegedly dominated entity is a factor in determining whether the corporate veil should be pierced. Litchfield Asset Management Corp. v. Howell, 70 Conn. App. 133, 152, 799 A.2d 298, 313 (2002). See also Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Wm. Passalaqua Builders v. Resnick Developer South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). No motion for clarification or reconsideration was filed in connection with the Special Master's July 7, 2008 ruling.

12

Defendants and Kostin Ruffkess do not challenge the relevance of KMC's capitalization or solvency. The only question, therefore, is whether Plaintiff is entitled to discovery of documents in the possession, custody or control of Kostin Ruffkess concerning the valuation of assets owned by KMC or whether Plaintiff is entitled only documents that reflect the overall value of KMC. Although the valuation or solvency of KMC is the ultimate question, Defendants and Kostin Ruffkess present no persuasive argument as to why evidence of the value of assets owned by KMC is not relevant to that ultimate question. Such evidence seems clearly relevant to Plaintiff's claim that the corporate veil of Maryland Judgment Debtor should be pierced.

Defendants argue, however, that until 2005 when the interests of KMC were allegedly fraudulently transferred, KMC's one percent interests in the various entities in which it owned interests were maintained and that the value of KMC's interests in the entities that were sold prior to 2005 was the $1.1 million that was distributed to defendant Michael Konover. (Tr. of Hearing on Nov. 24, 2008 at 335).

Defendants and Kostin Ruffkess have persuasively argued that searching for and producing documents reflecting the value of properties owned by entities in which Maryland Judgment Debtor KMC owned an interest prior to 2005 but did not own in 2005 at the time of the alleged fraudulent transfers, would be substantial. (See Kostin Ruffkess Mem. dated Sept. 11, 2008; Kostin Mem. dated Aug. 8, 2006), and that requiring production of documents concerning the value of approximately 170 closely held entities and 110 minority interest properties would require the review of tens of thousands of pages of documents taking a minimum of four months and a document-by-document review of voluminous files.

Although evidence that an allegedly dominated entity is inadequately capitalized is theoretically relevant where, as here, a veil-piercing claim is made, in order for the potential value of the discovery sought from non-party Kostin Ruffkess to outweigh the substantial burden and expense of identifying and producing the subpoenaed documents concerning an entity which owned a substantial number of interests in other property-owning entities, requires at least some showing that Plaintiff has a credible claim that Maryland Judgment Debtor may have been inadequately capitalized. There is nothing in the record here that indicates that Maryland Judgment Debtor KMC was inadequately capitalized prior to 2005. Therefore, non-party Kostin Ruffkess will not be required to produce, other than as shown on KMC's overall valuations or tax returns, or the value of KMC reflected on defendant Michael Konover's tax returns, documents concerning the value of properties owned by entities in which KMC owned an interest other than those that concern the 20 entities referred to in the Third Count of the Amended Complaint concerning alleged fraudulent conveyances and the 33 properties owned by those entities. This ruling is without prejudice, however, to Plaintiff reasserting a right to more extensive discovery of the value of KMC prior to 2005 if, based on a review of the documents ordered to be produced, it can make a credible showing that Maryland Judgment Debtor KMC may have been inadequately capitalized.

      **b.**    **Relevance of documents concerning non-party Account Management LLC**

Defendants and non-party Kostin Ruffkess have objected to producing documents subpoenaed from Kostin Ruffkess in Plaintiff's July 11, 2006 subpoena duces tecum. This subpoena requests production of a variety of documents from Defendants or "Defendant Affiliated Entities," including such things as tax returns, financial statements, tax consulting

work and transactions with Defendants and other "Defendant Affiliated Entities." Although non-party Account Management LLC ("Account Management") is not identified by name in the subpoena, it comes within the definition of "Defendant Affiliated Entities."

Neither Defendants nor Kostin Ruffkess have made any particularized showing concerning whether compliance with respect to the July 11, 2006 subpoena concerning Account Management would impose undue burden or expense on Kostin Ruffkess beyond that imposed by compliance with respect to Defendants. Therefore, the issue is whether information concerning non-party Account Management is relevant to any claims or defenses in this action. This issue was addressed at length by the Special Master in connection with the Ruling on Plaintiff's Motion to Compel Compliance With Requests 4 and 5 of Plaintiff's October 26, 2007 Requests for Production (Doc. # 359) dated March 4, 2009. In that Ruling, the Special Master held that discovery concerning Account Management was relevant because Plaintiff was asserting a veil-piercing claim concerning it and information relating to its operation of a common cash account used by Defendants and others could lead to the discovery of relevant information concerning Plaintiff's veil-piercing claims. For the reasons stated in that Ruling, non-party Kostin Ruffkess is required to produce documents concerning Account Management in connection with Plaintiff's July 11, 2006 subpoena.

## CONCLUSION

For the reasons stated herein Plaintiff's motion to compel non-party Kostin Ruffkess & Company, LLC ("Kostin Ruffkess") to comply with a subpoena dated July 11, 2006 **(Doc. # 80)** is **GRANTED IN PART** and **DENIED IN PART**. Kostin Ruffkess is required to produce documents relating to the value of interests in entities referred to in the Third Count of the Amended Complaint and the 33 properties owned by those entities in 2005,

including documents relating to the value of those interests and properties between 2000 and 2006. This ruling is without prejudice to Plaintiff reasserting a right to more extensive discovery of the value of Maryland Judgment Debtor KMC, Inc., ("KMC") now known as Peerless Corporation, if, based on a review of the documents ordered produced, it can make a credible showing that Maryland Judgment Debtor KMC was inadequately capitalized. Kostin Ruffkess shall also produce in response to Plaintiff's July 11, 2006 subpoena documents relating to non-party Account Management LLC. Kostin Ruffkess shall produce the documents required by this order to be produced within 60 days of the date this order becomes final.

Pursuant to Fed. R. Civ. P. 53 (g)(2) and the order of this Court dated November 7, 2006, any party may file objections to -- or a motion to adopt or modify -- this Ruling no later than 20 days from the time this Ruling is served.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master