## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WELLS FARGO BANK, N.A. TRUSTEE            :

       Plaintiff,            :

   vs.            :   No. 3:05CV1924(CFD)(WIG)

MICHAEL KONOVER, et al            :
        Defendants.            :   MARCH 4, 2009

### RULING ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER
### REGARDING PLAINTIFF'S SUBPOENA DIRECTED TO
### <u>KOSTIN RUFFKESS & CO DATED DECEMBER 19, 2007 (DOC. # 333)</u>

By motion dated December 19, 2007, defendants Michael Konover, Konover

Development Corporation ("KDC"), Konover Construction Corporation ("KCC"), Konover &

Associates, Inc. ("K&A"), Blackboard LLC ("Blackboard") and Ripple LLC ("Ripple") moved

for a protective order concerning various topics or areas of inquiries identified in a civil

subpoena and Fed. R. Civ. P. 30 (b)(6) notice of deposition dated November 1, 2007, as

amended by an amended notice of deposition dated November 29, 2007, served by

Plaintiff Wells Fargo Bank, N.A., Trustee ("Wells Fargo" or "Plaintiff") on non-party Kostin,

Ruffkess & Company LLC ("Kostin Ruffkess"). **(Doc. # 333)**.  By letter dated July 30, 2008,

counsel for Defendants has advised the Special Master that resolution is required only with

respect to Defendants' motion for a protective order concerning deposition topics 18, 23

and 24.  For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and

**DENIED IN PART**.

This action was commenced on December 15, 2005 by plaintiff Wells Fargo against

defendants Michael Konover, KDC, KCC, K&A, Blackboard and Ripple.  In its original four-

count complaint, Plaintiff alleged that on November 16, 2005, it obtained a judgment against non-parties Diamond Point Plaza, L.P. ("Diamond Point"), Oriole Commercial Associates, L.P. ("Oriole"), Konover Management Corp. ("KMC") and Diamond Point Management Corp. ("Diamond Point Management") (collectively referred to in this Ruling as the "Maryland Judgment Debtors") equal to more than $22.8 million in the Circuit Court for Baltimore County, Maryland in an action entitled Wells Fargo Bank Minnesota, N.A., Trustee v. Diamond Point Plaza Limited Partnership, et al, No. 03-C-03-002449, of which more than $12 million remains unpaid.  In addition, it was alleged that defendant Michael Konover was held liable for a fraudulent transfer of $633,000 of rents of nonparty Diamond Point Plaza, L.P. for which Michael Konover has posted bond in connection with his appeal of the Maryland Judgment (Complaint ¶ 9-10).  In the First and Second Counts of the Complaint, Plaintiff sought to pierce the corporate veil between the Maryland Judgment Debtors and the Defendants so as to impose liability on the Defendants for the Maryland judgment against the Maryland Judgment Debtors.  In the Third Count, Plaintiff sought to have certain Defendants held accountable for three specific transfers or categories of transfers from one or more of the non-party Maryland Judgment Debtors to one or more of the Defendants.  In the Fourth Count, Plaintiff alleged that the Defendants tortiously interfered with a contract and prospective contract between it and Wal-Mart/Sam's and The Wire.

By ruling dated April 12, 2007 **(Doc. # 176)** ("April 12 Ruling"), clarified on April 26, 2007 **(Doc. # 180)** ("April 26 Ruling"), the Special Master denied in part and denied without prejudice in part Plaintiff's motion to compel defendants Michael Konover, Blackboard, Ripple, KDC, KCC and K&A to produce documents responsive to Plaintiff's First Requests for Production of Documents dated July 11, 2006.  These Rulings were confirmed by the

2

Court by order dated September 12, 2007 **(Doc. # 261)**.  The document requests which were the subject of the April 12, 2007 and April 26, 2007 Rulings related to non-parties referred to as "Defendant Affiliated Entities" and to transactions between or among the Defendants and between or among the Defendants and "Defendant Related Entities" from June 2, 2000 to the present.

In the April 12, 2007 Ruling, the Special Master held that the documents sought concerning "Defendant Affiliated Entities" and transactions between Defendants and those entities were not relevant to any claim or defense of any party in this action in part because the Complaint alleged only three specific categories of fraudulent conveyances between one or more of the Maryland Judgment Debtors and one or more of the Defendants in this action and none involved fraudulent conveyances to nonparty "Defendant Affiliated Entities." (April 12 Ruling at 7).  The Special Master also held that the transactions between Defendants and the "Defendant Affiliated Entities" were not relevant to the veil-piercing claims in the First and Second Counts of the Complaint because Plaintiff conceded that these counts did not seek to pierce the corporate veil between Defendants and any of the "Defendant Affiliated Entities," none of which were specifically identified in the Complaint. (April 12 Ruling at 8-9).  The Special Master also ruled that even were the transactions with "Defendant Affiliated Entities" relevant to Plaintiff's veil-piercing claims, the relevance was too unsubstantial to outweigh the considerable burden and expense of producing documents relating to 222 or more other entities.  (April 12 Ruling at 13-16).

By motion dated April 26, 2007 **(Doc. # 179)**, Plaintiff requested a clarification of the Special Master's April 12, 2007 Ruling to state whether Plaintiff could obtain discovery concerning transfers of the assets or business activities of Maryland Judgment Debtor KMC, now known as Peerless Corporation, to entities that Defendant Michael Konover

3

owned or controlled.  By Ruling dated April 26, 2007 **(Doc. # 180)**, the Special Master held

that Plaintiff may not discover transfers of assets or business activities between the

Defendants and "Defendant Affiliated Entities" except to the extent that they involve

transfers of assets or business activities between the Maryland Judgment Debtors and the

Defendants in this action.  The Complaint asserted claims that the corporate veil should be

pierced with respect to Defendants and the Maryland Judgment Debtors and Plaintiff

conceded that it was not asserting a claim that the corporate veil should be pierced

between Maryland Judgment Debtor KMC and entities that Michael Konover controlled.  It

asserted only three categories of fraudulent conveyances, including a \$1.1 million excess

cash distribution by Maryland Management Corp. to Michael Konover, transfers in and out

of a common bank account of assets and funds of the Maryland Judgment Debtors to the

Defendants; and the transfer of Maryland Judgment Debtor KMC assets to defendants

Blackboard and Ripple.  In the April 26, 2007 Ruling, the Special Master reiterated that

even if there were some tangential relevance within the broad scope of relevance

applicable to discovery, the expense and burden of collecting and reviewing documents

concerning transactions among the Defendants, the Maryland Judgment Debtors and at

least 222 other entities would outweigh the likely benefit of this evidence. (April 26 Ruling at

3-4).

Subsequent to the Court's confirmation of the Special Master's April 12 and 26, 2007

Rulings, Plaintiff amended its complaint.  The Amended Complaint dated October 18, 2007

**(Doc. # 285)**, in addition to repeating the general allegations concerning Michael Konover's

ownership and control of the Judgment Debtor and "other entitles owned or controlled by

Michael Konover," included a list of those other entities. (Amend. Compl. ¶ 13 and Ex. A)

and made the same general allegations made in paragraphs 14 and 15 of the Complaint

4

that "[t]he constituent entities of the Konover Organization have a unity of interest and ownership that is evidenced, *inter alia*, by the fact that they consistently disregard corporate formalities, and are operated as a single business and share the same officers, employees, bank account, website and some of the same office space" (Amend. Compl. ¶ 14) and that "[t]he Defendants have caused the assets of the Judgment Debtors to be transferred to, or for the benefit of, Michael Konover or to other entities he owns and controls in an effort to put them beyond the reach of the [Plaintiff] Trustee." (Amend. Compl. ¶ 15). Plaintiff amplified its claim of fraudulent conveyances in the Third Count by specifying a number of specific transfers of Maryland Judgment Debtor KMC to defendant Ripple on June 24, 2005, the transfer of KMC's property interests to defendants Michael Konover, and KMC's share of interest earned on commingled funds in the Konover Organization's joint bank account.

Plaintiff's Amended Complaint also added Fifth, Sixth and Seventh Counts. In the Fifth Count, Plaintiff alleges that defendant Michael Konover breached a fiduciary duty he owed to Plaintiff as a creditor of Maryland Judgment Debtor KMC by failing to preserve the assets of KMC. In the Sixth Count, Plaintiff alleges that defendants KDC, Blackboard and Ripple are liable to Plaintiff for the debts of Maryland Judgment Debtor KMC, as successors in interest to KMC. In the Seventh Count, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's subordination agreement with Maryland Judgment Debtor KMC.

## A. Topics Concerning Which Plaintiff Seeks to Depose Non-Party Kostin Ruffkess

Plaintiff seeks to depose non-party Kostin-Ruffkess concerning certain "Portfolio Sales". The term "Portfolio Sales" is defined in the subpoena to mean "the group of sales of properties held by entities in which Peerless held an ownership interest that occurred in 2002

and 2003 in connection with which Defendants K&A and KDC received proceeds form the

sales referred to as 'sales expenses', 'sales commissions,' 'leasing fees', or 'lease

commissions.'" (Def. Mem. dated Dec. 19, 2007, Ex. 1). "Peerless" is Maryland Judgment

Debtor Peerless Corporation, formerly known as Konover Management Corporation. Items

23 and 24 of Plaintiff's subpoena relate to these "Portfolio Sales." Plaintiff seeks to depose

non-party Kostin-Ruffkess concerning:

> 23.    All professional services provided by Kostin, Ruffkess concerning the Portfolio
> Sales, including any accounting or tax services or advice rendered to any of the
> Defendants or Judgment Debtors concerning the Portfolio Sales.

> 24.    Charges made and fees received in connection with any of the services You
> provided in connection with the activities described in topic number twenty-
> three.

Plaintiff also seeks to depose non-party Kostin-Ruffkess concerning transactions with

family members of defendant Michael Konover, including:

> 18.    All Transactions, including without limitation distributions, contribution and
> compensation, among and/or between any of the Defendants, Judgment
> Debtors, MCK, or KFLP and any family members of Michael Konover,
> including the accounting treatment of any such Transaction.

"MCK" is MCK, Inc. "KFLP" is the Konover Family Limited Partnership. Neither MCK nor

KFLP is a defendant nor a Maryland Judgment Debtor. The term "Transaction" is defined in

the subpoena to mean "any (i) payment or transfer of cash or cash equivalent (or contract or

invoice for payment or transfer of cash or cash equivalent); (ii) sale, exchange or leasing of

any property (or contract to sell, exchange or otherwise transfer property; (iii) lending of any

money or other extension or guarantee of credit (or contract for lending of any money or

extension or guarantee of credit); (iv) furnishing of goods services, for facilities (or contract or

invoice to furnish goods, services or facilities); (v) transfer to, or use by or for the benefit of

one Person of an assert or asserts of the other (or contract to transfer to, or use by or for the benefit of one Person of an asset or assets of the other), or (vi) any management fee arrangements, cost reimbursement agreements, construction agreements, consulting or representation agreements, grounds lease or profit-sharing agreements, or any other service or good payments."

## B.    Defendants' Motion for a Protective Order

Defendants move for a protective order with respect to the deposition subpoena served on non-party Kostin Ruffkess on the following grounds: (1) information pertaining to non-party "Defendant Affiliated Entities" and non-parties MCK and KFLP are beyond the scope of permissible discovery as determined in the Special Master's April 12 and April 26 Rulings; and (2) the topics addressed in this ruling are the subject of pending unresolved discovery motions or objections filed by Defendants or non-parties MCK, KFLP, Victoria Konover and Maryland Judgment Debtor KMC, now known as Peerless, Inc.

## C.    Legal Principles Governing Discovery from a Non-Party

Fed. R. Civ. P. 26(c) provides:

Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . .

(1) that the disclosure or discovery not be had; . . . (4) that certain matters not be inquired into, or that the scope of discovery be limited to certain matters; . . . and (7) that a trade secret or other confidential research, development or commercial information not be revealed only in a designated way . . . .

7

A court is given broad discretion regarding whether to issue a protective order. See, e.g., Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005). However, a court may issue a protective only after the moving party demonstrates good cause. In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987); LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005). "To establish good cause under Rule 26(c), courts require a particularized demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (internal quotation marks and citations omitted). See also Klein v. AIG Trading Group Inc., 228 F.R.D. 418, 422 (D. Conn. 2005) ("[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded by the federal discovery rules, each [request] is not relevant or how each request is overly broad by submitting affidavits or offering evidence revealing the nature of the burden." (quoting Compagnie Francaise d'Asurrance Pour le Commerce Exterieur v. Philips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (internal citations and quotation marks omitted); Lamourex v. Genesis Pharmacy Services, Inc., 226 F.R.D. 154, 159 (D. Conn. 2004) (same). However, the party seeking discovery must make at least a *prima facie* showing that the discovery sought is more than merely a fishing expedition. See, e.g., Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); Abu-Nassar v. Elders Futures, Inc., 1991 WL 45062, at *16 (S.D.N.Y. Mar. 28, 1991). See also Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 107 (2nd Cir. 1981) ("where a plaintiff fails to produce any specific facts whatsoever to support a[n]. . . allegation, a district court may in its discretion, refuse to permit discovery . . . .").

The permissible scope of discovery from a non-party is generally the same as that applicable to discovery sought from parties. See, e.g., In re Publication Papers Antitrust

Litigation, 2005 WL 169633, at *2 (D. Conn. July 5, 2005) (Underhill, J.) (granting motion to quash deposition subpoena served on individual members of putative class because Court was not convinced that the requested discovery was needed with respect to class certification issues); Richter v. Mutual of Omaha Ins. Co., 2006 WL 1277090, at *2 (E.D. Wis. May 5, 2006); Graham v. Casey's Gen. Stores, 206 F.R.D. 251, 253 (S.D. Ind. 2002) (granting in part and denying in part non-party's motion to quash subpoena).

The burden on the party from which discovery is sought must, of course, be balanced against the need for the information sought. See, e.g., Abu-Nassar v. Elders Futures, Inc., 1991 WL 45067 (S.D.N.Y. 1991); Jeld-Wen, Inc. v. Nebula Glass International, Inc., 2007 WL 1526649, at *2 (S.D. Fla. May 22, 2007) ("holding the party opposing discovery "must show that the requested discovery does not come within the broad scope of relevance as defined under Rule 26 or . . . is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad discovery"). Fed. R. Civ. P. 26(b)(20(C) provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determinates that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

In balancing the need for discovery against the burdens imposed by the discovery requested, some courts have held that the court may consider the fact that discovery is being sought from a third party, which weighs against permitting discovery. See, e.g., Medical Components, Inc. v. Classical Medical, Inc., 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002); Echostar Communications v. The News Corp., Ltd., 180 F.R.D. 391, 394 (D. Colo. 1998).

**D.     The Relevance of the Information and Documents Sought**

### 1.     The limits on discovery imposed by the Special Master's April 12 and April 26, 2007 Rulings

MCK argues that the documents and information sought pursuant to Plaintiff's subpoena are not discoverable based upon the law of this case as set forth in the Special Master's April 12 and April 26, 2007 Rulings. (Pl. Mem. dtd Nov. 16, 2007 at 18-21). In the April Ruling, the Special Master held:

> The documents sought concerning "Defendant Affiliated Entities" and transactions between Defendants and those entities are not relevant to any claim or defense of any party in this action. As to Plaintiff's fraudulent conveyance claims in the Third Count, the Complaint only alleges three specific fraudulent conveyances between one or more of the judgment debtors in the Maryland action and one or more of the Defendants in this action. None involve conveyances to nonparty "Defendant Affiliated Entities," (See Complaint, Third Count).

(Apr. 12 Ruling at 7). The Special Master also ruled:

> Nor are transactions between defendants and the "Defendant Affiliated Entities" relevant to the veil-piercing claims in First and Second Counts of the Complaint. Plaintiff concedes that these counts do not seek to pierce the corporate veil between Defendants and any of the "Defendant Affiliated Entities." (Trans. of Arg. on Mar. 21, 2007 at 70).

(Apr. 12 Ruling at 8). In the April 26, 2007 Ruling on Plaintiff's Motion for Clarification, the Special Master held:

> Plaintiffs may not discover transfer of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve transfers of assets or business activities between the judgment debtors in the Maryland Action of the Defendants in the action.

(Apr. 26 Ruling at 1-2). The April 26 Ruling went on to state:

> Finally, Plaintiff appears to have an easily available remedy. If it believes that it has sufficient evidence to support a good faith claim that the corporate veil between the Maryland judgment debtors and one or more of these 222 "Defendant Affiliated Entities" should be pierced, or if it believes that it has sufficient evidence to support a good faith claim that there were fraudulent conveyances between the Maryland judgment debtors and one or more of these "Defendant Affiliated Entities," it can move to amend its Complaint and make them defendants. Under these circumstances, discovery concerning transfers between them and the Maryland judgment debtors would be "relevant to the claim . . . of any party;" Fed. R. Civ. P. 26 (b)(1); and information concerning those transfers would clearly be discoverable.

(Apr. 26 Ruling at 4).

As the Special Master held in the April 26, Ruling, however, "Plaintiffs may not discover transfers of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve transfers of assets or business activities between the judgment debtors in the Maryland Action and the defendants in this action . (Apr. 26 Ruling at 1-2). The April 26 Ruling recognized that information concerning transfers of assets and business activities between Defendants and non-party affiliated entities might be relevant to Plaintiff's veil piercing claims between Defendants and the Maryland Judgment Debtors and to Plaintiff's claims of fraudulent transfers between

11

Defendants and the Maryland Judgment Debtors. The issue posed by Defendants' motion for a protective order is whether the information Plaintiff seeks from non-party Kostin Ruffkess is sufficiently relevant to these claims to come within the scope of permissible discovery.

### 2. Law of the case

Defendants, invoking the law of the case doctrine, argue that "[this Court has already determined that information pertaining to Defendant Affiliated Entities is not relevant to the claim or defense of any party in this case and is therefore not discoverable." (Def. Mem. dtd Dec. 19, 2007 at 12). Plaintiff argues that "the law of the case doctrine is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen which has been decided." United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982). "Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered." Cumis Ins. Society, Inc. v. Windsor Bank & Trust Co., 736 F.Sup. 1226, 1228 (D. Conn. 1990). "The only limitations placed upon the exercise of the doctrine is that prejudice not ensue to the party seeking the benefit of the doctrine. . . . In this context prejudice does not mean the harm which results from a failure to apply the doctrine; rather, it refers to a lack of sufficiency of notice and an opportunity to prepare and with the knowledge that one judge is disregarding the ruling of another. United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982)." Id.

Moreover, as noted in an earlier ruling, the assertion that information pertaining to Defendant Affiliated Entities is not relevant to the claim or defense of any party in this case and therefore not discoverable overstates the Special Master's April 12 and 26 Rulings. As

the Special Master held in the April 26, Ruling, "Plaintiffs may not discover transfers of

assets or business activities between the Defendants and 'Defendant Affiliated Entities'

except to the extent that they involve transfers of assets or business activities between the

judgment debtors in the Maryland Action and the Defendants in this action." (Apr. 26

Ruling at 1-2). The April 26 Ruling recognized that information concerning transfers of

assets and business activities between Defendants and non-party affiliated entities might

be relevant to Plaintiff's veil piercing claims between Defendants and the Maryland

Judgment Debtors and to Plaintiff's claims of fraudulent transfers between Defendants and

the Maryland Judgment Debtors. See Ruling on Motion to Quash Subpoena (Doc. # 301)

and for Protective Order of Non-Party MCK, Inc. (Doc. # 314), dated June 16, 2008 **(Doc. #**

**415)** at 18.

> **3.      Relevance of information concerning transactions, among and/or
> between the Defendants, Maryland Judgment Debtors, or non-parties
> MCK, Inc. or the Konover Family Limited Partnership and Members of
> defendant Michael Konover's family.**

Plaintiffs seeking to depose non-party Kostin Ruffkess & Company, LLC concerning:

> 18.     All Transactions, including without limitation distributions, contribution
> and compensation, among and/or between any of the Defendants,
> Judgment Debtors, MCK, or KFLP and any family members of Michael
> Konover, including the accounting treatment of any such Transaction.

Defendants argue: (1) that the information sought concerning MCK, Inc. and the Konover

Family Limited partnership is irrelevant because there is no claim in the Amended

Complaint that either is the alter ego of one of the Maryland Judgment Debtors or that the

corporate veil between either of them and the Maryland Judgment Debtors should be

pierced. (Def. Mem. dtd Dec. 19, 2007 at 7); (2) that previous rulings have determine that

information pertaining to Defendant Affiliated Entities, including MCK, Inc. and KFLP, is not

relevant to the claim or defense of any party in this case and is, therefore, not discoverable (Id. at 12); (3) that similar requests for discovery made directly to non-parties MCK, Inc. and the Konover Family Limited Partnership are the subject of pending discovery requests. (Id. at 13, 27-9); (4) that Plaintiffs have failed to show a causal connection between the loss sustained by plaintiff and the Defendants' control over the Maryland Judgment Debtors; and (5) that the information sought bears no relation to the issue of causation of damage to Plaintiff (Id. at 21-22); and (6) that Plaintiff has failed to show "substantial need" for the information (Id. at 15).

        In order to address some of these arguments, it is first necessary to interpret Topic 18.  The first question is whether the only transactions referred to are those involving members of the Michael Konover's family.  This seems to be the most reasonable interpretation of Topic 18 because Topic 10, which is not addressed in this motion, identifies "[a]ll transactions among and/or between the Defendants, Judgment Debtors, MCK and KFLP, including the accounting and tax treatment of such transactions."  The only difference between Tope 10 and Topic 18 is the addition in Topic 18 of the phrase "and any family member of Michael Konover."  This indicates that the first question is under what circumstances transactions with family members of Michael Konover may be relevant to this action. In prior rulings, the Special Master has held that transactions between an alleged controlled entity and a member of the family of the alleged controlling person may be relevant if a party claims that the veil should be pierced between the controlled entity and the controlling person. (See Substituted Ruling on Victoria Konover's Motion to Quash Subpoena (Doc. # 307) and for Protective Order (Doc. # 320) dated June 26 2008 at 14-17; Rulings on Non-Party Peerless Corporation's Motion to Modify Subpoena and for Protective Order dated May 29, 2007 (Doc. # 204) and Plaintiff's Cross-Motion to Compel Deposition

14

Answers Directed at Peerless Corporation dated June 19, 2007 (Doc. # 218) dated July 7, 2008 (Doc. # 435) at 30-31). The appropriate scope of allowable discovery concerning transactions with members of defendant Michael Konover's family depends, therefore, upon what veil-piercing claims Plaintiff is making in this litigation.

### a. Plaintiff's veil-piercing claims

Plaintiffs are clearly claiming that the corporate veil should be pierced between the Defendants and the Maryland Judgment Debtors. It is not necessary for an entity to be made a party to an action for a veil-piercing claim to be made with respect to it. See Vertrue Inc. v. Meshkin, 429 F. Supp. 429, 505 (D. Conn. 2006); Andrews v. Caron Brothers, 1992 WL 67396, at *6-7 (Conn. Super. Mar. 26, 1992); In re Baranello & Sons, Inc., 149 B.R. 19, 29-31 (Bkrtcy. E.D.N.Y. 1992). Cf. Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 1751780, at *5-6 (S.D.N.Y. 2003) (holding that alleged joint tortfeasors are not indispensable parties). But see Miramax Film Corp. v. Abraham, 2003 WL 22832384, at *9 (S.D.N.Y. Nov. 25, 2003) (holding that "under New York law, shell companies are necessary parties in an action to pierce the corporate veil"); Amoco Prod. Co. v. Aspen Group, 189 F.R.D. 614, 616 (Colo. 1999) (holding shareholders alleged to be alter egos of corporation to be indispensable parties); Stewart Tenant Corp. v. Square Industries, Inc., 703 N.Y.S. 2d 453, 454 (N.Y. App. Div. 2000) ("An action to pierce the corporate veil requires that the purported dummy corporations be parties, even if the parent corporation is alleged to be the one which unjustly retains the funds"). In the Ruling on Motion to Quash Subpoena (Doc. # 301) and the Protective Order of Non-Party MCK, Inc. (Doc. # 314) dated June 16, 2008 (Doc. # 415), the Special Master held that the allegations made by Plaintiffs, the arguments it made and the evidence present suggested that it is, in fact, claiming that the corporate veil should be pierced between non-party MCK,

Inc. and Michael Konover despite the fact that MCK, Inc. had not been made a party. Id. at 24, 29. In the Substituted Ruling on Victoria Konover's Motion to Quash Subpoena (Doc. # 307) and for Protective Order (Doc. # 320) dated June 26, 2008 (Doc. # 430), the Special Master held that it appears that the Plaintiff is also claiming that the corporate veil should be pierced among the Defendants based on its claim that they should be held jointly and severally liable with respect to the veil-piercing claims asserted in the First and Second Counts of the Amended Complaint. (Id. at 11-13). The situation is different, however, with respect to non-party KFLP. There is no claim that the corporate veil should be pierced between either Defendants, including Michael Konover or the Maryland Judgment Debtors, and KFLP. (See Ruling on Konover Family Limited Partnership's Motion to Quash (Doc. # 299) and for Protective Order (Doc. # 313), dated June 6, 2008 (Doc. # 411) at 15).

In its motion for clarification of the Special Master's June 16, 2008 ruling regarding non-party MCK, Inc.'s motion to quash and for a protective order (Doc. # 415), MCK has argued that the Special Master's June 16 ruling is inconsistent with and appears to overrule the Special Masters April 12 and April 26, 2007 Ruling as adopted by Magistrate Judge Garfinkel and Judge Droney. (See Mem. of MCK, Inc. dtd June 30, 2008 at 2-9). However, as noted in the June 16, 2008 Ruling, "MCK overstates the April 12 and 26 Rulings when it describes them as holding that transactions between Defendants and non-party 'Defendant Affiliates [sic] Entities' [including MCK, Inc.] are not relevant to any claim or defense of any party in this action." Id. at 18. The Special Master observed that "[t]he April 26 Ruling recognized that information concerning transfers of assets and business activities between Defendants and non-party affiliated entities might be relevant to Plaintiff's veil-piercing claims between Defendants and the Maryland Judgment Debtors and to Plaintiff's claims of fraudulent transfers between Defendants and the Maryland Judgment Debtors." Id.

      **b.**    **Need to establish causation in connection with veil-piercing claims**

Defendants also argue that the information sought concerning MCK, Inc. is irrelevant because it bears no relation to the facts which plaintiffs must establish in order to prove that its harm was causally connected to the unity of interest among the Defendants or between the Defendants and the Maryland Judgment Debtors. (Def. Mem. dtd Dec. 19, 2007 at 21-22; Def. Reply Mem. dtd Jan. 24, 2008 at 5-10). Nor, Defendants argue, is there any claim that either MCK, Inc. or KFLP was the recipient of a fraudulent conveyance from one of the Maryland Judgment Debtors. (Id. at 23-26; Def. Reply Mem. dtd Jan. 24, 2008 at 5-10). In response, Plaintiff argues that there is no "causation" element with respect to piercing the corporate veil under the identity rule (Pl. Mem. dtd Jan. 24, 2008 at 13-15), and, in any event, information does not have to relate to all elements of a claim in order to be discoverable. (Id. at 12-14).

Plaintiff does not appear to challenge Defendants' assertion that causation is an element of a veil-piercing claim under the instrumentality rule. (See Pl. Mem. dtd Jan. 9, 2008 at 13). It argues, however, that causation is not an element of a veil-piercing claim under the identity rule. (Id. at 13). Both parties acknowledge that the identity rule applies where the plaintiff can show that there is

> [S]uch a unity of interest and ownership that the independent
> of the corporation had in effect ceased or had never begun
> [such that] an adherence to the fiction of separate identity
> would serve only to defeat justice and equity by permitting the
> economic entity to escape liability arising out of an operation
> conducted by one corporation for the benefit of the whole
> enterprise.

Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 554, 447 A.2d 406 (1982). (Pl. Mem. dtd Jan. 9, 2008 at 13; Def. Mem. dtd Dec. 19, 2008 at 21). Defendants

argue, however, that even under the identity rule, Plaintiff must establish that its harm was causally connected to the "unity of interest" among the Defendants and the Maryland Judgment Debtors. (Def. Mem. dtd Dec. 19, 2007 at 21-22).

Curiously, Defendants focus on the need for Plaintiff to prove harm to it caused by the unity of interest between the Defendants and the Maryland Judgment Debtors, rather than between Defendants and MCK. (Def. Mem. dtd Dec. 19, 2007 at 21). However, it seems apparent that Plaintiff's claim concerning the unity of interest between Defendants and the Maryland Judgment Debtors comes squarely within the standard set forth in Angelo Tomasso. Plaintiff contends that adherence to the fiction of separate identity between Defendants and the Maryland Judgment Debtors would permit Defendants to escape liability arising out of an operation conducted by the Maryland Judgment Debtors for the benefit of an enterprise in which both Defendants and the Maryland Judgment Debtors were a part. It is less obvious how this standard applies to a veil-piercing claim between Defendants and MCK. As discussed above, however, Plaintiff claims that MCK, which was controlled by Defendants, served as a conduit, by which Defendants exercised control over the Maryland Judgment Debtors. If Defendant's theory were accepted, Defendants, by interposing non-party MCK between Defendants and the Maryland Judgment Debtors, could avoid liability arising out of activities of the Maryland Judgment Debtors. Also, as discussed in the Special Master's Ruling on Plaintiff's Motion to Compel Compliance with Requests 4 and 5 of Plaintiff's October 26, 2007 Requests for Production (Doc. # 359) dated March 4, 2009, it is not necessary for every piece of evidence offered in support of a veil-piercing claim to be relevant both to the exercise of control over the alleged dominated entity and that such control caused harm to the plaintiff.

### c.   Need to establish substantial need to obtain discovery from a non-party

Defendants argue that in order to obtain discovery from a non-party, the party seeking discovery must show substantial need. (Def. Mem. dtd Dec. 19, 2007 at 15).[1] Plaintiff contends that non-parties are not subject to a more restrictive discovery standard. (Pl. Mem. dtd Jan. 9, 2008 at 3-4). As noted in Part C of this Ruling, the permissible scope of discovery from a non-party is generally the same as that applicable to discovery sough from parties. See, e.g., In re Publication Papers Antitrust Litigation, 2005 WL 169633, at *2 (D. Conn. July 5, 2005) (Underhill, J.) (granting motion to quash deposition subpoena served on individual members of putative class because Court was not convinced that the requested discovery was needed with respect to class certification issues); Richter v. Mutual of Omaha Ins. Co., 2006 WL 1277090, at *2 (E.D. Wis. May 5, 2006); Graham v. Casey's Gen. Stores, 206 F.R.D. 251, 253 (S.D. Ind. 2002) (granting in part and denying in part non-party's motion to quash subpoena). However, in balancing the need for discovery against the burdens imposed by the discovery requested, the court may consider the fact that discovery is being sought from a third party, which weighs against permitting discovery. See, e.g., Medical Components, Inc. v. Classical Medical, Inc., 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002). In this case, the fact that Kostin Ruffkess was retained by Defendants as their accountant makes it less unfair to require it to respond to discovery than might be the case with respect to an unrelated non-party. See Echostar Communications v. The News Corp., Ltd., 180 F.R.D. 391, 394 (D. Colo. 1998). The information sought from Kostin

---

[1] In their January 24, 2008 Reply Memorandum, Defendants appear to have backed off this position somewhat, arguing that the status of Kostin Ruffkess as a non-party is a factor to be weighed in evaluating the propriety of a discovery subpoena. Id. at 3-5.

Ruffkess is sufficiently relevant to outweigh imposing the burden of discovery on Kostin Ruffkess despite the fact that it is a non-party.

### d.   Transaction between the alleged dominated party and members of the alleged dominating person's family are relevant to a veil-piercing claim

Plaintiff, having, asserted veil-piercing claims between the Maryland Judgment Debtors and the Defendants, including Michael Konover, between the entity-defendants and defendant Michael Konover, and between non-party MCK, Inc. and defendant Michael Konover, the question becomes whether discovery may be had concerning transactions between an allegedly dominated entity and members of Michael Konover's family.

This issue was addressed in Substituted Ruling on Victoria Konover's Motion to Quash Subpoena (Doc. # 307) and for Protective Order (Doc. # 320) dated June 26, 2008 (Doc. # 340). There, the Special Master held that "transfers of funds by family members of the alleged controlling person into and out of the allegedly dominated entity as to which the corporate veil is sought to be pierced are sufficiently relevant to Plaintiff's veil-piercing claims to be discoverable." Id. at 15. See also Id. at 17 ("Evidence of transfers from one of the entity Defendants to or for the benefit of Michael Konover's wife could lead to the discovery of admissible evidence concerning Plaintiff's claim that the corporate veil should be pierced between the entity defendants and Michael Konover."); Substituted Ruling on Plaintiff's Motion to Compel Defendants' Production of Documents Pursuant to Plaintiff's Request for Production (Doc. # 248) dated July 7, 2008 (Doc. # 436) at 14-17; Ruling on Non-Party Peerless Corporation's Motion to Modify Subpoena and for Protective Order dated May 29, 2007 (Doc. # 204) and Plaintiff's Cross-Motion to Compel Answers Directed at Peerless Corporation Dated June 19, 2007 (Doc. # 218) dated July 7, 2008 (Doc. # 441)

at 30-31.  See generally Litchfield Asset Management Corp. v. Howell, 70 Conn. App. 123, 153, 157, 799 A.2d 298, 313, 315 (Conn. App. 2002).

It is correct that non-party Victoria Konover has filed a motion for reconsideration of the Special Master's Substituted Ruling on Victoria Konover's Motion to Quash Subpoena (Doc. # 307) and for Protective Order (Doc. # 320) dated June 26, 2008 (Doc. # 430). However, that motion for reconsideration seeks only clarification that personal transactions between herself and her husband are not within the scope of permissible discovery. (Victoria Konover's Mem. dtd July 11, 2008at 1).  Similarly, Defendants' motion for reconsideration of the Special Master's Ruling on Plaintiff's Motion to Compel Defendants' Production of Documents Pursuant to Plaintiff's Request for Production (Doc. # 248) dated June 26, 2008 (Doc. # 436) is so limited.  Id. at 11-12.

### e.    Persons who are "family members" of Michael Konover

In deposition Topic 18, Plaintiff seeks to inquire into transactions with "family members of Michael Konover."  Prior to the hearing on November 24 and 25, 2008, counsel for Plaintiff reported that the parties had reach a resolution of the issue concerning to what relationships the term "family member" referred.  Plaintiff's counsel reported that "[t]he parties agree that these terms cover spouses, children, parents, siblings, grand-parents, grand-children, cousins, nieces, nephews, in-law parents and in-law siblings."  (Pl's. Mem. dated Sept. 22, 2008 at 6).  However, at the hearing on September 25, 2008, it developed that Defendants took issue with whether the parties had agreed to this definition.  The definition of "family member" and "relative" are discussed in connection with the Special Master's March 4, 2009 Ruling on (Doc. # 453) Defendant's July 28, 2008 Motions for Reconsideration and Clarification of Special Master's Substituted Ruling on Plaintiff's

Motion to Compel Defendants' Production of Documents Pursuant to Plaintiff's Request for Production (Doc. # 248) Dated July 7, 2008 (Doc. # 437).

### f.    Transactions between Non-party KFLP and members of Michael Konover's family

The veil-piercing claims made by Plaintiff in this action include: (1) the veil between the Maryland Judgment Debtors and the Defendants, including defendant Michael Konover; (2) the veil between the entity Defendants and defendant Michael Konover; and (3) the veil between non-party MCK, Inc. and defendant Michael Konover.  There is no claim that the veil of the Konover Family Limited Partnership ("KFLP") should be pierced.  Information concerning transactions with members of Michael Konover's family is relevant only with respect to those entities with respect to which Plaintiff seeks pierce the corporate veil.  Plaintiff argues that, although it does not seek to pierce the corporate veil with respect to KFLP, it does seek to pierce the corporate veil with respect to KFLP's general partner, formerly Maryland Judgment Debtor, Peerless (formerly known as Konover Management Corporation) and now defendant Ripple, LLC.  Therefore, Plaintiff argues, KFLP should be treated, for discovery purposes, as if Plaintiff seeks to pierce the corporate veil with respect to it.  (Tr. Hearing on Nov. 25, 2008, at pp. 355-364).  This, however, ignores the separate legal existence of a limited partnership and its general partner.  A transfer of funds by a limited partnership is not a transfer of funds by its general partner.  Because Plaintiff has not sought to pierce the corporate veil with respect to KFLP, transfers form KFLP and members of defendant Michael Konover's family are not relevant for discovery purposes.

Therefore, Defendants motion for a protective order concerning Topic 18 is **GRANTED** with respect to transactions between the Konover Family Limited Partnership and family members of Michael Konover, but **DENIED** with respect to transactions between

or among the entity Defendants, the Maryland Judgment Debtors or non-party MCK, Inc. and family members of defendant Michael Konover.  For purposes of Topic No. 18, "family members" of Michael Konover will include spouses, children, parents, siblings, grand-parents, grand-children, cousins, nieces, nephews, in-law parents and in-law siblings.  As Plaintiff has acknowledged (Tr. of Hearing on Nov. 28, 2008, p. 367), because there is no veil-piercing claim in which Michael Konover personally is a dominated entity, transactions directly rather than through an entity, between Michael Konover personally and members of his family are not discoverable.

**4.    Relevance of information concerning services provided by Kostin Ruffkess concerning the Portfolio Sales**

Plaintiff seeks to depose non-party Kostin, Ruffkess & Company, LLC concerning:

23.    All professional services provided by Kostin, Ruffkess concerning the Portfolio Sales, including any accounting or tax services or advice rendered to any of the Defendants or Judgment Debtors concerning the Portfolio Sales.

24.    Charges made and fees received in connection with any of the services You provided in connection with the activities described in topic number twenty-three.

Defendants argue that these topics are the subject of pending discovery motions or objections filed by the Defendants or non-parties. (Def. Mem. dated Dec. 19, 2007 at 13, 27-28).

The relevance of information concerning the sale in late 2002 and early 2003 of properties owned by entities in which the Maryland Judgment Debtors and defendant Michael Konover owned interests, the so-called "Portfolio Sales," was addressed in the Special Master's Substituted Ruling on Plaintiff's Motion to Compel Defendants' Production

23

of Documents Pursuant to Plaintiff's Requests for Production (Doc. # 248), dated July 7,
2008 (Doc. # 437) at 17-23.  In that ruling, the Special Master held that at least some
information concerning the Portfolio Sales could be relevant to veil-piercing claims between
Defendants or between Defendants and the Maryland Judgment debtors. (Id. at 23).
Defendants have filed a Motion for reconsideration of Ruling on Plaintiff's Motion to Compel
Production of Documents (Doc. # 248) dated July 28, 2008 (Doc. # 453).  However, to the
extent that this motion addresses the Portfolio Sales, it asserts that notwithstanding the
request at issue in that motion "it is now established that . . . the defendants will produce
documents pertaining to the portfolio sales." (Id. at 3).  The motion for reconsideration
seeks to limit the ruling on the request addressed therein to the portfolio sales so as not to
include other "transactions" that might come within its terms.  (Id. at 3-5).  Topics 23 and 24
are limited to the "Portfolio Sales" and do not, therefore, implicate the issue raised in
Defendants' motion for reconsideration.

    Defendants do challenge the relevance of tax advice given by Kostin-Ruffkess to the
extent that it did not involve tax advice given to one of the entity defendants or the
Maryland Judgment Debtors.  (Tr. of Hearing on Nov. 25, 2008, p. 306).  They argue that
personal tax advice given to Mr. Konover is not relevant because he has not become a
Maryland Judgment Debtor and because other rulings have limited discovery concerning
tax planning.  (Id.).  Plaintiff's contention is that a disproportionate amount of the funds
generated from the Portfolio Sales was directed to defendants Konover Development Corp.
and Konover & Associates, Inc. (Id. at 304-305).

    Topics 23 and 24 are limited to professional services provided by Kostin-Ruffkess
concerning the Portfolio Sales.  In addition, they are limited to professional services
provided by Kostin-Ruffkess to the Defendants or the Maryland Judgment Debtors.  The

Substituted Ruling dated July 7, 2008 limits the scope of permissible discovery to transactions involving third parties on one side and either two or more Defendants or Maryland Judgment Debtors on the other, but not including transactions with third parties involving only two or more Maryland Judgment debtors.  (Subst. Ruling dated July 7, 2008) (Doc. # 453 at 23).  Because the Portfolio Sales and how the fees were structured is potentially relevant to Plaintiff's veil-piercing claims, which include claims that the corporate veil should be pierced between defendant Michael Konover and the Maryland Judgment Debtors and the entity defendants, the tax advice received by the entity defendants, the Maryland Judgment Debtors and Defendant Michael Konover, as limited by the Substituted Ruling dated July 7, 2008 (Doc. # 453), is within the scope of proper discovery.  Therefore, Defendant's motion for a protective order concerning Topics 23 and 24 of the subpoena issued to nonparty Kostin Ruffkess is **DENIED**.

**CONCLUSION**

Defendants' motion for a protective order dated December 19, 2007 **(Doc. # 333)** is, for the reasons stated herein **GRANTED** concerning Topic 18 with respect to transactions between the Konover Family Limited Partnership and family members of Michael Konover, but **DENIED** with respect to transactions between or among the entity Defendants, the Maryland Judgment Debtors or non-party MCK, Inc. and family members of defendant Michael Konover and is **DENIED** concerning Topics 23 and 24.  Kostin Ruffkess shall produce a witness to testify concerning the deposition topics 18, 23 and 24 to the extent that Defendants' motion for a protective order concerning such topics has been overruled in this Ruling within 45 days of the date this Ruling becomes final.

Pursuant to Fed. R. Civ. P. 53 (g)(2) and the order of this Court dated November 7, 2006, any party may file objections to -- or a motion to adopt or modify -- this Ruling no later than 20 days from the time this Ruling is served.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master

26