## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WELLS FARGO BANK, N.A. TRUSTEE          :

       Plaintiff,                                      :

   vs.                                                 :   No. 3:05CV1924(CFD)(WIG)

MICHAEL KONOVER, et al                          :
       Defendants.                                :   MARCH 4, 2009

## RULING ON PLAINTIFF'S MOTION TO COMPEL
## COMPLIANCE WITH REQUESTS 4 AND 5 OF
## PLAINTIFF'S OCTOBER 26, 2007 REQUESTS
## FOR PRODUCTION (DOC. # 359)

By motion dated January 18, 2008, Plaintiff has moved, pursuant to Rule 37(a) of

the Federal Rules of Civil Procedure, to compel Defendants (except Konover Construction

Corporation) to compel production of certain documents concerning non-party Account

Management LLC ("Account Management") responsive to Requests 4 and 5 of Plaintiff's

October 26, 2007 Requests for Production **(Doc. # 359)**.  For the reasons stated herein,

Plaintiff's motion is **GRANTED**.

This action was commenced on December 15, 2005 by plaintiff Wells Fargo against

defendants Michael Konover, Konover Development Corp. ("KDC"), Konover Construction

Corp. ("KCC"), Konover & Associates, Inc. ("K&A"), Blackboard LLC (Blackboard) and

Ripple LLC ("Ripple").  In its original four-count complaint, Plaintiff alleged that on

November 16, 2005, it obtained a judgment against non-parties Diamond Point Plaza, L.P.

("Diamond Point"), Oriole Commercial Associates, L.P. ("Oriole"), Konover Management

Corp. ("KMC") and Diamond Point Management Corp. ("Diamond Point Management")

(collectively referred to in this Ruling as the "Maryland Judgment Debtors") equal to more than $22.8 million in the Circuit Court for Baltimore County, Maryland in an action entitled Wells Fargo Bank Minnesota, N.A., Trustee v. Diamond Point Plaza Limited Partnership, et al, No. 03-C-03-002449, of which more than $12 million remains unpaid. In addition, it was alleged that defendant Michael Konover was held liable for a fraudulent transfer of $633,000 of rents of nonparty Diamond Point Plaza, L.P. for which Michael Konover has posted bond in connection with his appeal of the Maryland Judgment (Complaint ¶ 9-10). In the First and Second Counts of the Complaint, Plaintiff sought to pierce the corporate veil between the Maryland Judgment Debtors and the Defendants so as to impose liability on the Defendants for the Maryland judgment against the Maryland Judgment Debtors. In the Third Count, Plaintiff sought to have certain Defendants held accountable for three specific transfers or categories of transfers from one or more of the non-party Maryland Judgment Debtors to one or more of the Defendants. In the Fourth Count, Plaintiff alleged that the Defendants tortiously interfered with a contract and prospective contract between it and Wal-Mart/Sam's and The Wire.

By ruling dated April 12, 2007 (Doc. # 176) ("April 12 Ruling"), clarified on April 26, 2007 (Doc. # 180) ("April 26 Ruling"), the Special Master denied in part and denied without prejudice in part Plaintiff's motion to compel defendants Michael Konover, Blackboard, Ripple, KDC, KCC and K&A to produce documents responsive to Plaintiff's First Requests for Production of Documents dated July 11, 2006. These Rulings were confirmed by the Court by order dated September 12, 2007 (Doc. # 261). The document requests which were the subject of the April 12, 2007 and April 26, 2007 Rulings, related to non-parties referred to as "Defendant Affiliated Entities" and to transactions between or among the

Defendants and between or among the Defendants and "Defendant Related Entities" from June 2, 2000 to the present.

In the April 12, 2007 Ruling, the Special Master held that the documents sought concerning "Defendant Affiliated Entities" and transactions between Defendants and those entities were not relevant to any claim or defense of any party in this action in part because the Complaint alleged only three specific categories of fraudulent conveyances between one or more of the Maryland Judgment Debtors and one or more of the Defendants in this action and none involved fraudulent conveyances to nonparty "Defendant Affiliated Entities." (April 12 Ruling at 7). The Special Master also held that the transactions between Defendants and the "Defendant Affiliated Entities" were not relevant to the veil-piercing claims in the First and Second Counts of the Complaint because Plaintiff conceded that these counts did not seek to pierce the corporate veil between Defendants and any of the "Defendant Affiliated Entities," none of which were specifically identified in the Complaint. (April 12 Ruling at 8-9). The Special Master also ruled that even were the transactions with "Defendant Affiliated Entities" relevant to Plaintiff's veil-piercing claims, the relevance was too unsubstantial to outweigh the considerable burden and expense of producing documents relating to 222 or more other entities. (April 12 Ruling at 13-16).

By motion dated April 26, 2007 (Doc. # 179), Plaintiff requested a clarification of the Special Master's April 12, 2007 Ruling to state whether Plaintiff could obtain discovery concerning transfers of the assets or business activities of Maryland Judgment Debtor KMC, now known as Peerless Corporation, to entities that Defendant Michael Konover owned or controlled. By Ruling dated April 26, 2007 (Doc. # 180), the Special Master held that Plaintiff may not discover transfers of assets or business activities between the Defendants and "Defendant Affiliated Entities" except to the extent that they involve

3

transfers of assets or business activities between the Maryland Judgment Debtors and the Defendants in this action. The Complaint asserted claims that the corporate veil should be pierced with respect to Defendants and the Maryland Judgment Debtors and Plaintiff conceded that it was not asserting a claim that the corporate veil should be pierced between Maryland Judgment Debtor KMC and entities that Michael Konover controlled. It asserted only three categories of fraudulent conveyances, including a $1.1 million excess cash distribution by Maryland Management Corp. to Michael Konover, transfers in and out of a common bank account of assets and funds of the Maryland Judgment Debtors to the Defendants; and the transfer of Maryland Judgment Debtor KMC assets to defendants Blackboard and Ripple. In the April 26, 2007 Ruling, the Special Master reiterated that even if there were some tangential relevance within the broad scope of relevance applicable to discovery, the expense and burden of collecting and reviewing documents concerning transactions among the Defendants, the Maryland Judgment Debtors and at least 222 other entities would outweigh the likely benefit of this evidence. (April 26 Ruling at 3-4).

Subsequent to the Court's confirmation of the Special Master's April 12 and 26, 2007 Rulings, Plaintiff amended its complaint. The Amended Complaint dated October 18, 2007 (Doc. # 285), in addition to repeating the general allegations concerning Michael Konover's ownership and control of the Judgment Debtor and "other entitles owned or controlled by Michael Konover," included a list of those other entities. (Amend. Compl. ¶ 13 and Ex. A) and made the same general allegations made in paragraphs 14 and 15 of the Complaint that "[t]he constituent entities of the Konover Organization have a unity of interest and ownership that is evidenced, *inter alia*, by the fact that they consistently disregard corporate formalities, and are operated as a single business and share the same officers, employees,

4

bank account, website and some of the same office space" (Amend. Compl. ¶ 14) and that "[t]he Defendants have caused the assets of the Judgment Debtors to be transferred to, or for the benefit of, Michael Konover or to other entities he owns and controls in an effort to put them beyond the reach of the [Plaintiff] Trustee." (Amend. Compl. ¶ 15). Plaintiff amplified its claim of fraudulent conveyances in the Third Count by specifying a number of specific transfers of Maryland Judgment Debtor KMC to defendant Ripple on June 24, 2005, the transfer of KMC's property interests to defendants Michael Konover, and KMC's share of interest earned on commingled funds in the Konover Organization's joint bank account.

In its Amended Complaint, Plaintiff identified non-party Account Management as a constituent entity of the "Konover Organization" (Amend. Compl. Ex. A, item 11) and also made specific allegations concerning Account Management. In paragraphs 32 and 33 of the Amended Complaint, Plaintiff alleges:

> 32.    In disregard of the separateness of the constituent members of the Konover Organization, Michael Konover caused K&A to transfer the common cash management account to KDC in March 2005. KDC then held the funds of KMC, the Judgment Debtors and the other members of the Konover Organization in the same manner as K&A had before. KDC continued this role until November 2005 when another account was opened at Webster Bank in the name of Account Management LLC. The Account Management LLC account was opened shortly after Ainsworth's post-judgment discovery deposition in October 2005 where he had been questioned regarding the Judgment Debtors' use of joint bank accounts.

> 33.    Account Management LLC is the alter ego of K&A. The bank statements FOR Account Management LLC and KDC demonstrate that the transactions which previously had occurred in the K&A/KDC account had been transitioned to

5

the Account Management LLC account at Webster Bank.
Additionally, several months after the account was opened,
the names on the checks for Account Management LLC
were changed to "Konover & Associates dba Account
Management LLC," although no formal assumed name filing
exists.  In 2007, Account Management LLC ceased providing
this function and KDC resumed its role as the holder of the
common bank account.

Plaintiff's Amended Complaint also added Fifth, Sixth and Seventh Counts.  In the

Fifth Count, Plaintiff alleges that defendant Michael Konover breached a fiduciary duty he

owed to Plaintiff as a creditor of Maryland Judgment Debtor KMC by failing to preserve the

assets of KMC.  In the Sixth Count, Plaintiff alleges that defendants KDC, Blackboard and

Ripple  are liable to Plaintiff for the debts of Maryland Judgment Debtor KMC, as

successors in interest to KMC.  In the Seventh Count, Plaintiff alleges that Defendants

tortiously interfered with Plaintiff's subordination agreement with Maryland Judgment

Debtor KMC.

## A.    Discovery Sought by Plaintiff

In connection with Plaintiff's motion to compel dated January 18, 2008 **(Doc. # 359)**,

Plaintiff seeks to compel Defendants (except Konover Construction Corporation) to produce

documents responsive to Requests 4 and 5 including:

> 4.    All documents, communications, correspondence and e-mails
> concerning the creation of Account Management, LLC.
>
> 5.    All documents, communications, correspondence and e-mails
> concerning changes of the account holder of Common Cash
> Accounts among K&A, KDC, Account Management LLC or any
> other entity.

"Common Cash Accounts" is defined in the document requests to mean "the accounts at

Webster Bank bearing account numbers 0008977762 and 0009068438 and any other bank

accounts used by two or more Defendants and Judgment Debtors."  (See. Def. Mem. dated Feb. 29, 2008 Ex. 1, p. 2).

## B.    The Scope of Permissible Discovery

Rule 26 (b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party . . . ."  This rule also provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26 (b)(1).  Relevance, in the context of discovery, is broadly and liberally construed and information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); In re PE Corporation Securities Litigation, 221 F.R.D. 20, 23 (D. Conn. 2003).  Since the 2000 amendment to Rule 26, in order to be discoverable, the documents requested must be "relevant to the claim or defense of any party."  Fed. R. Civ. P. 26 (b)(1).  The Advisory Committee Note to the 2000 amendment to Fed. R. Civ. P. 26 (b) (1) states:

> The rule changes signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.

As noted in Tottenham v. Trans World Gaming Corp., 2002 WL 1967023, at *2, 2002 U.S. Dist. LEXIS 11313, at *3 (S.D.N.Y. June 21, 2002), discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged." See also In re PE Corporation Securities Litigation, 221 F.R.D. 20, 23-24 (D. Conn. 2003);

7

United States v. Consolidated Edison Co. of New York, 1988 WL 138275, at *1-2 (E.D.N.Y. Dec. 15, 1988); Abrahams v. Young & Rubicam, 979 F. Supp. 122, 129 (D. Conn. 1997) (holding that the "purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists") (quoting Stoner v. Walsh, 722 F. Supp. 790, 800 (S.D.N.Y. 1991)). Tottenham involved counterclaims by an employer for unjust enrichment, conversion and breach of fiduciary duties as a result of its employee's use of company funds for his personal benefit and to pay his wife's automobile insurance. Id. at *1. The employer sought to obtain documents relating to all of the defendant's or his wife's expenses, obligations and finances on the theory that if the plaintiff "used company money to pay for his personal insurance needs, he may well have used company money to pay other personal expenses." Id at *1. In contrast, in PE Corporation Securities Litigation, the plaintiff's claims were based on an assertion that the defendants included materially false and misleading statements in a registration statement and prospective. In granting a motion to compel over defendants' objection, the court concluded that "as a practical matter, the plaintiffs would be hard-pressed to prepare their care if discovery were denied concerning the secondary offering which plaintiffs complained was inaccurate and misleading." Id. at 24. In Klein v. AIG Trading Group Inc., 228 F.R.D. 418, 424 (D. Conn. 2005), the court held that discovery of the information sought was necessary if plaintiff was going to accurately calculate the damages arising from his breach of contract and other claims.

"The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994). See also Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) ("[s]ome threshold showing of relevance must be made before parties are required to

open wide the doors of discovery and to produce a variety of information which does not

reasonably bear on the issue in the case"); Contemporary Mission, Inc. v. United States

Postal Service, 648 F.2d 97, 107 (2d Cir. 1981) ("where a plaintiff fails to produce any facts

to support a[n] . . . allegation, a district court may in its discretion, refuse to permit discovery

. . . ."); Rubin v. Hirschfeld, 2002 WL 3275201, at *1 (D. Conn. Feb. 13, 2002); Abu-Nassar

v. Elders Futures, Inc., 1991 WL 45062, at *16 (S.D.N.Y. 1991). "Fed. R. Civ. P. 26(b)(1)

does not allow a party to roam in shadow zones of relevancy and to explore matter which

does not presently appear germane on the theory that it might conceivably become so."

Evans, 1994 WL 185696, at *1 (internal quotation marks and citations omitted). As the

Advisory Committee Note to the 2000 amendment to Fed. R. Civ. P. 26 (b)(1) states:

> The Committee intends that the parties and the court focus on the actual
> claims and defenses involved in the action. The dividing line between
> information relevant to the claims and defenses and that relevant only to
> the subject matter of the action, cannot be defined with precision. A variety
> of types of information not directly pertinent to the incident in suit could be
> relevant to the claims or defenses raised in a given action. For example,
> other incidents of the same type, or involving the same product, could be
> properly discoverable under the revised standard. Information about
> organizational arrangements or filing systems of a party could be
> discoverable if likely to yield or lead to the discovery of admissible
> information. Similarly, information that could be used to impeach a likely
> witness, although not otherwise relevant to the claims or defenses, might
> be properly discoverable. In each instance, the determination whether
> such information is discoverable because it is relevant to the claims or
> defenses depends on the circumstances of the pending action.

"When a party seeks relevant discovery, the party resisting discovery bears the

burden of establishing the factual basis for withholding the requested discovery." Abu-

Nassar, 1991 WL 45062, at *15. See also United States v. Schwimmer, 892 F.2d 237, 244

(2d Cir. 1989); vonBulow by Auersperg v. vonBulow, 811 F.2d 136, 144 (2d Cir.), cert.

denied, 481 U.S. 1015 (1987); In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984). This burden requires an evidentiary showing by competent evidence; see, e.g., Abu-Nassar, 1991 WL 45062, at *15; vonBulow by Auersperg, 811 F.2d at 144; and cannot be discharged by mere conclusory or *ipse dixit* assertions. Abu-Nassar, 1991 WL 45062, at *15; In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d at 225. "When the relevancy of a discovery request has been demonstrated, the party claiming that a discovery request is overbroad or burdensome 'must show specifically . . . how each question [or request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. The court is not required to sift each interrogatory [or request] to determine the usefulness of the answer [or documents] sought.'" Abu-Nassar v. Elders Futures, Inc., 1991 WL 45062, at *17 (quoting Compagnie Francaise d'Asurrance, 105 F.R.D. at 42).

The burden on the party from which discovery is sought must, of course, be balanced against the need for the information sought. See, e.g., Abu-Nassar v. Elders Futures, Inc., 1991 WL 45067, at *17 (S.D.N.Y. 1991); Jeld-Wen, Inc. v. Nebula Glass International, Inc., 2007 WL 1526649, at *2 (S.D. Fla. May 22, 2007) ("holding the party opposing discovery "must show that the requested discovery does not come within the broad scope of relevance as defined under Rule 26 or . . . is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad discovery"). Fed. R. Civ. P. 26(b)(2) provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less

expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

All discovery is subject to the limitations imposed by Rule 26 (b)(2)(i), (ii) and (iii).  Fed. R. Civ. P. 26 (b)(1).  See, e.g., In re PE Corp. Securities Litigation, 221 F.R.D. 20, 24-26 (D. Conn. 2003) (but holding that burden did not outweigh the plaintiff's interest in disclosure where "the plaintiffs would be hard-pressured to prepare their case if discovery were limited as the defendants suggest").  Sofarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 169 (E.D.N.Y. 1988), aff'd, 870 F.2d 642 (Fed. Cir. 1989); Johnson v. Bryco Arms, 226 F.R.D. 441, 445 (E.D.N.Y. 2005); Brassco, Inc. v. Klipo, 2004 U.S. Dist. LEXIS 11164, at *12 (S.D.N.Y. June 21, 2004).

## C.     Defendants' Objections to Discovery

In opposition to Plaintiff's motion to compel, Defendants argue that in the April 12, 2007 Ruling (Doc. # 176) as clarified by the April 26, 2007 Ruling (Doc. # 180), the Special Master has already determined that documents of the type sought concerning non-party Account Management are not discoverable because they are irrelevant to the claims and defenses asserted in this action.  (Def. Mem. dated Feb. 29, 2008 at 2-3).  They note that Plaintiff has not alleged that Account Management is the alter ego of one of the Maryland Judgment Debtors or that the Defendants used Account Management to manipulate or control the Maryland Judgment Debtors (Id. at 18) or that Account Management was the recipient of a fraudulent conveyance from one of the Maryland Judgment Debtors (Id. at 19).  Defendants also argue that Account Management did not even exist when any of the

actions challenged in this case were allegedly undertaken. (Id. at 4).  They argue that the "common cash account" operated by defendant K&A came into existence before June 2, 2000, the date of the closing on the mortgage loan at issue in the Maryland Action, but that the Account Management Account was opened after November 1, 2005. (Id. at 15).  In addition, at the hearing, Defendants argued that evidence alleged or cited by Defendants to justify a veil-piercing claim with respect to Account Management operation of a common cash management account and a statement that Account Management was a d/b/a of Defendant K&A and that the allegations concerning Account Management are insufficient to assert a veil-piercing claim against it.

Plaintiff argues that information concerning Account Management may lead to the discovery of relevant information concerning its veil-piercing claims among the Defendants and between Defendants and the Maryland Judgment Debtors and that it is claiming that the veil should be pierced between defendant K&A and Account Management despite the fact that Account Management has not been made a defendant in this action.  Plaintiff notes that defendants KA&, KDC, Blackboard and Ripple all used the common cash account while it was in the name of Account Management. (Pl. Mem. dated Jan. 18, 2008 at 2).  Plaintiff also claims that the Defendants tortiously interfered with the subordination agreement between Maryland Judgment Debtor KMC and Defendants and that this continued into the time the common cash account was in the name of Account Management. (Pl. Mem. dated Jan. 18, 2008 at 2; Tr. of Hearing on Nov. 25, 2008 at p. 424-25.  Plaintiff's tortious interference claim set forth in the Seventh Count of the Amended Complaint claims that "Defendants are liable to the Trustee for transfers and payments they received after the Loan closed on June 2, 2000." (Am. Complaint, Seventh

Count ¶ 82).  This claim has no end date concerning when the alleged transfers or
payments were made.

**D.    Relevance of Information Concerning Account Management**

      For the reasons discussed below, some information concerning Account
Management is sufficiently relevant to the claims or defenses asserted in this action to be
discoverable.

      **1.    Account Management need not be made a party for Plaintiff to assert
        a veil-piercing claim concerning it.**

      As the Special Master held in his June 16, 2008 Ruling **(Doc. # 415)**, it is not
necessary that the entity concerning which a veil-piercing claim is made to be made a
party.  (June 16, 2008 Ruling at 24-25).  See Vertrue Inc. v. Meshkin, 429 F. Supp. 2d 479,
505 (D. Conn. 2006); Andrews v. Caron Brothers, 1992 WL 67396, at *6-7 (Conn. Super.
Mar. 26, 1992); In re Baranello & Sons, Inc., 149 B.R. 19, 29-31 (Bkrtcy, E.D.N.Y. 1992).
Cf. Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL
1751780, at *5-6 (S.D.N.Y. 2003) (holding that alleged joint tortfeasors are not
indispensable parties); But see Miramax Film Corp. v. Abraham, 2003 WL 22832384, at *9
(S.D.N.Y. Nov. 25, 2003) (holding that "under New York law, shell companies are
necessary parties in an action to pierce the corporate veil"); Amoco Prod. Co. v. Aspen
Group, 189 F.R.D. 614, 616 (Colo. 1999) (holding shareholders alleged to be alter egos of
corporation to be indispensable parties); Stewart Tenant Corp. v. Square Industries, Inc.,
703 N.Y.S. 2d 453, 454 (N.Y. App. Div. 2000) ("An action to pierce the corporate veil
requires that the purported dummy corporations be parties, even if the parent corporation is
alleged to be the one which unjustly retains the funds").  Although these decisions were in
the context of determining whether the entity concerning which the corporate veil is sought

to be pierced is an indispensible party (Tr. of Hearing on Nov. 24, 2008, p. 171), it is not clear, however why the procedural context of these decision matters. Indeed, the fact that liability may be imposed on a party based on a veil-piercing claim asserted against a non-party seems strongly to support Plaintiff's position that it may assert a veil-piercing claim regarding MCK without making it a party.

### 2. The veil-piercing claims pursuant to which Plaintiff seeks relief

Plaintiffs are clearly claiming that the corporate veil should be pierced between the Defendants and the Maryland Judgment Debtors. In the Substituted Ruling on Victoria Konover's Motion to Quash Subpoena (Doc. # 307) and for Protective Order (Doc. # 320) dated June 26, 2008 (Doc. # 430), the Special Master held that it appears that the Plaintiff is also claiming that the corporate veil should be pierced among the Defendants based on its claim that they should be held jointly and severally liable with respect to the veil-piercing claims asserted in the First and Second Counts of the Amended Complaint. (Id. at 11-13). The situation is different, however, with respect to non-party KFLP. There is no claim that the corporate veil should be pierced between either Defendants, including Michael Konover or the Maryland Judgment Debtors and KFLP. (See Ruling on Konover Family Limited Partnership's Motion to Quash (Doc. # 299) and for Protective Order (Doc. # 313), dated June 6, 2008 (Doc. # 411) at 15).

### 3. Sufficiency of allegations that Plaintiff is seeking to pierce the corporate veil of nonparty Account Management

Defendants argue that the Amended Complaint fails adequately to allege a veil-piercing claim with respect to nonparty Account Management because the operation of a common cash management account is insufficient to support a veil-piercing claim and because referring to the alleged dominated entity as a d/b/a of the alleged dominating entity

14

is insufficient to establish a veil-piercing claim, and because the Amended Complaint makes only a conclusory allegation that Account Management is the alter ego of defendant K&A.

### a.    Operation of a common cash management account

In arguing that information concerning the operation of the common cash account maintained by Account Management should not be discoverable, Defendants argue that the holding of <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1459 (2d Cir. 1995) that "alter ego liability cannot be premised upon the use of a cash management system is indisputably the law." (Ltr. to Special Master from James T. Shearin, Esq. dated Dec. 3, 2008 at 3). In <u>Fletcher</u>, the court noted that "[C]ourts have generally declined to find alter ego liability based on a parent corporation's use of a cash management system." <u>Id</u>. at 1459. Defendants and Account Management overstate, however, the holding in <u>Fletcher</u>. In <u>Fletcher</u>, the court affirmed a grant of summary judgment to the defendant. In so doing, the court of appeals held that "the district court correctly held that "Atex's participation in Kodak's cash management system is consistent with sound business practice and does not show undue domination or control." <u>Id</u>. at 1459. In <u>Fletcher</u>, the mechanics of Kodak's cash management system were that all of Kodak's domestic subsidiaries participated in the system and maintained zero-balance bank accounts; all funds transferred from the subsidiary accounts were recorded as credits to the subsidiary and when a subsidiary was in need of funds, a transfer was made. <u>Id</u>. "At all times, a strict account is kept of each subsidiary's funds." <u>Id</u>.

Significantly, none of the decisions cited by Defendants involved the appropriateness of discovery concerning a common bank account in a veil-piercing case.

Rather, they dealt with whether the party seeking to pierce the corporate veil had presented sufficient evidence to establish the claim.  Indeed, all of these courts considered evidence of a common cash management system or common bank account, although funding such evidence insufficient given the way in which the accounting for the system was handled.

The courts that have rejected a veil-piercing claim where evidence was offered or allegations made concerning a shared bank account do not go so far as stating that such evidence is irrelevant.  Rather, most decisions merely hold that the existence of such accounts is not dispositive.  See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 380 (7th Cir. 2008) ("use of a cash management system alone is not evidence that funds were being improperly comingled"); The Mall at IV Group Properties, LLC v. Roberts, 2005 WL 3338369, at *6 (D.N.J. Dec. 8, 2005) ("[e]ven a shared account is not dispositive, especially if accurate books were kept for each individual club"); Joiner v. Ryder Sys. Inc., 966 F. Supp 1478, 1486 (C.D.Ill. 1996) (holding that the fact that parent required subsidiaries to pay a fee for centralized cash management services and allowed subsidiaries to obtain the services from another source support parent's argument that it was not the alter ego of any of its subsidiaries); Acushnet River & New Bedford Harbor Proceedings Re Alleged PCB Pollution, 675 F. Supp. 22, 23 (D. Mass. 1987) ("A centralized cash management system . . . where the accounting records always reflect the indebtedness of one entity to another, is not the equivalent of intermingling funds. . . .   Although if one were 'keeping score' the centralized cash management would probably warrant a check on the' pierce' side of the ledger . . . ."); Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 843-46 (D. Del. 1978) (holding that where there were sufficient indicia of separate corporate existence, evidence, including a parent corporation's operation of a cash management program for its subsidiaries, was not

sufficient to establish that the subsidiary could be regarded as an agent or instrumentality of the parent and stating that "[a]rrangements by a parent and subsidiary for economy of expense and conveyance of administration may be made without establishing the relationship of principal and agent."). In addition, Plaintiff argues that the handling of the common cash account in the name of defendant K&A and later in the name of Account Management differed from the cash management accounts considered in Fletcher and Acushnet River cited by Defendants. The differences included the facts that: (1) unlike Fletcher and Acushnet River, the common cash account was not operated by a parent corporation for a subsidiary; (2) the individual companies did not have separate accounts; (3) the accounting records did not always reflect the indebtedness of one company to another; (4) there was no written agreement or terms governing the cash management relationship; and (5) interest earned on the account was not allocated among the participants. (See Ltr. to Special Master from Erick M. Sandler, Esq. dated Dec. 3, 2008 at 2-5).

Defendants' argument would cut off Plaintiff's ability to obtain and present evidence concerning how the common cash accounts alleged in the Amended Complaint were operated and whether the operation of the accounts supported Defendants' position that the common cash accounts evidence merely arrangements between related entities for economy and convenience of administration and were consistent with sound business practice or whether they support Plaintiff's position that they showed improper commingling, support claims of undue domination or control and a lack of separate corporate existence. Under the legal standards applicable to discovery, the discovery sough by Plaintiff's concerning the common bank account is sufficiently relevant to its veil-piercing claims to be discoverable.

17

**b.    Referring to Account Management as a d/b/a of defendant K&A**

Defendants also argue that the fact that defendant K&A may have referred to Account Management as a d/b/a of K&A is insufficient to establish a veil-piercing claim with respect to Account Management.  However, the decisions cited by Defendants were not in the context of determining relevance for discovery purposes. Fletcher v. Atex, Inc., 68 F.3d 1451 (2d Cir. 1995) involved affirmance of a summary judgment and Catalina Marketing International, Inc. v. Coolsavings.com, Inc., 2003 WL 2154249, 2003 U.S. Dist. LEXIS at 11488 (N.D.Ill. July 3, 2002), which involved a ruling on the merits of a motion to dismiss based on lack of personal jurisdiction).  In addition, to the extent that Fletcher refers to one entity as an "a/k/a" of another, the names were two different names for the allegedly dominated corporation.  Id. at 1460.  Fletcher does, however, state that the reference to one entity as a "division" of another was "not evidence that the two companies operated as a single economic entity."  68 F.3d at 1460.  See also Catalina, 2007 WL 21542491, at *5, 2003 U.S. Dist. LEXIS 11488, at *16 ("Landmark's reference to coolsavings as a division in two internal e-mails fails to demonstrate unusual control by Landmark.  Such references fail to demonstrate that a subsidiary is a mere instrumentality of its parent corporation" (citing Fletcher)); Coleman v. Corning Glass Works, 619 F. Supp. 950, 956 W.D.N.Y. 1985) (upholding corporate form despite parent's reference to subsidiary as a "division"), aff'd, 818 F.2d 874 (2d Cir. 1987).  Although the language in Fletcher suggests that evidence of this sort did not support a veil-piercing claim, none of these decisions actually involved the relevance of such evidence either at trial, or more significantly for purposes of this case, in discovery.  Also, in each case, the court considered substantial evidence supporting the actual independence of the alleged dominated entity.

18

> **c.**   **The allegation that Account Management was the alter ego
> of defendant K&A**

Defendants argue that the allegations in the Amended Complaint that the account it opened shortly after the deposition of Mr. Ainsworth in November 2005 (Amend. Complt. ¶ 32) became the common operating account (Id. ¶ 33) which issued checks as "Konover & Associates d/b/a Account Management, LLC (Id.) and that Account Management was the alter ego of K&A (Id.) are insufficient to assert a veil-piercing claim with respect to Account Management.  (Ltd to Special Master from James T. Shearin, Esq. dated Dec. 3, 2008 at 4).  It has been held that "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard." In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp.2d 385, 426 (S.D.N.Y. 2003).  See also City National Bank of Florida v. Morgan Stanley DW, Inc., 2007 WL 927428 at * 3-4, 2007 U.S. Dist. LEXIS 22187, at *9-12 (S.D.N.Y. Mar. 29, 2007); Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 374 (S.D.N.Y. 1997). However, Account Management has been alleged to be a member of the "Konover Organization" (Am. Complaint, Ex. A, item 11) and the Special Master has already indicated that the Amended Complaint alleges a veil-piercing claim concerning the members of the "Konover Organization" under the identity rule.  (See Ruling on Motion to Quash Subpoena (Doc. # 301 and for Protective Order of Non-Party MCK, Inc. (Doc. # 314) dated June 16, 2008 at 24 (Doc. # 415); Ruling on Plaintiff's Motion to Compel Production of Documents Dated November 9, 2006 (Doc. # 137) dated April 12, 2007 (Doc. # 178) at 9).  even were this not so, in order to pierce the corporate veil for purposes of attributing the acts of the alleged dominated party to the alleged dominating party, it should not be necessary for the complaint to allege an enforceable claim against the dominated

party which, as stated above, need not be made a party at all.  This seems analogous to a situation where a plaintiff seeks to attribute the acts of an agent or employee to his principal or employer.  In such cases, it is not necessary to make the agent or employee a party or to allege a legally sufficient claim against him or her.  See, e.g., Beach v. Milford Ice Co., 87 Conn. 528, 536 (1913) ("A plaintiff has the right to sue either agent or principal, or both, or either master or servant, or both."); West v. Royal Bank of Canada, 44 Conn. L. Rptr. 135, 2007 WL 2742824 (Conn. Super. Ct. Aug. 29, 2007).

> **d.      Lack of temporal proximity between the time the common cash account was in the name of Account Management and the time of  the acts complained of in the Amended Complaint**

Defendants argue that discovery concerning the common cash account operated by nonparty Account Management should be denied because Account Management "didn't even exist when any of the actions challenged in this case were allegedly undertaken." (Def. Mem. dated Feb. 29, 2008, at 4.  See also Id. at 13, 15). However, evidence of control subsequent to the transaction giving rise to the litigation may be relevant to show control over the alleged alter ego.  See, e.g., Daval Steel Products v. N/V Fakredine, 951 F.2d 1357, 1368 (2d Cir. 1991) (holding that information concerning financial transactions and movement of corporate assets subsequent to the transaction giving rise to the litigation was reasonably calculated to lead to the discovery of evidence admissible on the issue of alter ego liability within the meaning of Rule 26(b)(1)).

> **e.      Need to establish causation in connection with veil-piercing claim**

Defendants also argue that the information sought concerning Account Management is irrelevant because it bears no relation to the facts which plaintiffs must establish in order to prove that its harm was causally connected to the unity of interest among the Defendants

or between the Defendants and the Maryland Judgment Debtors.  (Def. Mem. dated Feb. 29, 2008 at 17-18).  Nor, Defendants argue, is there any claim that Account Management was the recipient of a fraudulent conveyance from one of the Maryland Judgment Debtors (Def. Mem. dated Feb. 29, 2008 at 9, 19).  However, not every piece of evidence offered in support of a veil-piercing claim need be relevant to show both the exercise of control over the alleged dominated entity and that such control caused harm to the plaintiff.  See, e.g., Daval Steel Products v. N/V Fakredine, 951 F.2d 1357, 1368 (2d Cir. 1991) (holding that information concerning financial transactions and movement of corporate assets subsequent to the transaction giving rise to the litigation was reasonably calculated to lead to the discovery of evidence admissible on the issue of alter ego liability within the meaning of Rule 26(b)(1)).  Defendants have cited no decisions holding that each piece of evidence must support both the existence of control and that the control was used to harm the party making the piercing claim.

Although it is correct that there was no relationship between Defendants or the Maryland Judgment Debtor before Account Management was created, Plaintiff also seeks to pierce the corporate veil between Michael Konover and K&A and the other Defendants and between Defendants and the Maryland Judgment Debtors.  These relationships began prior to the time Account Management was formed and continued after Account Management was formed.  If all persons and entities concerning which Plaintiff seeks to pierce the veil are treated as a single entity, then information after the time Account Management was formed may be relevant to Plaintiff's veil-piercing claims.

In addition, it is not clear that causation of harm to the plaintiff is a necessary element of a veil-piercing claim under the identity rule.  The identity rule for piercing the corporate veil applies where the plaintiff can show that there is

> [S]uch a unity of interest and ownership that the independent
> of the corporation had in effect ceased or had never begun
> [such that] an adherence to the fiction of separate identity
> would serve only to defeat justice and equity by permitting the
> economic entity to escape liability arising out of an operation
> conducted by one corporation for the benefit of the whole
> enterprise.

Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 554, 447 A.2d 406

(1982). This rule does not clearly require the party seeking to pierce the corporate veil to

establish that its harm was causally connected to the unity of interest among the parties

among which the veil is sought to be pierced, but, rather, only that "and adherence to the

fiction of separate identity would serve only to defeat justice adequately by permitting the

economic entity to escape liability arising out of an operation conducted by one corporation

for the benefit of the whole enterprise." (Id. at 554.) Here it can be argued that not

recognizing the identity between defendant K&A and Account Management would defeat

justice and equity by permitting K&A to escape liability (and, because Plaintiff also seeks to

pierce the veil between defendant Michael Konover and defendant K&A, Michael Konover

to escape liability) for the acts of the other Defendants and the Maryland Judgment

Debtors. Counsel for Defendant K&A acknowledged in connection with another motion in

this case each piece of information sought need not be relevant to all of the elements of a

veil-piercing claim that a party seeking to pierce the veil must establish, although the

information sought to be discovered must be relevant to some wrong being asserted in the

complaint. (Tr. of Hearing on Nov. 25, 2008, pp. 419-20).

## F.   Burden and Expense of Discovery Sought

Defendants base their objection to the discovery sought in requests 4 and 5 of

Plaintiff's October 26, 2007 Requests for Production on lack of relevance rather than on

22

undue burden and expense. (Tr. of Hearing on Nov. 25, 2008, pp. 406-07). They express concerns, however, that holding such discovery relevant would open the door to discovery concerning the account in the name of nonparty Account Management that would entail undue burden and expense. (Id. at 421-22). There are two answers to this concern. First, this contention is best addressed in the context of such discovery being sought. Second, as held in connection with the discovery sought concerning nonparty MCK, Inc., it is likely that to be discoverable such information must be relevant to some claim made in the Amended Complaint concerning which the Plaintiff does seek relief rather than only to a veil-piercing claim between defendant K&A and nonparty Account Management.

**CONCLUSION**

For the reasons stated herein, Plaintiffs motion to Compel Defendants (except Konover Construction Corporation) to produce documents responsive to Requests 4 and 5 of Plaintiff's October 26, 2007 Requests for production **(Doc. # 359)** is **GRANTED**. Defendants (except Konover Construction Corporation) shall produce the documents ordered to be produced within 45 days of the date this Ruling becomes final.

Pursuant to Fed. R. Civ. P. 53 (g)(2) and the order of this Court dated November 7, 2006, any party may file objections to -- or a motion to adopt or modify -- this Ruling no later than 20 days from the time this Ruling is served.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master