UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WELLS FARGO BANK, N.A. TRUSTEE : | |
| Plaintiff, : | |
| vs. : | No. 3:05CV1924(CFD)(WIG) |
| MICHAEL KONOVER, et al : | |
| Defendants. : | MARCH 4, 2009 |

**RULING ON (Doc. # 426) MOTION FOR CLARIFICATION AND
LIMITED RECONSIDERATION OF SPECIAL MASTER'S RULING
REGARDING MCK, INC.'S MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER DATED JUNE 16, 2008 (Doc. # 415)**

By motion dated June 30, 2008 **(Doc. # 426)**, non-party MCK, Inc. ("MCK") has moved for clarification and limited reconsideration of the Special Master's Ruling on Motion to Quash Subpoena (Doc. # 301) and for Protective Order of Non-Party MCK, Inc. (Doc. # 314) dated June 16, 2008 **(Doc. # 415)**. For the reasons stated herein, this motion is **GRANTED IN PART** and **DENIED IN PART**.

MCK moves for reconsideration of the Special Master's June 16, 2008 Ruling on grounds that it appears to overrule or be inconsistent with the Special Master's April 12, 2007 Ruling (Doc. # 176) as clarified by the Special Master's Ruling dated April 26, 2007 (Doc. # 180) and that the Amended Complaint does not assert a veil-piercing claim with respect to non-party MCK. MCK also seeks to have the Special Master reconsider its ruling concerning Document Request Nos. 2, 3, 4, 9, 16, 21 and 22 and the corresponding areas of inquiry on grounds that the requests are overly broad and unduly burdensome.

### A. Whether the Special Master's June 16, 2008 Ruling (Doc. # 415) Is Inconsistent With and Precluded By the Special Master's April 12 and 27, 2008 Rulings (Docs. ## 176 and 180)

Non-party MCK seeks reconsideration of the Special Master's June 16, 2008 Ruling **(Doc. # 415)** on the basis that it is precluded by and inconsistent with the Special Master's April 12 and 27, 2007 Rulings (Docs. ## 176 and 180). Specifically, MCK argues that in the April 12, 2007 Ruling, the Special Master held that documents concerning non-defendant "Defendant Affiliated Entities" and transactions between Defendants and those entities are not relevant to any claim or defense of any party to this Action (citing the April 12, 2007 Ruling at 7), but that in his June 16, 2008 Ruling (Doc. # 415), the Special Master held that information concerning transfers of assets and business activities between Defendants and non-party affiliated entities might be relevant to Plaintiff's veil piercing claims between Defendants and the Maryland Judgment Debtors and Plaintiff's claims of fraudulent transfers between Defendants and the Maryland Judgment Debtors (citing the June 16, 2008 Ruling at 18) (MCK Mem. dated June 30, 2008 at 2).

The argument advanced by MCK is the same argument it made in connection with its November 16, 2007 Motion to Quash Subpoena and for Protective Order (Doc. # 301) which was addressed in the June 16, 2008 Ruling **(Doc. # 415)**. (See MCK Mem. dated Nov. 16, 2007 (Doc. # 302) at 13-14, 18-21; MCK Reply Mem. dated Dec. 20, 2007 at 2-8). Although it is generally inappropriate to seek reconsideration of a ruling based on arguments already advanced and rejected; see, e.g., Russo v. Waring, 2006 WL 1601391, at *3, 2006 U.S. Dist. LEXIS 37164, at *3 (D. Conn. June 7, 2006) (Droney, J.); the question of whether to reconsider a prior ruling is discretionary and the court is not limited in its ability to reconsider its own decision prior to final judgment. See Arizona v. California,

460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983); <u>Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd</u>, 956 F.2d 1245, 1255 (2d Cir. 1992); <u>Melamud v. United States Dept. of Home Security, Citizenship and Immigration Services</u>, 2007 WL 2870978, at *1, 2007 U.S. Dist. LEXIS 71264, at *2 (D. Conn. Sept. 25, 2007) (Dorsey, J.). In addition, some courts have stated that "somewhat greater latitude is warranted where . . . the court is asked to reconsider a ruling on a discovery motion prior to a determination on the merits." <u>Charles v. Cotter</u>, 1994 WL 424144, at *1, 1994 U.S. Dist. LEXIS 11255, at *3, n.1 (N.D. Ill. Aug. 11, 1994). Treating MCK's motion as being based on an attempt to correct a "clear error" and to avoid "manifest injustice" (see MCK Mem. dated Oct. 3, 2008 at 4-5), MCK's motion for reconsideration is **GRANTED**.

However, it is clear that repeating in a motion for reconsideration arguments already made and rejected has the potential to cause significant delays in the proceedings and an increase in cost to the parties. In light of the time consumed by the extensive discovery already undertaken in this case, the delays and additional cost inevitably resulting from motions for reconsideration, and the impact of such delays on a final resolution of this matter, I am putting the parties on notice that, in the future, I am likely to take a significantly less liberal approach to granting motions for reconsideration when the grounds for such a motion was or could have been raised in connection with the original motion.

Concerning the merits of MCK's argument, as noted in the Special Master's June 16, 2008 Ruling **(Doc. # 415)**, the April 26, 2007 Ruling held that "Plaintiffs may not discover transfers of assets or business activities between the Defendants and 'Defendant Affiliated Entities' <u>except to the extent that they involve transfers of assets or business activities between the judgment debtors in the Maryland Action and the Defendants in this action</u>." (<u>Id</u>. at 18) (emphasis added). It is clear that in this case, Plaintiff seeks to pierce the veil

between the Defendants, including defendant Michael Konover, and the Maryland Judgment Debtors.  (See Am. Complaint, First Count, Second Count).  Plaintiff also clearly seeks to pierce the corporate veil between defendant Michael Konover and the entity Defendants.  (See, Tr. of Hearing on Nov. 24, 2008, p. 190; Am. Complaint, ¶¶ 12-14, First Count ¶ 80, Second Count ¶ 77; Pl. Mem. dated Aug. 3, 2007 at 10-11).

Plaintiff contends that it is seeking to pierce the corporate veil between defendant Michael Konover and non-party MCK, even though it is not seeking to have MCK held liable on the basis of veil-piercing.  (Tr. of Hearing on Nov. 24, 2008 at 118-20, 170).  As the Special Master held in his June 16, 2008 Ruling **(Doc. # 415)**, it is not necessary that the entity concerning which a veil-piercing claim is made be made a party.  (June 16, 2008 Ruling at 24-25).  See  Vertrue Inc. v. Meshkin, 429 F. Supp. 2d 479, 505 (D. Conn. 2006); Andrews v. Caron Brothers, 1992 WL 67396, at *6-7 (Conn. Super. Mar. 26, 1992); In re Baranello & Sons, Inc., 149 B.R. 19, 29-31 (Bkrtcy. E.D.N.Y. 1992).  Cf.  Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 1751780, at *5-6 (S.D.N.Y. 2003) (holding that alleged joint tortfeasors are not indispensable parties).  But see Miramax Film Corp. v. Abraham, 2003 WL 22832384, at *9 (S.D.N.Y. Nov. 25, 2003) (holding that "under New York law, shell companies are necessary parties in an action to pierce the corporate veil"); Amoco Prod. Co. v. Aspen Group, 189 F.R.D. 614, 616 (Colo. 1999) (holding shareholders alleged to be alter egos of corporation to be indispensable parties); Stewart Tenant Corp. v. Square Industries, Inc., 703 N.Y.S. 2d 453, 454 (N.Y. App. Div. 2000) ("An action to pierce the corporate veil requires that the purported dummy corporations be parties, even if the parent corporation is alleged to be the one which unjustly retains the funds").  MCK attempts to distinguish these decisions on the basis that they address whether the entity concerning which the corporate veil is sought to be pierced

is an indispensible party. (Tr. of Hearing on Nov. 24, 2008, p. 171). It is not clear, however why the procedural context of these decision matters. Indeed, the fact that liability may be imposed on a party based on a veil-piercing claim asserted against a non-party seems strongly to support Plaintiff's position that it may assert a veil-piercing claim regarding MCK without making it a party.

Two conditions must, however, be satisfied in order to make transactions involving non-party MCK discoverable: (1) there must be sufficient allegations in the Amended Complaint to indicate that such a contention is being made; and (2) the discovery sought must be relevant to some claim concerning which the Plaintiff seeks relief that is made in the Amended Complaint. The Amended Complaint alleges that the entities in the "Konover Organization," including MCK, constitute a single business enterprise with a unity of interest controlled by defendant Michael Konover and operated for his financial benefit. (Am. Complaint ¶¶ 13-14; Ex. A). As noted in the June 16, 2008 Ruling (Doc. # 415 at p. 24), the allegations of the original Complaint appeared sufficient to support a claim for piercing the corporate veil between Defendants and the "Defendant Affiliated Entities" under the identity Rule. (See April 12, 2007 Ruling at 9). However, at the time of the April 2007 Rulings, neither MCK nor many other entities in the so-called "Konover Organization" were specifically identified in the Complaint. Nor were there any allegations linking the actions of such entities (other than the entity Defendants and the Maryland Judgment Debtors) to the claims that were asserted in the Complaint. In light of this, the Special Master held that transactions with these unidentified "Defendant Affiliated Entities" were not discoverable.

However, the Amended Complaint specifically identifies non-party MCK as a member of the "Konover Organization" (Am. Complaint, Ex. A, item 148) and also alleges the role MCK played in supplying funds to defendant Konover & Associates, Inc. ("K&A")

and other members of the "Konover Organization", including Defendants and the Maryland Judgment Debtors (Am. Complaint ¶¶ 30, 51). The Amended Complaint alleges that MCK was directly involved in at least one fraudulent transfer, namely the transfer of Maryland Judgment Debtor KMC's partnership interest in the Konover Family Limited Partnership to defendant Ripple LLC on or about June 24, 2005, shortly after the Maryland Court announced that it would enter judgment in favor of Plaintiff Wells Fargo against KMC. (Pl. Mem. dated Dec. 7, 2005 at 5; Am. Complaint ¶¶ 50-51; Third Count ¶ 78(f)). Plaintiff has also presented evidence that MCK has served as a bank for the various entities that used the common bank account, including the Defendants and the Maryland Judgment Debtors; that MCK acted as a conduit for defendant Michael Konover to distribute cash as necessary to the corporate Defendants and Judgment Debtors; that whenever one Konover entity had excess funds, that entity would make a shareholder distribution to defendant Michael Konover by depositing cash into MCK's account and defendant Michael Konover would then redistribute the funds in MCK's account as a capital contribution to other Konover entities. (Dep. of Maryland Judgment Debtor Konover Management Corporation's corporate representative James T. Ainsworth dated May 31, 2007 at 56-57).

These additional allegations and evidence concerning the role of non-party MCK distinguishes the situation from that addressed in the April 2007 Rulings, at which time the Complaint included only very broad allegations that the "Konover Organization," which consisted of more than 200 unidentified entities was really a single entity. There were no allegations in the original Complaint concerning the role that any of these unidentified entities played in connection with the specific claims made in the Complaint and these broad allegations were held insufficient to trigger a self-evidently massive discovery obligation with respect to transactions with these unidentified non-parties. That is no longer

the case with respect to non-party MCK. MCK has been specifically identified in the Amended Complaint and its role in the transactions by which defendant Michael Konover supplied funds to Defendants and the Maryland Judgment Debtors has been described in the Amended Complaint and supported by evidence. Therefore, after reconsideration, non-party MCK's motion to modify the June 16, 2008 Ruling **(Doc. # 415)** concerning the relevance of discovery from MCK in general is **DENIED**.

### B. Whether Certain Document Requests and Areas of Inquiry Are Overly Broad and Unduly Burdensome

Non-party MCK also seeks reconsideration or clarification concerning items 2,3,4,9, 16, 21 and 22 of Plaintiff's November 2, 2007 subpoena and the corresponding areas of inquiry which MCK argues are overly broad and unduly burdensome. In the June 16, 2008 Ruling **(Doc. # 415)**, the Special Master rejected any limitation on the scope of discovery ordered by MCK based on overbreadth or undue burden or expense. (June 16, 2008 Ruling at 29-30). The Special Master noted that in his April 12, 2007 Ruling, he had put the parties on notice concerning authority holding that the objecting party bears the burden of demonstrating how the request objected to is overly broad by submitting affidavits or offering evidence revealing the nature of the burden. (See June 16, 2008 Ruling at 29-30; April 12, 2007 Ruling at 15 n. 3). Despite this, in connection with its motion leading to the June 16, 2008 Ruling, MCK provided the Special Master with no specific information concerning the extent of the claimed undue burden and expense. Seeking reconsideration and clarification, MCK now argues that its failure to present such evidence was based on its belief that the April 2007 Rulings clearly did not require production of the documents sought from it by Plaintiff and that the first it heard of a veil-piercing claim being made

concerning non-party MCK was the Special Master's June 16 Ruling. (See MCK Reply Mem. dated Oct. 3, 2008 at 4-5; Tr. of Hearing on Nov. 24, 2008 at 160-65).

The overbreadth and undue burden and expense arguments advanced by MCK in connection with its motion for reconsideration and clarification could have been presented in its original motion. As noted in As noted in Elliott v. British Tourist Auth., 2001 WL 963972 2001 U.S. Dist. LEXIS 12695 (S.D.N.Y. Aug. 22, 2001):

> The truth seeking aspect of the adversarial process requires that when parties litigate a contested question, they make their best arguments in the first instance, so that through the clash of these positions, their relative strengths may become apparent. Were it permissible for a party to deploy additional evidence in successive and repetitive motions, a court decision would provide little meaningful repose to a litigant.
>
> Moreover, the impact of the court's work load would be severe if, each time a party received an adverse decision that party was permitted then to submit already available, important new factual materials in an effort to reverse the adverse decision.

2001 WL 963972, at *3 2001 U.S. Dist. LEXIS 12695, at *7-9. See also Robinson v. Holland, 2008 WL 1924972, at *1 (D. Conn. Apr. 30, 2008) (Droney, J.) (holding that party seeking reconsideration failed to show that newly provided information could not have been discovered earlier had he exercised due diligence and therefore, did not constitute newly discovered evidence and did not warrant reconsideration of the prior ruling). However, in this case, there is sufficient justification concerning MCK's understanding of the scope of the April 2007 Rulings to justify reconsideration and clarification of the particular items in the November 1, 2007 subpoena which MCK contends are overbroad or would impose undue burden and expense.

However, in light of the time consumed by the extensive discovery already undertaking and the delays inevitably resulting from motions for reconsideration and the impact of such delays on a final resolution of this matter, I am putting the parties on notice that, in the future, I am likely to take a significantly less liberal approach to granting motions for reconsideration when the grounds for such a motion or the facts supporting those grounds, including grounds of undue burden and expense, could have been raised in connection with the original motion, but were not.

### 1. Items 2 and 3 concerning loans by MCK

Items 2 and 3 of the document requests in Plaintiff's subpoena to MCK requests production of:

> 2. Documents and communications concerning the use of the Loan Funds.
>
> 3. Documents and communications concerning the repayment of the Loans and the source of funds for the repayment.

The subpoena does not define "Loan Funds." It does, however, define "Loan."

> G. "Loan" shall mean any loan transaction or line of credit, including, but not limited to:
>
> (1) a revolving line of credit in the amount of $3.2 million with Bank of America f/k/a Fleet Bank issued for the benefit of MCK, Inc., a corporation wholly owned by Michael Konover, pursuant to an Amended and Restated Loan Agreement dated as October 30, 1995, as amended by a First Amendment to the Amended and Restated Loan Agreement dated as of December 31, 1996, amended by a Second Amendment to Amended and Restated Loan Agreement dated as of September 12, 1998, amended by a Third Amendment of Amended and Restated Loan Agreement dated March 15, 1999, and amended by a Fourth Amendment of Amended and Restated Loan Agreement dated as of September 26, 2001, amended by a Fifth Reaffirmation Agreement sometime in 2002; and

9

>(2) a revolving line of credit in the amount of $3.2 million with People's Bank issued for the benefit of MCK, Inc., a Corporation wholly owned by Michael Konover, pursuant to a Commercial Revolving Loan Agreement dated July 28, 1997; and
>
>(3) Any other loan transaction involving MCK where a Judgment Debtor or Defendant acted as maker, co-maker, guarantor, pledgor of collateral on an MCK loan.

Subpoena dated November 1, 2007, Schedule A at 2.

MCK argues that these requests would obligate MCK to produce every piece of paper concerning the use or repayment of the loan funds regardless of whether the parties involved in the transaction were Connecticut Defendants, Maryland Judgment Debtors or other parties concerning which no veil-piercing or fraudulent transfer claims are being made. (MCK Mem. dated June 30, 2008 at 10-11). It requests that Document Requests 2 and 3 should be limited to transactions involving only MCK and a Connecticut Defendant and/or a Maryland Judgment Debtor. (Id. at 12).

MCK's position has merit. As noted above in this Ruling, the discovery sought must be relevant to some claim concerning which the Plaintiff seeks relief in the Amended Complaint. These claims include only transactions or alleged fraudulent transfers involving only the Defendants or the Maryland Judgment Debtors. No relief is requested concerning MCK itself. As has been held in other discovery rulings, transfers from a Maryland Judgment Debtor or an entity Defendant (although not Michael Konover personally) may be relevant to Plaintiff's veil piercing claims. Although it could be argued that information concerning transactions involving other "Defendant Affiliated Entities" which are not Defendants or Maryland Judgment Debtors might be relevant to show defendant Michael Konover's control of MCK, unless this control relates to an entity the corporate veil of which

plaintiff contends should be pierced, whatever relevance such evidence may have to establishing Michael Konover's control over MCK is too remote to justify opening up discovery concerning transactions with numerous entities as to which Plaintiff has not asserted a specific veil-piercing claim.

Therefore, non-party MCK's obligation to produce documents concerning Document Requests 2 and 3 of Plaintiff's November 1, 2007 subpoena is limited to documents concerning the use of loan funds, the terms of repayment for such loans, and the source of funds for such repayment only if MCK and a Connecticut Defendant or a Maryland Judgment Debtor were involved in the transaction.

### 2. Items 4 and 9 concerning transactions between Maryland Judgment Debtors

Items 4 and 9 of the document requests in Plaintiff's November 1, 2007 subpoena to MCK requests production of:

> 4. Documents and communications concerning Transactions among and/or between the Defendants and Judgment Debtors that involved, in any respect, MCK, and the accounting treatment of such transactions.
>
> 9. Documents and communications concerning distributions, contributions or compensation paid among and/or between the Defendants and Judgment Debtors that involved, in any respect, MCK, including the accounting treatment of any such distribution, contribution or compensation.

"Transaction" is defined broadly in the subpoena.

> F. "Transaction" shall mean any (i) payment or transfer of cash or cash equivalent (or contract or invoice for payment or transfer of cash or cash equivalent); ii) sale, exchange or leasing of any property (or contract to sell, exchange or otherwise transfer property; iii) lending of any money or other

> extension or guarantee of credit (or contract for lending of any money or extension or guarantee of credit); (iv) furnishing of goods, services, or facilities (or contract or invoice to furnish goods, services or facilities); (v) transfer to, or use by or for the benefit of one Person of an assert or assets of the other (or contract to transfer to, or use by or for the benefit of one Person of an assert or assets of the other), or (vi) any management fee agreements, cost reimbursement agreements, construction agreements, consulting or representation agreements, grounds lease or profit-sharing agreements, or any other service or good payments.

MCK seeks reconsideration of the June 26, 2008 Ruling requiring it to produce the documents requested to the extent that they involve only transactions between Maryland Judgment Debtors that involved MCK. MCK notes that in the June 26, 2007 Ruling on Plaintiff's motion to compel (Doc. # 248), the Special Master held that, because Plaintiff does not seek to pierce the corporate veil between the Maryland Judgment Debtors, Plaintiff may not compel production of information involving third parties and two or more of the Maryland Judgment Debtors, but did not involve any of the Defendants. (June 26, 2007 Ruling at 23). Plaintiff argues that because it seeks to pierce the corporate veil between defendant Michael Konover and MCK, and MCK "is merely a conduit for payment to or from Michael Konover, a transaction involving two or more [Maryland] Judgment Debtors and MCK effectively involves Konover." (Pl. Mem. dated Sept. 22, 2008 at 5). "Thus," Plaintiff argues, "those transactions are reasonably likely to lead to the discovery of admissible evidence regarding the Trustee's claim that the corporate veils of the [Maryland] Judgment Debtors should be pierced to hold Michael Konover personally liable for their obligations to the Trustee." (Id.). Here, Plaintiff appears to have the more persuasive argument. Therefore, after reconsideration, MCK's motion for reconsideration of the Special Master's

June 26, 2008 Ruling in order to limit the scope of Requests 4 and 9 in Plaintiff's November 1, 2007 subpoena is **DENIED**.

### 3. Item 16 concerning MCK's drawing of checks against, debits to and withdrawal of funds from bank accounts used by any of the Defendants or Maryland Judgment Debtors

Item 16 of the document requests in Plaintiff's subpoena to MCK requested production of:

> 16. Documents and communications concerning MCK's drawing of checks against, debits to, and withdrawals of funds from bank accounts that are also used by or have been used by any of the Defendants or Judgment Debtors and how the funds and the use of the funds have been or are accounted for on MCK's general ledger.

MCK argues that Request No. 16 is overbroad because it is not limited to information about banking transactions between MCK and either the Defendants or the Maryland Judgment Debtors, but would require production of all documents and communications about every banking transaction even if they involved nonparties as to which Plaintiff is not asserting a veil-piercing claim. (MCK Mem. dated June 30, 2008 at 13-14). MCK argues that the burden of tracking all payment and disbursements from the bank account from 2000 to the present would involved "the expense of countless hours of time by attorneys and paralegals to sort through, collect, review and produce these documents . . . none of which have any relevance to any of the claims contained in the Amended Complaint." (Id. at 15; Aff. of MCK, Inc. dated June 30, 2005 ¶ 6). Although as noted in the June 16, 2008 Ruling **(Doc. # 415)**, as a general proposition, courts have held that the joint use of bank accounts is relevant to determining whether the corporate veil should be pierced (Id. at 26-27), banking transactions involving only non-party MCK and an entity as to which no veil-piercing claim

is being asserted or which is alleged to have been involved in a fraudulent transaction seems of no or at most only marginal relevance to the veil piercing and fraudulent conveyance claims that Plaintiff is making. At the same time, the burden of producing that information appears to be substantial.

Therefore, MCK's motion for reconsideration is **GRANTED** and MCK's response to document request 16 may be limited to transactions involving MCK, Inc. and one or more of the Connecticut Defendants or the Maryland Judgment Debtors.

### 4. Items 21 and 22 concerning office space shared by MCK and Defendants and Maryland Judgment Debtors

Items 21 and 22 of the document requests in plaintiff's subpoena to MCK request production of:

> 21. All documents and communications concerning MCK's use or lease of office space at 16 Munson Road or 135 South Road in Farmington, Connecticut.
>
> 22. All documents and communications concerning payments made by MCK to Munson Road LLC or 135 South Road LLC.

MCK argues that there is no claim that either Munson Road LLC or 135 South Road LLC, is the alter ego of any of the Connecticut Defendants or Judgment Debtors. MCK also argues that Plaintiff has not made a claim to pierce the corporate veil between MCK and defendant Michael Konover. (MCK Mem. dated June 30, 2008 at 15). MCK is correct with respect to Munson Road LLC and 135 South Road LLC. However, as held in the Special Masters June 16, 2008 Ruling **(Doc. # 415)** and confirmed in this Ruling, Plaintiff is asserting that the corporate veil should be pierced between defendant Michael Konover and non-party MCK. Plaintiff is also claiming that the veil should be pierced between defendant Michael Konover and the entity Defendants and between Michael Konover and the Maryland

14

Judgment Debtors. MCK argues that Plaintiff is not asserting a veil-piercing claim between MCK and Defendants other than Michael Konover. (MCK Mem. dated June 30, 2008 at 15-16; Tr. of Hearing on Nov. 24, 2008, p. 188). However, since Plaintiff is making a veil-piercing claim between MCK and defendant Michael Konover and also between defendant Michael Konover and the entity Defendants and the Maryland Judgment Debtors, it is, effectively making a claim that all of these entities and Michael Konover should be treated as a single entity.

Among the factors relevant in determining whether an entity is dominated or controlled by another are whether the entities have common office space, addresses and telephones. See Litchfield Asset Management Corp. v. Howell, 70 Conn. App. 133, 152-53, 799 A.2d 298, 313 (2002). As MCK concedes Plaintiff is making veil-piercing claims between defendant Michael Konover and the entity defendants (Tr. of Hearing on Nov. 24, 2008 at 190) and it is clear that Plaintiff is asserting veil-piercing claims between Michael Konover and the Maryland Judgment Debtors. Therefore, if an entity Defendant or Maryland Judgment Debtor shared space with MCK or provided space to MCK without charge, that evidence would be relevant to the veil-piercing claim between defendant Michael Konover and MCK. After reconsideration of the June 16, 2008 ruling with respect to request Nos. 21 and 22, MCK's motion that it should not be required to produce documents responsive to these requests is **DENIED**.

4. **Whether in order to be discoverable with respect to a veil-piercing claim, documents or information must be relevant both to whether the entity was controlled by another person or entity and to whether use of that control caused damage to Plaintiff**

Although not made specific in support of either its original motion to quash and for protective order or its pending motion for clarification and reconsideration, at the November 24, 2008 hearing on MCK's motion, MCK argued that in order to be relevant, evidence has to support not only the control element of a piercing claim but has to support a claim that the Plaintiff was damaged by use of that control. (Tr. of Hearing on Nov. 24, 2008 at 191-92). This issue is addressed in connection with the Special Master's Ruling on Plaintiff's Motion to Compel Compliance with Requests 4 and 5 of Plaintiff's October 26, 2007 Requests for Production (Doc. # 359) dated March 4, 2009 and the Special Master's Ruling on Defendants' Motion for Protective Order Regarding Subpoena Directed to Kostin Ruffkess & Co. Dated December 19, 2007 (Doc. # 333) dated March 4, 2009.

F. **Application of Ruling to Corresponding Areas of Inquiry**

In addition to its motion for reconsideration of the Document Requests, MCK also seeks reconsideration of the corresponding Areas of Inquiry set forth in the subpoena. The rulings with respect to the Document Requests in Plaintiff's November 1, 2007 subpoena to MCK are equally applicable to the corresponding Areas of Inquiry set forth in the subpoena. The corresponding areas of inquiry are as follows:

| Document Request | Area of Inquiry |
| --- | --- |
| 2,3 | 1 |
| 9 | 4 |
| 16 | 12 |
| 21 | 18 |
| 22 | 19 |
| 2,3,9,16,21 and 22 | 20-23, 25 |

### C. Date for Compliance

To the extent ordered in this Ruling, MCK shall make the documents requested in the November 1, 2007 subpoena and make a witness available to testify concerning the Areas of Inquiry set forth in the subpoena within 45 days of the date this Ruling becomes final.

### CONCLUSION

For the reasons set forth herein, the motion of non-party MCK, Inc. for limited reconsideration of the Special Master's Ruling Regarding MCK, Inc.'s Motion to Quash Subpoena and for Protective Order Dated June 16, 2008 (Doc. # 415) dated June 30, 2008 **(Doc. # 426) is GRANTED IN PART and DENIED IN PART**.

MCK's motion for reconsideration is **GRANTED**. However, after reconsideration, MCK's motion to modify the June 16, 2008 Ruling (Doc. # 415) concerning the relevance of discovery from MCK in general is **DENIED**.

MCK's obligation to produce documents concerning Requests 2 and 3 of Plaintiff's November 1, 2007 subpoena is limited to documents concerning the use of loan funds, the terms of repayment for such loans, and the source of funds for such repayment only if MCK and a Connecticut Defendant or a Maryland Judgment Debtor or a member of Michael Konover's family were involved in the transaction.

MCK's motion for reconsideration of the Special Master's June 26, 2008 Ruling concerning Requests 4 and 9 in Plaintiff's November 1, 2007 subpoena to limit the scope of Requests 4 and 9 is **DENIED**.

MCK's motion for reconsideration of the Special Master's June 26, 2008 Ruling concerning Request 16 is **GRANTED** and MCK's response to Request No. 16 may be

limited to transactions involving MCK, Inc. and one or more of the Connecticut Defendants or the Maryland Judgment Debtors.

MCK's motion for reconsideration of the Special Master's June 26, 2008 Ruling concerning Requests 21 and 22 is **DENIED**.

The Ruling concerning Document Requests 2, 3, 9, 16, 21 and 22 are also applicable to the corresponding Areas of Inquiry 1, 4, 12, 18, 19, 20-23 and 25.

To the extent ordered in the Ruling, MCK shall make the documents requested in the November 1, 2007 subpoena and make a witness available to testify concerning the Areas of Inquiry set forth in the subpoena within 45 days of the date this Ruling becomes final.

Pursuant to Fed. R. Civ. P. 53 (g)(2) and the order of this Court dated November 7, 2006, any party may file objections to -- or a motion to adopt or modify -- this Ruling no later than 20 days from the time this Ruling is served.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master