UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WELLS FARGO BANK, N.A. TRUSTEE : 

      Plaintiff, :

vs. : No. 3:05CV1924(CFD)(WIG)

MICHAEL KONOVER, et al :
      Defendants. : MARCH 4, 2009

**RULING ON (DOC. # 449) MOTION FOR RECONSIDERATION
AND/OR CLARIFICATION OF RULING ON PLAINTIFF'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO
PLAINTIFF'S SECOND, THIRD, AND FOURTH REQUESTS FOR PRODUCTION
(DOC. # 264) DATED JUNE 26, 2008 (DOC. # 429)**

By motion dated July 18, 2008 **(Doc. # 449)**, Defendants have moved for reconsideration and/or clarification of the Special Master's Ruling on Plaintiff's Motion to Compel Defendants' Production of Documents Pursuant to Plaintiff's Second, Third and Fourth Requests for Production **(Doc. # 264)** dated June 26, 2008 **(Doc. # 429)**. For the reasons stated herein, this motion is **GRANTED IN PART** and **DENIED IN PART.**

Defendants move for reconsideration of the Special Master's June 26, 2008 Ruling on three grounds: (1) compliance would be unduly burdensome and expensive and unreasonably duplicative and cumulative; and (2) the general ledger entries concerning which backup information is sought do not reflect transactions between Defendants and the Maryland Judgment Debtors and are, therefore, beyond the holding of the Special Master's June 26, 2008 Ruling; and (3) documents evidencing control of an entity concerning which a veil-piercing claim is made are not relevant unless they also evidence that Plaintiff was harmed by the exercise of such control.

I. **DEFENDANT'S MOTION FOR RECONSIDERATION BASED ON UNDUE BURDEN AND EXPENSE**

In their opposition to Plaintiff's motion to compel dated June 26, 2008 (Doc. # 264), Defendants argued that compliance would impose an enormous discovery burden, but concede that they did not provide either an affidavit or any recitation of facts describing the extent and cost of the burden. (Tr. of Hearing on Nov. 24, 2008, p. 230-31, 236). Defendants explain this failure by arguing that they believed that the undue burden and expense was self-evident. (Id. at 231-36). However, in his June 26, 2008 Ruling (Doc. # 429), the Special Master specifically addressed the burden and expense issue. (Id. at 27-29). The burden and expense claim made by Defendants is significantly different from that addressed in the Special Master's April 12, 2007 Ruling (Doc. # 178), where the Special Master held that compliance with requests to produce documents on a variety of transactions between Defendants and the Maryland Judgment Debtors and 222 unnamed non-party entities was unduly burdensome and expensive on its face. Id. at 13-15. Moreover, as noted in the June 26, 2008 Ruling, the Special Master had, in the April 12, 2007 Ruling cited at length the numerous decisions, including some from this district, holding that the objecting party bears the burden of demonstrating how the request is overbroad by submitting affidavits or offering evidence revealing the nature of the burden. (June 26, 2008 Ruling at 28; April 12, 2007 Ruling at 15 n.3). Defendants failed to do this.

In support of their motion for reconsideration, Defendants have presented an affidavit and exhibits describing the extent of the burden and cost of compliance, including six weeks of retrieval, compilation and copying by at least two employees and a temporary worker and an additional 200 hours of attorney and paralegal review and preparation for production. (Def. Mem. dated July 18, 2008, Ex. A ¶¶ 9-22). A substantial amount of this

2

burden and expense would be caused by the lack of specificity in the general ledger entries concerning which discovery is sought. (Id. at ¶¶ 9-18).

"Motions for reconsideration are implicitly authorized by Local Rule of Civil Procedure 7(c)1, which provides that such motions 'shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order.' A court's reconsideration power is related to the 'amorphous' law-of-the-case doctrine, which 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) . . . ." Von Spee v. Von Spee, 558 F.Supp. 223, 224 (D. Conn. 2008) (Arterton, J.).

Ultimately, the question of whether to reconsider a prior ruling is discretionary and the court is not limited in its ability to reconsider its own decision prior to final judgment. See Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983); Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd, 956 F.2d 1245, 1255 (2d Cir. 1992); Melamud v. United States Dept. of Home Security, Citizenship and Immigration Services, 2007 WL 2870978, at *1, 2007 U.S. Dist. LEXIS 71264, at *2 (D. Conn. Sept. 25, 2007) (Dorsey, J.); Brocuglio v. Proulx, 478 F.Supp.2d 309, 327 (D. Conn. 2007) (Underhill, J.); Berube v. Great Atlantic & Pacific Tea Co., Inc., 2007 WL 30863, at *2 (D. Conn. Jan. 4, 2007) (Dorsey, J.). Reconsideration will generally be granted only when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. (citations omitted). See also Melamud v. United States Dept. of Homeland Security, Citizenship and Immigration

Services, 2007 WL 2870978, at *1 2007 U.S. Dist. LEXIS 71264, at *2-3 (D. Conn. Sept. 25, 2007) (Dorsey, J.). Although this standard has been described as "strict;" see e.g., Schrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995); Berube v. Great Atlantic & Pacific Tea Co., Inc., 2007 WL 30863, at *2 (D. Conn. Jan. 4, 2007) (Dorsey, J.) (granting motion for reconsideration, but adhering to prior ruling on motion to compel discovery); Russo v. Waring, 2006 WL 1601391, at *1, 2006 U.S. Dist. LEXIS 37164, at *3 (D. Conn. June 7, 2006); some courts have stated that "somewhat greater latitude is warranted where . . . the court is asked to reconsider a ruling on a discovery motion prior to any determination on the merits." Charles v. Cotter, 1994 WL 424144, at * n.1 1994 U.S. Dist. LEXIS 11255, at * 3, n.1 (N.D. Ill. Aug. 11, 1994). Moreover, "the law of the case doctrine . . . need not be applied where no prejudice results from its omission." Virgin Atlantic Airways, 956 F.2d at 1255. See also, Brocuglio v. Proulx, 478 F.Supp.2d 309, 327 (D. Conn. 2007) (Underhill, J.). In this context, "prejudice does not mean the harm which results from a failure to apply the [law of the case] doctrine, rather, it refers to a lack of sufficiency of notice and an opportunity to prepare armed with the knowledge that one judge is disregarding the ruling of another." Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co., 736 F.Supp. 1226, 1228-29 (D. Conn. 1990) (Nevas, J.).

    Applying the principles applicable to motions for reconsideration, and taking into account Defendants' new showing concerning burden and expense, Defendants' motion for reconsideration **(Doc. # 449)** is **GRANTED**. However, in light of the time consumed by the extensive discovery already undertaken in this case and the delays and additional cost inevitably resulting from motions for reconsideration and the impact of such delays on a final resolution of this matter, I am putting the parties on notice that, in the future, I am likely to take a significantly less liberal approach to granting motions for reconsideration when the

grounds for such a motion or the facts supporting those grounds, including grounds of undue burden and expense, could have been raised in connection with the original motion, but were not.

## II. DISCOVERY OF BACKUP DOCUMENTATION CONCERNING 1,278 GENERAL LEDGER ENTRIES

### A. Backup Documentation Limited to Transactions Among Defendants or Between Defendants and Maryland Judgment Debtors

In his June 26, 2008 Ruling, the Special Master rejected Defendants' claim that the parties had reached an agreement concerning a narrowing of the request for backup information concerning the 1,278 general ledge entries. (June 26, 2008 Ruling **(Doc. # 449)** at 14-23). Plaintiff's September 14, 2007 motion to compel **(Doc. # 264)** sought to compel production of backup documents for 1,278 general ledger entries which, Plaintiff argues, "are relevant to, or likely to lead to the discovery of admissible evidence concerning the Trustee's veil-piercing claims. (Pl. Mem. dated Sept. 14, 2007 at 9). Plaintiff represented that these 1,278 general ledger entries were identified from over 4,000 general ledger entries included in the Transaction Compilation prepared by Defendants and over ten thousand general ledger entries produced in this action. (Id.)

Prior to the June 26, 2008 Ruling, Plaintiff had proposed to reduce the number of transactions concerning which backup was being requested to 160 if Defendants would agree to provide the backup for those 160. (Tr. of Hearing on Nov. 24, 2008 at 239-41). This proposal was made without prejudice to the Plaintiff being able to seek additional documents after the initial production of 160. (Id. at 265-66). At the November 24, 2008 hearing, Defendants stated that if this proposition were offered now, they would be agreeable. (Id. at 240-41). Plaintiff stated, however, that they were no longer willing to

5

extend that offer in light of the delay and the fact that they were required to file a motion to compel. (Id. at 255). In the absence of an agreement among the parties concerning a limitation on the scope of the request for backup documentation, the Special Master initially limited compliance to entries involving $1,000.00 or more. (Id. at 271-72). However, after the parties reviewed the various compilations, it appeared that limiting transactions to $1,000.00 or more would only eliminate somewhere between 10 and 200 transactions. (Id. at p. 279-80; Tr. of Hearing on Nov. 25, 2008 at 446). At the hearing Plaintiffs indicated that they could live with limiting the transactions to which they had to respond to those involving $1,000.00 or more. (Tr. of Hearing on Nov. 25, 2008 at 452).

A more serious problem is that the list of 1,278 transactions in Plaintiff's document request involved transactions that were not among the Defendants or between Defendants and the Maryland Judgment Debtors. Rather than using the "transaction compilation" prepared by Defendants, which included only transactions among Defendants or between Defendants and Maryland Judgment Debtors, plaintiff apparently also requested backup documents concerning transactions between Defendants and third parties which were neither Defendants nor Maryland Judgment Debtors. (Tr. of Hearing on Nov. 24, 2008, pp. 242-46, 250, 254).

In determining the transactions concerning which Defendants will be obligated to produce backup documentation, we must start with the documents Plaintiff actually requested. These are the backup documents relating to the 1,278 transactions listed on Exhibit A to Plaintiff's July 13, 2007 discovery request. (See Def. Mem. dated July 18, 2008, Ex. B). In addition, it makes sense to eliminate small transactions. Therefore, Defendants obligation to produce backup documentation shall be limited to transactions

involving $1,000.00 or more, although this limitation by itself, may eliminate only a modest number of transactions.

The transactions concerning which Defendants are compelled to produce documents shall also be limited to transactions among Defendants or between Defendants and Maryland Judgment Debtors. It was assumed in the Special Master's June 26, 2008 Ruling **(Doc. # 429)** that the 1,278 entries were so limited. (See, e.g. June 26, 2008 Ruling at 7:" . . . Defendants . . . object that Plaintiff's request for backup documentation for 1,278 transactions among Defendants or between Defendants and the Maryland Judgment Debtors reflected in the Defendant's general Ledger is patently overbroad and unduly burdensome . . . .;" See also Id. at 14, 15). It turns out, however, that the list of 1,278 entries was not so limited. Plaintiff argues that it needs discovery of backup documentation concerning transactions not among Defendants or between Defendants and Maryland Judgment Debtors to enable it to understand a change in Defendants' accounting system and to discover whether an entity concerning which Plaintiff is making a veil-piercing claim was keeping two sets of books. (Tr. of Hearing on Mar. 24, 2008 at 273-279; Tr. of Hearing on Nov. 25, 2008 at 394). However, it does not appear that keeping two sets of books; if that were the case, with respect to transactions not relevant to Plaintiff's veil-piercing or fraudulent transfer claims is either relevant or discoverable. Moreover, although Plaintiff asserts that it does not believe that any transactions among Defendants or between Defendants and Maryland Judgment Debtors reflect the change in accounting system (Tr. of Hearing on Nov. 24, 2008 at 275), if this is the case, then it is hard to understand how evidence concerning such a change is relevant, or, even if tangentially relevant, how the likely benefit from discovery of backup documentation concerning such transactions outweighs the burden and expense of identifying and producing it.

### B. Backup Documentation May be Relevant to Plaintiffs Veil-Piercing Claims if they Evidence Only the Control Exercised Over an Entity Whose Veil Is Sought to be Pierced Even if Such Documentation Does Not Also Evidence that Plaintiff Was Harmed By the Exercise of Such Control

Defendants also argue that the backup documentation sought by Plaintiff is not discoverable because in order to be discoverable, evidence must show not only that the entity concerning which the veil is sought to be pierced was controlled by another, but also that this control must be related to the transactions by which the plaintiff was harmed. (Def. Mem. dated July 18, 2008 at 8-10). Although Defendants are correct that both elements must be established to pierce the corporate veil, at least under the instrumentality theory, it does not follow that every piece of evidence must show each element of the piercing claim. This is clear from the decisions permitting discovery concerning a defendant's control of an allegedly dominated entity relating to time periods after the transaction giving rise to the litigation. See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1368 (2d Cir. 1991) (holding that information concerning financial transactions and movement of corporate assets subsequent to the transaction giving rise to the litigation was reasonably calculated to lead to the discovery of evidence admissible on the issue of alter ego liability within the meaning Rule 26 (b)(1)).

In addition, it is not clear that causation of harm to the plaintiff is a necessary element of a veil-piercing claim under the identity rule. The identity rule for piercing the corporate veil applies where the plaintiff can show that there is

> [S]uch a unity of interest and ownership that the independent of the corporation had in effect ceased or had never begun [such that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation

8

> conducted by one corporation for the benefit of the whole enterprise.

Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 554, 447 A.2d 406 (1982). This rule does not clearly require the party seeking to pierce the corporate veil to establish that its harm was causally connected to the unity of interest among the parties among which the veil is sought to be pierced, but, rather, only that "an adherence to the fiction of separate identity would serve only to defeat justice adequately by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Id. at 554.)

Hence, the scope of discovery will be limited to transactions between parties concerning which Plaintiff seeks to pierce the corporate veil and under these circumstances each piece of evidence offered need not be relevant to all elements of a veil-piercing claim.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Reconsideration and/or Clarification of Ruling on Plaintiff's Motion to Compel Production of Documents Pursuant to Plaintiff's Second, Third and Fourth Requests for Production **(Doc. # 264)** dated July 18, 2008 **(Doc. # 449)** is **GRANTED IN PART** and **DENIED IN PART**. Defendants motion for reconsideration is **GRANTED**. Defendants' motion for clarification is **GRANTED IN PART** and **DENIED IN PART**. Defendants shall produce the requested back-up and support documents requested in Request No. 1 of Plaintiff's Third Request for Production dated September 14, 2007 except that the transactions concerning which Defendants are required to supply back-up documents shall be limited to transactions among Defendants or between Defendants and Maryland Judgment Debtors in an amount of $1,000.00 or

more. Defendants shall produce these documents within forty-five days of the date on which this order becomes final.

Pursuant to Fed. R. Civ. P. 53 (g)(2) and the order of this Court dated November 7, 2006, any party may file objections to -- or a motion to adopt or modify -- this Ruling no later than 20 days from the time this Ruling is served.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master