## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WELLS FARGO BANK, N.A. TRUSTEE　　　　　　　:

　　　　　　Plaintiff,　　　　　　　　　　　　:

　　　vs.　　　　　　　　　　　　　　: No. 3:05CV1924(CFD)(WIG)

MICHAEL KONOVER, et al　　　　　　　　:
　　　　　　　Defendants.　　　　　: MARCH 4, 2009

## RULING ON (DOC. # 453) DEFENDANTS' JULY 28, 2008 MOTION FOR RECONSIDERATION AND CLARIFICATION OF SPECIAL MASTER'S SUBSTITUTED RULING ON PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS PURSUANT TO PLAINTIFF'S REQUESTS FOR PRODUCTION (DOC. # 248) DATED JULY 7, 2008 (DOC. # 437)

By motion dated July 28, 2008 **(Doc. # 453)**, Defendants Michael Konover, Konover

Development Corp. ("KDC"), Konover & Associates, Inc. ("K&A"), Konover Construction

Corp. ("KCC"), Blackboard LCC ("Blackboard") and Ripple LLC ("Ripple") have moved for

reconsideration and clarification of the Special Master's Substituted Ruling dated July 7,

2008 **(Doc. # 437)**, regarding Plaintiff Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to

Compel Production of Documents **(Doc. #248)**. As set forth herein, this motion is

**GRANTED IN PART** and **DENIED IN PART**.

Defendants seek reconsideration of the July 7 Substitute Ruling to the extent that it

compels the production of documents related to transactions in which two or more

defendants, or one defendant and one Maryland Judgment Debtor are on one side of the

transaction and a third party is on the other. Defendants also seek clarification of the July 7

Substitute Ruling insofar as it addresses transactions among the Defendants, the Maryland

Judgment Debtor and relatives or family members of defendant Michael Konover so that

the Substituted Ruling is not read to include transactions between Michael Konover as an

individual and members of his family and so that the scope of the terms "relative" and

"family member" are clarified.

## I.      MOTION FOR RECONSIDERATION OF SUBSTITUTED RULING CONCERNING DOCUMENT REQUEST NO. 7.

Request No. 7 of Plaintiff's First Request for Production dated July 7, 2008 requests

production of:

> 7.      All documents and communications concerning any Transaction between two or more of any of the Defendants, any of the Defendant Affiliated Entities and a third party, including, but not limited to, all documents and communications concerning the accounting treatment of any such transaction.

"Transaction" is defined in those requests to include:

> any (i) payment or transfer of cash or cash equivalent (or contract of payment or transfer of cash or cash equivalent; (ii) sale, exchange or leasing of any property (or contract to sell, exchange or otherwise transfer property); (iii) lending of any money or other extension or guarantee of credit (or contract for lending of any money or extension or guarantee of credit); (iv) furnishings of goods, services, or facilities (or contract to furnish goods, services or facilities); (v) transfer to, or use by or for the benefit of one Person of an asset or assets of the other (or contract to transfer to, or use by or for the benefit of one Person of an assets or assets of the other, or (vi) any management fee agreements, cost reimbursement agreements, contracts, invoices, leases, letters of intent, or any other service or good payments.

Defendants move for reconsideration of the Special Master's Substituted Ruling with

respect to Plaintiff's Document request No. 7 on grounds that compliance would be unduly

burdensome and difficult because Defendants have no reasonable means of searching

their respective general ledgers to identify transactions in which two or more defendants, or

at least one defendant and one Maryland Judgment Debtor, are on one side of the transaction and a third party is on the other. (Def. Mem. dated July 28, 2008 at 4). Defendants point out that there are tens of thousands of entries in the Defendants' and Maryland Judgment Debtors' general ledgers since the year 2000 and that identifying the transactions would take six weeks and, when coupled with Plaintiff's other outstanding requests could occupy defendant KDC's employees for several months. (Id. at 4-5). Defendants also point out that the definition of "transactions" is very broad and includes transactions beyond the sale of property or interests in property similar to the "Portfolio Sales" to which Plaintiff referred to in explaining the relevance of the documents sought. Defendants argue that it has been established that they will produce documents concerning the Portfolio Sales. (Id. at 3).

In opposition to Defendants' motion, Plaintiff argues that reconsideration of the Substituted Ruling with respect to Request No. 7 based on evidence concerning burden that Defendants failed to present in opposition to the original motion to compel and based on an argument that Defendants failed to make in opposing the original motion, i.e. that Plaintiffs should not be able to obtain discovery of transactions in addition the Portfolio sales involving a third party and two or more Defendants or a Defendant and a Maryland Judgment Debtor (Pl. Mem. dated Sept. 22, 2008, pp. 2-6) is inappropriate.

At the hearing on this motion on November 25, 2008, Defendants conceded that in their original opposition to Plaintiff's motion to compel, they did not bring to the attention of the Special Masters any of the specifics concerning the burden of identifying and producing documents other than those relating to the Portfolio sales, that were within the scope of Request No. 7 and the definition of transactions. (Tr. of Hearing on Nov. 25, 2008 at 377-78).

3

"Motions for reconsideration are implicitly authorized by Local Rule of Civil Procedure 7(c)1, which provides that such motions 'shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order.' A court's reconsideration power is related to the 'amorphous' law-of-the-case doctrine, which 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) . . . ." Von Spee v. Von Spee, 558 F.Supp. 223, 224 (D. Conn. 2008) (Arterton, J.).

Ultimately, the question of whether to reconsider a prior ruling is discretionary and the court is not limited in its ability to reconsider its own decision prior to final judgment. See Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983); Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd, 956 F.2d 1245, 1255 (2d Cir. 1992); Melamud v. United States Dept. of Home Security, Citizenship and Immigration Services, 2007 WL 2870978, at *1, 2007 U.S. Dist. LEXIS 71264, at *2 (D. Conn. Sept. 25, 2007) (Dorsey, J.); Brocuglio v. Proulx, 478 F.Supp.2d 309, 327 (D. Conn. 2007) (Underhill, J.); Berube v. Great Atlantic & Pacific Tea Co., Inc., 2007 WL 30863, at *2 (D. Conn. Jan. 4, 2007) (Dorsey, J.). Reconsideration will generally be granted only when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. (citations omitted). See also Melamud v. United States Dept. of Homeland Security, Citizenship and Immigration Services, 2007 WL 2870978, at *1 2007 U.S. Dist. LEXIS 71264, at *2-3 (D. Conn. Sept. 25, 2007) (Dorsey, J.). Although this standard has been described as "strict;" see e.g.,

Schrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995); Berube v. Great

Atlantic & Pacific Tea Co., Inc., 2007 WL 30863, at *2 (D. Conn. Jan. 4, 2007) (Dorsey, J.)

(granting motion for reconsideration, but adhering to prior ruling on motion to compel

discovery); Russo v. Waring, 2006 WL 1601391, at *1, 2006 U.S. Dist. LEXIS 37164, at *3

(D. Conn. June 7, 2006); some courts have stated that "somewhat greater latitude is

warranted where . . . the court is asked to reconsider a ruling on a discovery motion prior to

any determination on the merits." Charles v. Cotter, 1994 WL 424144, at * n.1 1994 U.S.

Dist. LEXIS 11255, at * 3, n.1 (N.D. Ill. Aug. 11, 1994). Moreover, "the law of the case

doctrine . . . need not be applied where no prejudice results from its omission." Virgin

Atlantic Airways, 956 F.2d at 1255. See also Brocuglio v. Proulx, 478 F.Supp.2d 309, 327

(D. Conn. 2007) (Underhill, J.). In this context, "prejudice does not mean the harm which

results from a failure to apply the [law of the case] doctrine, rather, it refers to a lack of

sufficiency of notice and an opportunity to prepare armed with the knowledge that one

judge is disregarding the ruling of another." Cumis Ins. Soc., Inc. v. Windsor Bank & Trust

Co., 736 F.Supp. 1226, 1228-29 (D. Conn. 1990) (Nevas, J.).

Applying these principles in the context of a requested reconsideration of a ruling on

discovery, Defendants' motion for reconsideration **(Doc. # 423)** is **GRANTED**. The

definition of "transaction" in Plaintiff's request is very broad and goes far beyond the

transactions similar to the Portfolio Sales that Plaintiff used to illustrate its need for the

discovery. In addition, the burden and expense of searching for the regular transactions

appears to be substantial. However, it is also clear that all of the facts and arguments

raised by Defendants could have been brought to the Special Master's attention in

connection with its original motion that led to the Ruling that Defendants now seek to have

reconsidered.  As noted in Elliott v. British Tourist Auth.,  2001 WL 963972 2001 U.S. Dist.

LEXIS 12695 (S.D.N.Y. Aug. 22, 2001):

> The truth seeking aspect of the adversarial process requires
> that when parties litigate a contested question, they make their
> best arguments in the first instance, so that through the clash
> of these positions, their relative strengths may become
> apparent.  Were it permissible for a party to deploy additional
> evidence in successive and repetitive motions, a court
> decision would provide little meaningful repose to a litigant.
>
> Moreover, the impact of the court's work load would be severe
> if, each time a party received an adverse decision that party
> was permitted then to submit already available, important new
> factual materials in an effort to reverse the adverse decision.

2001 WL 963972, at *3 2001 U.S. Dist. LEXIS 12695, at *7-9.  See also Robinson v.

Holland, 2008 WL 1924972, at *1 (D. Conn. Apr. 30, 2008) (Droney, J.) (holding that party

seeking reconsideration failed to show that newly provided information could not have been

discovered earlier had he exercised due diligence and therefore, did not constitute newly

discovered evidence and did not warrant reconsideration of the prior ruling).

     In light of the time consumed by the extensive discovery already undertaken in this

case and the delays and additional cost inevitably resulting from motions for

reconsideration and the impact of such delays on a final resolution of this matter, I am

putting the parties on notice that, in the future, I am likely to take a significantly less liberal

approach to granting motions for reconsideration when the grounds for such a motion or

the facts supporting those grounds, including grounds of undue burden and expense, could

have been raised in connection with the original motion, but were not.

     Concerning the merits of the issues raised by Defendants in their motion for

reconsideration, the definition of "transaction" in Plaintiff's requests for production is very

broad, effectively including all payments or transfers of assets.  This broad definition

potentially extends the scope of Request No. 7 far beyond transactions similar to the

Portfolio Sales which Plaintiffs used to illustrate its needs for the requested documents.

When asked to describe transactions into which Plaintiff seeks to inquire other than sales of

property or property interests, counsel for Plaintiff referred to business done on a fee basis,

such as property brokerage, lease brokerage, shopping center design, and an antenna

business (Tr. of Hearing on Nov. 25, 2008, pp. 390-91).  Essentially, Plaintiff is seeking to

discovery instances in which revenue was shifted among Defendants or between

Defendants and the Maryland Judgment Debtors as evidence of control which is relevant to

Plaintiffs veil-piercing claims.  (Tr. of Hearing on Nov. 25, 2008, pp. 385-86, 388-99).

The question is what, if any, limits to place on Defendants duty to respond to

Request No. 7 in order to reduce the burden and expense of compliance while allowing

Plaintiff reasonable discovery of information that may support its veil-piercing claims.  It

should be noted that the scope of Request No. 7 has been limited to a certain extent on its

face in that it encompassed only transactions where two Defendants or a Defendant and a

Maryland Judgment Debtor or two Maryland Judgment Debtors was on one side of the

transaction and a third party was on the other.  The scope of Request No. 7 was further

limited by the Special Master's July 7 Substituted Ruling **(Doc. # 437)** to exclude

transactions with third parties and involving only two or more Maryland Judgment Debtors

but not one of the Defendants.  (Id. at 23).  At the hearing on November 25, 2008, Plaintiff

expressed its willingness to narrow the scope even further to include only payments or

transfers of $10,000 or more.  (Tr. of Hearing on Nov. 25, 2008, pp. 390-92, 399-400).

There was also discussion of limiting the scope of Request No. 7 to transactions involving

the sales of property or property interests (Id. at 383-86), although Plaintiff indicated that it

7

was unclear whether such a limitation would significantly reduce the burden of searching the Defendants' general ledgers. (Id. 383-84). Under these circumstances, I conclude that a reasonable limitation on Defendants' obligation to search for documents responsive to Request No. 7 is that Defendants will be obligated to respond with respect to transactions involving a payment or transfer to a defendant or a Maryland Judgment Debtor of $10,000 or more. The other limitations on Defendants' duty to respond to Request No. 7 established by the July 7 Substituted Ruling **(Doc. # 437)** will remain applicable.

## II.    Transactions Between Defendant Michael Konover and Members of His Family

Defendants also seek clarification concerning: (1) whether Request No. 4 should include transactions between defendant Michael Konover, individually, and his relatives or family members; and (2) what is the scope of the terms "family member" of defendant Michael Konover or "related to" Michael Konover. Request No. 4 of Plaintiff's First Request for Production dated July 11, 2006 requests:

> 4. All documents and communications concerning any Transaction, distribution or compensation by among and/or between any of the Defendants, Defendant Affiliated Entities and any person related to Michael Konover or family member of Michael Konover, including documents and communications concerning the accounting treatment of any such Transaction, distribution or compensation.

Defendants argue that because there is no corporate veil to be pierced with respect to Michael Konover and because Plaintiff makes no claim that it has been injured by any transfer of defendant Michael Konover's individual assets to family members, discovery of such transfers is beyond the scope of appropriate discovery. (Def. Mem. dated July 28, 2008 at 12). Plaintiff argues that if a transaction between defendant Michael Konover and

a relative or family member involved the use of corporate funds, then the transaction is reasonably likely to lead to the discovery of admissible evidence. (Def. Mem. dated Sept. 22, 2008, p. 6).

Defendants' motion for clarification is **GRANTED**. Michael Konover is a defendant in this action. However, there is no, nor could there be, a veil-piercing claim between Michael Konover and members of his family. Although Plaintiff argues that if a transaction between Michael Konover and members of his family "involved the use of corporate funds," this begs the question. The clarification Defendants seek is to exclude form Request No. 4 transfers of defendant Michael Konover's funds to members of his family. Plaintiff makes no fraudulent transfer claims concerning members of Michael Konover's family. Nor does Plaintiff seek restitution from members of Michael Konover's family by imposition of a constructive trust on identifiable assets in their hands traceable to their misconduct. Cf. Those Certain Underwriters at Lloyd's London v. Cooperman, 2006 WL 3316847, at *11 (Conn. Super. Ct. Oct. 27, 2006); Town of New Hartford v. Connecticut Resources Recovery Authority, 2007 WL 824562, at *5 (Conn. Super. Ct Feb. 22, 2007). The members of Michael Konover's family are not defendants in this action. Under these circumstances, transfers of personal funds of Michael Konover to members of his family are beyond the scope of relevance for discovery purposes.

In connection with the motion by non-party Victoria Konover for clarification and/or reconsideration of the Special Master's Substituted Ruling on Victoria Konover's motion to Quash Subpoena and for Protective order **(Doc. # 439)**, evidence was presented that the general ledger maintained by defendant Konover Development Corporation for defendant Michael Konover, reflected transfers into and out of a personal checking account belonging to Michael Konover, in which none of the defendants or Maryland Judgment Debtors had

an interest and to which none had access and that none of the cash reflected in the

Michael Konover general ledger was maintained in a common bank account with other

entities in which Michael Konover had a direct or indirect interest.  (See Victoria Konover

Mem. dated July 11, 2008, Ex. 1, ¶¶ 9, 10).

Discovery concerning transfers to members of Michael Konover's family is,

therefore, limited to transactions involving a member of Michael Konover's family and a

Maryland Judgment Debtor or an entity Defendant other than Michael Konover, or

payments made to or for the benefit of a member of Michael Konover's family out of a

common account which included funds of an entity Defendant other than Michael Konover

or a Maryland Judgment Debtor.

Concerning the meaning of "family members" or "relatives" of Michael Konover, prior

to the hearing on November 24 and 25, 2008, counsel for Plaintiff reported that the parties

had reached a resolution of the issue concerning to what relationships the term "family

member" referred.  Plaintiff's counsel reported that "[t]he parties agree that these terms

cover spouses, children, parents, siblings, grand-parents, grand-children, cousins, nieces,

nephews, in-law parents and in-law siblings." (Pl's. Mem. dated Sept. 22, 2008 at 6).

However, at the hearing on November 25, 2008, it developed that Defendants took issue

with this definition and suggested that it would be unduly burdensome to go through seven

years of records to find transactions with relatives as remote as cousins.  (Tr. of Hearing on

Nov. 25, 2008, p. 374).  The parties apparently have not reached an agreement concerning

the meaning of "relatives" or "family members".  (Id. at 397-98).

The issue concerning the persons who should be included within the phrase "family

members" was discussed in an exchange of correspondence between counsel in

September 2008.  (Ltr. from Attorney Sandler to Attorney Cowperthwait dated September

10

4, 2008; Ltr. from Attorney Cowperthwait to Attorneys Nolan and Joyce dated September 9, 2008; Ltr. from Attorney Cowperthwait to Attorney Sandler dated September 17, 2008). Counsel for Defendants argue, however, that this agreed definition was agreed to only in a specific context which also limited discovery to family members who had been employed by a Connecticut Defendant or a Maryland Judgment Debtor.  (Tr. of Hearing on Nov. 25, 2008 at 270-71).

        Irrespective of whether the parties have agreed to a definition of "family member" or relative, the definition reflected in the parties' correspondence is generally consistent with common definitions of these terms.  Black's Law Dictionary (8th ed. 1999) defines "family" as "[a] group of persons connected by blood, by affinity, or by law; esp. within two or three generations."  Id. at 637.  This same source defines "relative" as "[a] person connected with another by blood or affinity . . . ."  Id. at 1315.  The Connecticut Uniform Fraudulent Transfer Act defines "relative" to mean "an individual related by consanguinity within the third degree as determined by the common law, a spouse or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree."  Conn. Gen. Stat. § 52-552b (ii).  Neither party has suggested a definition of family other than that set forth in the correspondence between counsel and neither has suggested that "relative" should be defined differently from "family member."  Mr. Cowperthwait's September 9, 2008 letter to Messrs. Nolan and Joyce, written "on behalf of Defendants and Non-Parties Victoria Konover, MCK, Inc. and Konover Family Limited Partnership", states that "Defendants understand the terms 'persons related to' or 'family members' to include 'spouses, children, parents, siblings, grand-parents, grand-children, cousins, nieces, nephews, in-law parents and in-law siblings.'"  Plaintiff has stated its agreement with this definition.  There is nothing in the common definitions of

"family" or "relative" indicating that this definition is inappropriate.  In his September 9, 2008 letter, Mr. Cowperthwait, in connection with the Special Master's July 7, 2008 ruling on Plaintiff's motion to compel, that "Defendants will produce documents concerning transactions, distribution or compensation between a Connecticut Defendant or Maryland Judgment Debtor and a 'family member' of Michael Konover."

Concerning Defendants' suggestion at the November 25, 2008 hearing that the breadth of the definition of "family members" might make responding to this request unreasonably burdensome, Defendants' made no burdensomeness argument in their July 28, 2008 motion **(Doc. # 453)**, and have presented no sufficient basis for further narrowing the definition of "family member" in connection with Request No. 4.

**CONCLUSION**

Defendants' motion for reconsideration and/or clarification of the Special Master's Substituted ruling on Plaintiff's Motion to Compel Defendants' Production of Documents Pursuant to Plaintiff's Request for Production **(Doc. # 248)** dated July 7, 2008 **(Doc. # 437)** is **GRANTED** to the extent that it seeks reconsideration of the Special Master's ruling concerning Plaintiff's Request No. 7 and with respect to Defendants' Motion for Clarification concerning Plaintiff's Request No. 4.  With respect to Request No. 7, Defendants' obligation to produce documents will be limited to transactions involving a payment or transfer to a Defendant or a Maryland Judgment Debtor of $10,000 or more.  With respect to Request No. 4, the phrases "personal relative to" and "family member" shall include spouses, children, parents, siblings, grand-parents, grand-children, cousins, nieces, nephews, in-law parents and in-law siblings.  Defendants shall not be required to produce documents concerning transactions between defendant Michael Konover and his relatives or family members.

Defendant will produce the documents requested in Plaintiff's Request Nos. 4 and 7 within 60 days of the date this order becomes final.

SO ORDERED at New Haven, Connecticut, this 4th day of March 2009.

_____
David L. Belt, Special Master