UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WELLS FARGO BANK, N.A., Trustee, : | |
|     Plaintiff : | |
| : | |
| v. : | Case No. 3:05 CV 1924 (CFD) |
| : | |
| MICHAEL KONOVER, ET AL., : | |
|     Defendants. : | |

## RULING ON MOTIONS TO DISMISS AND RELATED MOTIONS

The plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo"), brought this suit against five entities and one individual defendant, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. Wells Fargo seeks to recover upon a judgment entered in its name by the Circuit Court for Baltimore, Maryland[1] ("Maryland judgment") against Diamond Point Plaza, L.P., Oriole Commercial Associates, L.P., Konover Management Corporation, Diamond Point Management Corporation, American Way Commercial Associates, L.P., and Michael Konover, as well as others.[2] In its amended complaint Wells Fargo asserts that Michael Konover, Konover Development Corporation ("KDC"), Konover Construction Corporation ("KCC"), Konover & Associates, Inc. ("K&A"), Blackboard LLC, and Ripple LLC (collectively "the defendants") wrongfully prevented Wells Fargo from collecting on the Maryland judgment. Pursuant to Fed. R. Civ. P. 12(b)(1), the defendants move to dismiss for lack of subject matter jurisdiction, claiming that complete diversity of citizenship does not exist between the real and substantial

---

[1] Wells Fargo Bank Minn., Nat'l Ass'n, Tr. v. Diamond Point Plaza Ltd. P'ship, et al., No. 03-C-03-002449.

[2] Sam's PW, Inc., Wal-Mart Stores, Inc. and MCK, Inc.

-1-

parties to the dispute. For the reasons that follow, the motion to dismiss is denied.

I.     **Background**

The defendants are Connecticut citizens. Specifically, Michael Konover is a Connecticut citizen; KDC, KCC, and K&A are Connecticut corporations with their principal places of business in Connecticut; and Blackboard LLC and Ripple LLC are both Connecticut limited liability corporations whose members are also Connecticut citizens.

The plaintiff's citizenship is the central issue in this motion to dismiss. The plaintiff identifies itself as follows: "Wells Fargo Bank, N.A. Trustee of the Registered Holders of Salomon Brothers Mortgage Securities VII, Inc., Mortgage Pass-Through Certificates, Series 2000 C-2, by ORIX Capital Markets, LLC, its attorney in fact." Wells Fargo is the Trustee for a pool of mortgages held in a Trust pursuant to a real estate mortgage investment conduit ("REMIC") agreement.[3] The Trust was created and is governed by a Pooling and Servicing Agreement ("PSA"). Under the terms of the PSA, Wells Fargo as Trustee holds the Trust assets for the exclusive use and benefit of the holders of certificates that represent interests in the Trust ("Certificateholders"). See Wells Fargo PSA § 2.01(a). One of the mortgages held in the Trust, the Diamond Point mortgage, was the subject of the Maryland judgment. The PSA also designates ORIX Capital Markets LLC ("ORIX") to serve as both "master servicer" and "special servicer"; in those capacities, ORIX services and administers the REMIC, and its relationship to

---

[3]"A real estate mortgage investment conduit [] is a 'mortgage securities vehicle authorized by the Tax Reform Act of 1986 that holds commercial and residential mortgages in trust, and issues securities representing an undivided interest in these mortgages . . . .' " United States v. Lopez, 222 F.3d 428, 435 n.8 (7th Cir. 2000) (quoting Barron's Business Guide Dictionary of Banking Terms 497). REMICs allow mortgage payments to be passed through to certificateholders without being subject to income tax. The REMIC at issue here is organized as a common law trust designated as Salomon Brothers Commercial Mortgage Trust 2000-C2.

the Trustee-Wells Fargo is that of "an independent contractor." See Wells Fargo PSA § 3.01(a)-(c).

In addition to the servicing arrangement outlined in detail in the PSA, Trustee-Wells Fargo by a separate agreement appointed ORIX to act "as the true and lawful agent and attorney-in-fact of Trustee and in the name, place and stead of Trustee, to take any or all actions incident to or in connection with [ORIX's] management or administration" of the REMIC. See Limited Power of Att'y at 1. Specifically, the Limited Power of Attorney authorized ORIX "[t]o ask, demand, sue for, and collect" any sums of money belonging to the Trustee and "to take such other actions and exercise such rights which may be taken by the Trustee," and additionally gives ORIX "full power and authority to execute instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted . . . as fully as Trustee could do if personally present." Id. at 1-2. Wells Fargo retained the power to revoke the Limited Power of Attorney. Id. at 2. Having designated ORIX as master servicer, special servicer, and attorney-in-fact, Wells Fargo had essentially no knowledge of the day-to-day operations of the REMIC. See generally, Judy Rishel Dep. Nonetheless, ORIX pursued and secured the Maryland Judgment in the name of Wells Fargo as Trustee.

The defendants allege that Wells Fargo has not met its burden of demonstrating complete diversity of citizenship. The issue is whether, for the purposes of diversity jurisdiction, the plaintiff's citizenship is determined by the citizenship of Wells Fargo as Trustee, or by the citizenship of the Trust Certificateholders. There is no dispute that the defendants are diverse from Wells Fargo, which is a citizen of South Dakota, the location of its main office. See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303 (2006) (holding that a national bank is a citizen

of the State in which its main office is located). The defendants allege, however, that Trustee-Wells Fargo is not the real and substantial party to the dispute, and therefore diversity must be determined by the citizenship of the Trust beneficiaries, in this case the Trust Certificateholders. The defendants further allege that complete diversity does not exist because at least one of the Certificateholders was a Connecticut citizen at the time the suit was brought.[4]

## II. Motion to Dismiss Standard

"The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (citations and quotations omitted). At this stage of the proceedings, "[I]n reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Id. (quotation and alterations omitted). Moreover, the plaintiff need only make a prima facie showing of subject matter jurisdiction. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 180 F. Supp. 2d 465, 468 (S.D.N.Y. 2001). In resolving an issue of subject matter jurisdiction, the Court is not limited to the face of the complaint and may consider evidence outside the pleadings. Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).

## III. Discussion

"[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." Herrick Co., Inc. v. SCS Commc'n, Inc., 251 F.3d 315,

---

[4] The defendants support their allegation through the affidavit and supplemental affidavit of William J. Murphy. The plaintiff has moved to strike these affidavits. Because the Court does not reach the question of the citizenship of the Certificateholders, it will deny the motions to strike [Dkts. # 490 & 508] as moot.

322 (2d Cir. 2001) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978)). "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) (citing McNutt v. Bland, 2 How. 9, 15 (1844)).

In Navarro Savings Association v. Lee, the United States Supreme Court held that "active trustees whose control over the assets held in their names is real and substantial . . . [may] sue in their own right, without regard to the citizenship of the trust beneficiaries." 446 U.S. at 465-66. "[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." Id. at 464. The trustees at issue in Navarro "operated under a declaration of trust that authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees." Id. The Court held that the trustees were the real and substantial parties to the controversy because they were "not 'naked trustees' who act as 'mere conduits' for a remedy flowing to others. They have legal title; they manage the assets; they control the litigation." Id. at 465 (quoting McNutt, 2 How. at 13-14).

The defendants argue that the Supreme Court narrowed its Navarro holding in Carden v. Arkoma Associates, 494 U.S. 185, 195 (1990). The Supreme Court in Carden held that for the purposes of diversity jurisdiction, a limited partnership's citizenship, and more generally an artificial business association's citizenship, is determined by the citizenship of all of its members. Id. at 197. Whereas in Carden the Court set out a general rule regarding the citizenship of artificial associations, the issue was different in Navarro where the plaintiffs were not an artificial entity, but were individual trustees bringing suit in their own names. Carden, 494 U.S. at 192-93

("Narvarro had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names."); Navarro, 446 U.S. at 462 ("In certain respects, a business trust also resembles a corporation. But this case involves neither an association nor a corporation."). The Third Circuit has reconciled the Court's holdings in Navarro and Carden as follows:

> The Supreme Court has established the following rules. In a suit by or against the individual trustees of a trust, where the trustees "possess[] certain customary powers to hold, manage and dispose of assets," their citizenship, and not that of the trust beneficiaries, is controlling for diversity of citizenship purposes. The rule, however, is different when an artificial entity sues or is sued in its own name. In that situation, because artificial entities, unlike corporations, are not "citizens" under 28 U.S.C. § 1332, diversity jurisdiction by or against an artificial entity depends on the citizenship of "all of the members."

Emerald Investors Trust, 494 F.3d 192, at 200-01 (3d Cir. 2007). Therefore, the Navarro principle–that a trustee's citizenship is controlling for diversity purposes as long as the trustee possesses the customary powers to hold, manage, and dispose of assets–remains applicable.

As in this case Wells Fargo is suing as Trustee, the plaintiff's citizenship for diversity purposes will be Wells Fargo's citizenship if Wells Fargo possesses "customary powers to hold, manage, and dispose of assets," and is therefore the real and substantial party to the controversy. Navarro, 446 U.S. at 464. The PSA establishes that Wells Fargo as Trustee does have these customary powers, as other courts have held in cases involving similar PSAs. See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 180 F. Supp. 2d 465 (S.D.N.Y. 2001); LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc., 237 F. Supp. 2d 618 (D. Md. 2002). For example, Section 2.01 of both the Nomura PSA and Lehman PSA stated that the seller of the mortgages to the pool "does hereby sell, transfer, assign, set over and otherwise convey to the Trustee [LaSalle] . . . all the right, title, and interest" that the seller then held in the mortgages. Nomura,

180 F. Supp. 2d at 470; Lehman, 237 F. Supp. 2d at 632.  Similarly, the Wells Fargo PSA provides that "The Depositor . . . does hereby sell, assign, transfer and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders, all the right, title and interest" in the mortgage loans.  Wells Fargo PSA § 2.01(b).  As the Nomura court explained, "The plain meaning of these words ordinarily includes the power to bring suit to protect and maximize the value of the interest thereby granted."  180 F. Supp. 2d at 471.  Additionally, as in the Nomura PSA, the Wells Fargo PSA provides the Trustee with power to take legal action the event of default.  Specifically, the Wells Fargo PSA provides that, in the event of a default, the Trustee may "take such action to enforce such payment or performance, including the institution and prosecution of appropriate legal proceedings."  Wells Fargo PSA § 3.06(c); Nomura, 180 F. Supp. 2d at 471 (citing Nomura PSA § 3.07(c) , which stated that LaSalle may "take such action as may be appropriate to enforce such payment performance, including the institution and prosecution of appropriate proceedings").  Moreover, as with the Nomura PSA, the Wells Fargo PSA requires ORIX as servicer to deliver certain documents and reports to the Trustee-Wells Fargo.  See, e.g., Wells Fargo PSA §§ 3.08 (requiring special servicer to notify Trustee upon taking certain actions and provide basis for such action); 3.09(c) (requiring special servicer to provide Trustee with written notice of certain determinations); 3.09(e) (requiring special servicer to report to Trustee monthly in writing as to certain actions taken); 3.09(h) (requiring special servicer to deliver certain final recovery determinations to the Trustee); 3.13 (requiring special servicer to deliver annual performance certifications to the Trustee); 3.21(b) (requiring special servicer to provide Trustee with certain original mortgage loan files); see Nomura, 180 F. Supp. 2d at 470 ("Lend Lease must notify LaSalle upon taking certain actions, see, e.g., PSA at §§

3.09(a), must provide LaSalle with certain documents, see, e.g., id. at 3.10(j), 3.26(b), and must provide LaSalle with written notice and explanation of events that would have a 'material adverse effect of any of the mortgages that are the subject of the PSA.' Id. at § 3.13(d). In effect, LaSalle is the master who has delegated some of its duties to its servant, Lend Lease.").

The defendants argue, however, that this case is distinguishable from Nomura and Lehman, and that Wells Fargo is the "paradigm" of the "naked trustee" or "mere conduit." In support defendants cite the vast powers assigned to ORIX in the place of Wells Fargo in the power of attorney agreement, as well as the deposition testimony of Judy Rishel, a Wells Fargo representative, who confirmed that Wells Fargo had no knowledge of the Trust's management. See, e.g., Judy Rishel Dep. (testifying that ORIX did not consult with Wells Fargo before it filed the instant lawsuit as Wells Fargo's attorney-in-fact). But, as the courts in Nomura and Lehman held, delegation to a servicer is not relevant because, in so delegating, the Trustee does not relinquish the powers it holds as Trustee. See Nomura, 180 F. Supp. 2d at 470 ("Rather, it is clear that LaSalle is a traditional trustee who simply contractually delegated some of its duties to Lend Lease. . . . Nevertheless, LaSalle remains the holder of legal title to the mortgage package transferred pursuant to the PSA, including the hospital loan that is the subject of this dispute."); Lehman, 237 F. Supp. 2d at 633 ("Merely because the PSA in this case delegates to CMSLP the right to institute a suit in its capacity as Special Servicer does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust. Section 3.01 of the PSA grants CMSLP the power to act 'alone' and 'in its own name' in certain circumstances, but in no way suggests that this power is exclusive or somehow restricts the power and authority of LaSalle Bank as the Trustee. That CMSLP and LaSalle Bank each have

the authority to institute suit does not negate the right of LaSalle Bank to so act."). Thus, where the Wells Fargo PSA gives the Trustee-Wells Fargo the authority to sue, Wells Fargo's delegation of that authority to ORIX as attorney-in-fact does not purge Wells Fargo of its own power to institute suit. See Limited Power of Att'y at 2 ("Giving and granting to ORIX . . . full power and authority to do and perform the acts, deeds, matters and things . . . *as fully as Trustee could do if personally present*." (emphasis added)).

Therefore, because Wells Fargo as the Trustee has legal title and the power to manage the assets and initiate litigation, Navarro, 446 U.S. at 464, which delegation to ORIX does not negate, its own citizenship forms the basis of diversity jurisdiction independent of the citizenship of individual Certificateholders. As Wells Fargo is a citizen of South Dakota, and the defendants are Connecticut citizens, the Court has subject matter jurisdiction based on complete diversity of citizenship of the parties.

### IV.    Conclusion

The defendants' motion to dismiss for a lack of subject matter jurisdiction [Dkt. # 465] is DENIED. The plaintiff's motions to strike [Dkts. # 490 & 508] are DENIED as moot. The defendants' motion to dismiss the amended complaint [Dkt. # 295] is also DENIED.

SO ORDERED this     21st     day of August 2009 at Hartford, Connecticut.


  /s/Christopher F. Droney
 CHRISTOPHER F. DRONEY
 UNITED STATES DISTRICT JUDGE