## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WELLS FARGO BANK,<br>N.A., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CASE NO.: 3:05CV1924 (CFD) (WIG) |
| v. | ) | |
| | ) | |
| MICHAEL KONOVER, *et al.*, | ) | |
| | ) | NOVEMBER 5, 2009 |
| Defendants. | ) | |
| | ) | |

## DEFENDANT KONOVER & ASSOCIATES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Konover & Associates, Inc. ("K&A") hereby submits its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, dated October 22, 2009 (Doc. #650).

### ANSWER

1.　　K&A lacks sufficient information to admit or deny the allegations in Paragraph 1 and therefore denies same and leaves Plaintiff to its proof.

2.　　The allegations set forth in Paragraph 2 are not directed at K&A; accordingly, no response is required.

3.　　The allegations set forth in Paragraph 3 are not directed at K&A; accordingly, no response is required.

4.　　The allegations set forth in Paragraph 4 are not directed at K&A; accordingly, no

response is required.

      5.     K&A admits the allegations set forth in Paragraph 5.

      6.     The allegations set forth in Paragraph 6 are not directed at K&A; accordingly, no response is required.

      7.     The allegations set forth in Paragraph 7 are not directed at K&A; accordingly, no response is required.

      8.     K&A denies the factual allegations set forth in Paragraph 8 and further denies that this Court has subject matter jurisdiction over this matter.

**The Maryland Litigation and Judgment**

      9.     K&A denies the allegations in Paragraph 9, except to admit that the Maryland court entered a judgment and made certain findings of liability.  K&A states that the Maryland judgment and the Maryland court's findings speak for themselves; accordingly, reference to the judgment and the court's findings should be made to determine their contents.  In addition, K&A states that certain aspects of the judgment referred to in Paragraph 9, including those judgments against Mr. Konover and American Way, have been fully satisfied.  Accordingly, Mr. Konover and American Way are not properly referred to as "Judgment Debtors."

      10.     K&A states that Mr. Konover and American Way have satisfied the $633,000 judgment entered against them in the Maryland action and are not "Judgment Debtors," and that Plaintiff has obtained payment from additional defendants to the Maryland Action, Wal-Mart and Sam's Club, of approximately $1.3 million.  K&A further states that an entity owned by Plaintiff purchased the property securing the Diamond Point Plaza Commercial Loan at a

foreclosure auction held in November 2005 for $10.3 million, which property consisted of 21.08-acre parcel of land improved by a 251,365 square foot shopping center called "Diamond Point Plaza," located in Baltimore County, Maryland, and that the foreclosure sale has been affirmed by the Maryland courts. K&A also states that the $1.3 million judgment paid by Wal-Mart and Sam's Club and the $10.3 million purchase amount from the foreclosure sale have been credited against the deficiency judgment referenced in Paragraph 10. K&A admits that Plaintiff contends that the deficiency judgment remains "substantially unsatisfied," but K&A denies that allegation and leaves Plaintiff to its proof, except to admit that the deficiency judgment has increased by $1,442,208.81 as a result of Plaintiff's award of attorney's fees in the Maryland Action.

11.     K&A denies the allegations in Paragraph 11, except to admit that the Maryland court made certain findings. Those findings speak for themselves; accordingly, reference to the Maryland court's judgment should be made to determine its contents. K&A specifically denies that the Maryland court found that KMC "committed fraud." The judgment against KMC was based solely on the KMC Guaranty Agreement.

**Alter Ego, Veil Piercing and Fraudulent Transfers**

12.     The allegations in Paragraph 12 state legal conclusions as to which no answer is required. To the extent that Paragraph 12 includes allegations of fact, K&A lacks sufficient information to admit or deny what Plaintiff did or did not discover in post-judgment discovery and therefore denies same and leaves Plaintiff to its proof. The remaining allegations in Paragraph 12 are denied insofar as they are directed to K&A. To the extent that Paragraph 12 includes any factual allegations, K&A states that Plaintiff's claims are barred in whole or in part

by the doctrine of res judicata and collateral estoppel, the applicable statute of limitations, and/or otherwise fail to state claims upon which relief can be granted.

13.    The allegations set forth in Paragraph 13 state legal conclusions as to which no answer is required.  To the extent that Paragraph 13 includes any factual allegations, K&A admits only that Michael Konover is the sole shareholder, sole director and an officer of K&A. K&A denies the remaining allegations insofar as they are directed to K&A.

14.    The allegations set forth in Paragraph 14 state legal conclusions as to which no answer is required.  To the extent that Paragraph 14 includes any factual allegations, K&A denies those allegations insofar as they are directed to K&A.

15.    K&A denies the allegations in Paragraph 15 insofar as they are directed to K&A.

16.    K&A denies the allegations in Paragraph 16 insofar as they are directed to K&A.

17.    K&A denies the allegations in Paragraph 17 insofar as they are directed to K&A.

18.    K&A admits that the Maryland court made certain findings.  Those findings speak for themselves; accordingly, reference to the Maryland court's judgment should be made to determine its contents.

19.    The allegations set forth in Paragraph 19 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 19 and therefore denies same and leaves Plaintiff to its proof.

20.    The allegations set forth in Paragraph 20 state legal conclusions as to which no answer is required.  To the extent that Paragraph 20 includes any factual allegations, K&A states that those allegations are not directed at K&A; accordingly, no response is required.

4

Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 20 and therefore denies same and leaves Plaintiff to its proof.

21.     The allegations set forth in Paragraph 21 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 21 and therefore denies same and leaves Plaintiff to its proof.

22.     The allegations set forth in Paragraph 22 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 22 and therefore denies same and leaves Plaintiff to its proof.

23.     The allegations in Paragraph 23 state legal conclusions as to which no answer is required.  To the extent that Paragraph 23 includes allegations of fact, K&A denies the allegations insofar as they are directed to K&A.

24.     K&A denies the allegations in Paragraph 24 insofar as they are directed to K&A.

25.     The allegations set forth in Paragraph 25 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 25 and therefore denies same and leaves Plaintiff to its proof.

26.     The allegations set forth in Paragraph 26 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A admits that KDC developed shopping centers, but denies the remaining allegations in Paragraph 26 insofar as they are directed to K&A.

27.     The allegations set forth in Paragraph 27 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A admits that KCC constructed shopping centers and other real estate projects, but otherwise denies the remaining allegations in Paragraph 27 insofar

as they are directed to K&A.

28.     K&A denies the allegations in Paragraph 28, except to admit that K&A provided certain administrative services to other affiliated companies up until the end of 2004.

29.     K&A denies the allegation in Paragraph 29, except to admit that K&A maintained a cash management account at Webster Bank, and that the use of that account provided certain advantages to the affiliated companies whose funds were pooled, but always separately accounted for, in the account.

30.     The allegations in Paragraph 30 state legal conclusions as to which no answer is required.  To the extent that Paragraph 30 includes any factual allegations, K&A denies those allegations insofar as they are directed to K&A.

31.     K&A lacks sufficient information to admit or deny what Plaintiff did or did not learn in post-judgment discovery and therefore denies the first two sentences of Paragraph 31 and leaves Plaintiff to its proof.  The remaining allegations in Paragraph 31 are denied insofar as they are directed to K&A.

32.     K&A lacks sufficient information to admit or deny what Plaintiff did or did not learn in post-judgment discovery and therefore denies the first two sentences of Paragraph 32 and leaves Plaintiff to its proof.  The remaining allegations in Paragraph 32 are denied insofar as they are directed to K&A.

33.     K&A denies the allegations in Paragraph 33, except to admit that K&A allocated its expenses and charged certain affiliated companies for an allocated share of those expenses.

34.     The allegations in Paragraph 34 state legal conclusions as to which no answer is

required. To the extent that Paragraph 34 includes any factual allegations, K&A denies those allegations, except to admit that in November, 2005 a cash management account was opened in the name of Account Management, LLC.

35.     The allegations in Paragraph 35 state legal conclusions as to which no answer is required. To the extent that Paragraph 35 includes any factual allegations, K&A denies those allegations, except to admit that for a brief period of time the name on the checks drawn on the account maintained by Account Management, LLC appeared as "Konover & Associates dba Account Management LLC" but expressly denies that K&A maintained and/or controlled the account opened in the name of Account Management LLC in November, 2005.

36.     K&A denies the allegations in Paragraph 36 insofar as they are directed to K&A.

37.     K&A denies the allegations in Paragraph 37, except to admit that it has shared office space at various times over the years and has been described on a common website. K&A further admits that the offices occupied by it were at one time leased from Munson Road, LLC and were subsequently relocated and leased from 135 South Road, LLC. To the extent that the allegations in Paragraph 37 are not directed to K&A, K&A states that it lacks sufficient information to admit or deny the allegations in Paragraph 37 and therefore denies same and leaves Plaintiff to its proof.

38.     The allegations set forth in Paragraph 38 are not directed at K&A; accordingly, no response is required. Alternatively, K&A lacks sufficient information to admit or deny the allegations in Paragraph 38 and therefore denies same and leaves Plaintiff to its proof.

39.     The allegations set forth in Paragraph 39 state legal conclusions as to which no

answer is required.  To the extent that Paragraph 39 includes allegations of fact, K&A denies the allegations insofar as they are directed to K&A.

40.     The allegations set forth in Paragraph 40 state legal conclusions as to which no answer is required.  To the extent that Paragraph 40 includes allegations of fact, K&A denies the allegations in Paragraph 40 insofar as they are directed to K&A.

41.     The allegations set forth in Paragraph 41 are not directed at K&A; accordingly, no response is required.

42.     K&A denies the allegations in Paragraph 42, except to admit that the funds referred to in this paragraph were deposited, and separately accounted for, in a common account then maintained by K&A.

43.     The allegations set forth in Paragraph 43 are not directed at K&A; accordingly, no response is required.

44.     The Maryland judgment speaks for itself; accordingly, reference to that judgment should be made to determine its contents.

45.     The allegations set forth in Paragraph 45 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny what Plaintiff did or did not discover in post-judgment discovery and therefore denies same and leaves Plaintiff to its proof; the remaining allegations in Paragraph 45 are denied insofar as they are directed to K&A.

46.     The allegations set forth in Paragraph 46 state legal conclusions as to which no answer is required. To the extent that Paragraph 46 includes allegations of fact, the allegations

set forth in Paragraph 46 are not directed at K&A; accordingly, no response is required.

47.     The allegations set forth in Paragraph 47 state legal conclusions as to which no answer is required.  To the extent that Paragraph 47 includes allegations of fact, K&A admits that it was reimbursed for expenses that it had paid on behalf of other parties in connection with certain portfolio sales, including sales in which KMC held an indirect ownership interest and which had been in the planning stages since early 2001 and took place in November 2002 and February 2003.  The remaining allegations of Paragraph 47 are not directed to K&A; accordingly, no response is required.  Alternatively, K&A lacks sufficient information to admit or deny the remaining allegations set forth in Paragraph 47 insofar as they are directed to K&A and therefore denies same and leaves Plaintiff to its proof.

48.     K&A lacks sufficient information to admit or deny the allegations in Paragraph 48 regarding the actions of the Maryland court and therefore denies same and leaves Plaintiff to its proof.  K&A denies the remaining allegations in Paragraph 48 insofar as they are directed to K&A, except to admit that KMC changed its name to Peerless Corporation and that MCK, Inc. changed its name to Sentinel Corporation.

49.     The allegations set forth in Paragraph 49 are not directed at K&A; accordingly, no response is required.  Alternatively, K&A denies the allegations in Paragraph 49 insofar as they are directed to K&A.

50.     K&A lacks sufficient information to admit or deny the allegations in Paragraph 50 regarding the actions of the Maryland Court and therefore denies same and leaves Plaintiff to its proof.  K&A admits that Blackboard and Ripple were formed in 2005 and that Michael Konover

9

is a member of both entities; K&A denies the remaining allegations in Paragraph 50 insofar as they are directed to K&A.

51.     The allegations set forth in Paragraph 51 are not directed to K&A; accordingly no response is required.  Alternatively, K&A denies the allegations in Paragraph 51 insofar as they are directed to K&A, except to state that beginning in June, 2005, certain assets of KMC were sold to Blackboard, Ripple and Michael Konover for fair value.

52.     The allegations set forth in Paragraph 52 are not directed at K&A; accordingly, no response is required.

53.     The allegations set forth in Paragraph 53 are not directed at K&A; accordingly, no response is required.

54.     The allegations set forth in Paragraphs 54 and 54(a) through 54(i) are not directed at K&A; accordingly, no response is required.

55.     The allegations set forth in Paragraph 55 state legal conclusions as to which no answer is required.  To the extent that Paragraph 55 includes any factual allegations, those allegations are not directed at K&A; accordingly, no response is required.

56.     The allegations set forth in Paragraphs 56 and 56(a) through 56(c) are not directed at K&A; accordingly, no response is required.

57.     The allegations set forth in Paragraph 57 are not directed at K&A; accordingly, no response is required.

58.     The allegations set forth in Paragraph 58 are not directed to K&A; accordingly no response is required.  Alternatively, K&A lacks sufficient information to admit or deny what

Plaintiff did or did not discover in post-judgment discovery and therefore denies same and leaves Plaintiff to its proof; the remaining allegations in Paragraph 58 are denied insofar as they are directed to K&A.

59.     The allegations set forth in Paragraphs 59 are not directed at K&A; accordingly, no response is required.

60.     The allegations set forth in Paragraphs 60 are not directed at K&A; accordingly, no response is required.

61.     K&A admits that it booked KMC's alleged cash deficiency as a receivable when KMC terminated its participation in the cash management account in June, 2005, but otherwise denies the remaining allegations and leaves Plaintiff to its proof.

62.     K&A admits that in July, 2005, KMC granted K&A a security interest in its assets and that K&A booked KMC's alleged cash deficiency as a receivable in June, 2005, and that the K&A security interest referred to in this paragraph has been terminated.   The remaining allegations set forth in Paragraph 62 are not directed to K&A; accordingly, no response is required.

63.     The allegations set forth in Paragraph 63 state legal conclusions as to which no answer is required.  To the extent that Paragraph 63 includes allegations of fact, those allegations are not directed at K&A; accordingly, no response is required.

64.     K&A denies the allegations in Paragraph 64 insofar as they are directed to K&A.

65.     K&A denies the allegations in Paragraph 65 insofar as they are directed to K&A.

66.     K&A denies the allegations in Paragraph 66 insofar as they are directed to K&A.

67.     The allegations set forth in Paragraph 67 state legal conclusions as to which no answer is required.  To the extent that Paragraph 67 includes any factual allegations, those allegations are not directed to K&A, and Section 3.6 of KMC's Guaranty Agreement and the Guaranty Agreement in its entirety speak for themselves; accordingly, no response is required.

68.     The allegations set forth in Paragraph 68 are vague and ambiguous by referring to "the payments" without further elaboration.  K&A denies the allegations in Paragraph 68 insofar as they are directed to K&A.

69.     The allegations set forth in Paragraph 69 are vague and ambiguous by referring to "payments" without further elaboration.  K&A denies the allegations in Paragraph 69 insofar as they are directed to K&A.

70.     The allegations set forth in Paragraph 70 are vague and ambiguous by referring to "payments" without further elaboration.  K&A denies the allegations in Paragraph 70 insofar as they are directed to K&A.

71.     The allegations set forth in Paragraph 71 are vague and ambiguous by referring to "payments" without further elaboration.  K&A denies the allegations in Paragraph 71 insofar as they are directed to K&A.

72.     The allegations set forth in Paragraph 72 are vague and ambiguous by referring to "payments" without further elaboration.  K&A denies the allegations in Paragraph 72 insofar as they are directed to K&A.

73.     The allegations sets forth in Paragraph 73 state legal conclusions as to which no response is required.  To the extent Paragraph 73 includes any factual allegations, K&A lacks

sufficient information to admit or deny those allegations and therefore denies same and leaves Plaintiff to its proof.

**Tortious Interference with Wal-Mart/Wire Payment**

74.     The allegations set forth in Paragraph 74 are not directed to K&A; accordingly, no response is required.

75.     The allegations set forth in Paragraph 75 are not directed to K&A, and the Maryland judgment speaks for itself; accordingly, no response is required.

76.     The allegations in Paragraph 76 state legal conclusions as to which no answer is required.   To the extent Paragraph 76 includes allegations of fact, the allegations set forth in Paragraph 76 are not directed to K&A, and the Maryland judgment speaks for itself; accordingly, no response is required.

77.     The allegations set forth in Paragraph 77 are not directed to K&A; accordingly, no response is required.

78.     The allegations regarding the assertion of contractual rights in Paragraph 78 are legal conclusions to which no response is required.  K&A denies the remaining allegations set forth in Paragraph 78 insofar as they are directed to K&A.

79.     The allegations set forth in Paragraph 79 state legal conclusions as to which no answer is required.  To the extent Paragraph 79 includes allegations of fact, K&A denies those allegations insofar as they are directed to K&A.

80.     The allegations set forth in Paragraph 80 state legal conclusions as to which no answer is required.  To the extent Paragraph 80 includes allegations of fact, K&A denies those

allegations insofar as they are directed to K&A.

81.    The allegations set forth in Paragraph 81 state legal conclusions as to which no answer is required.  To the extent Paragraph 81 includes allegations of fact, K&A denies the allegations in Paragraph 81, except to state that the Diamond Point mortgage and KMC's Guaranty Agreement speak for themselves, and that the best evidence of the terms of those documents is contained in the written mortgage and Guaranty Agreement, read as a whole. K&A further states that the contractual obligations in the mortgage and Guaranty Agreement are merged into the Maryland Judgment.

## CAUSES OF ACTION

### FIRST COUNT- Instrumentality Rule Veil Piercing as to All Defendants

1-81.    K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the First Count.

82.    The Maryland judgments speak for themselves; accordingly, no response is required.

83.    K&A lacks sufficient information to admit or deny the allegations in Paragraph 83, and therefore denies same and leaves Plaintiff to its proof, except to admit that the Maryland judgment has increased by $1,443,208.81 as a result of Plaintiff's recent award of attorney's fees.

84.    The allegations set forth in Paragraph 84 state legal conclusions as to which no answer is required.  To the extent Paragraph 84 includes allegations of fact, K&A denies those allegations insofar as they are directed to K&A.

85.    The allegations set forth in Paragraph 85 state legal conclusions as to which no answer is required.  To the extent Paragraph 85 includes allegations of fact, K&A denies those allegations insofar as they are directed to K&A.

86.    The allegations set forth in Paragraph 86 state legal conclusions as to which no answer is required.  To the extent Paragraph 86 includes allegations of fact, K&A denies those allegations insofar as they are directed to K&A.

**SECOND COUNT-Identity Rule Veil Piercing as to All Defendants**

1-81.    K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the Second Count.

82.    The allegations in Paragraph 82 state legal conclusions as to which no answer is required.  To the extent Paragraph 82 includes any factual allegations, K&A denies them insofar as they are directed to K&A.

83.    The allegations in Paragraph 83 state legal conclusions as to which no answer is required.  To the extent Paragraph 83 includes any factual allegations, K&A denies them insofar as they are directed to K&A.

**THIRD COUNT-Fraudulent Transfers as to all Defendants**

1-81.    K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the Third Count.

82.    K&A denies the allegations set forth in Paragraphs 82 and 82(a) through 83(d) insofar as they are directed to K&A.

83.    The allegations set forth in Paragraph 83 cannot be answered since they refer to

15

certain transfers described "in Paragraph 83 below," and there is no such paragraph in the Third Count of the Second Amended Complaint. To the extent that Plaintiff meant to refer to certain transfers described in Paragraph 84 of the Third Count, the allegations in Paragraph 83 state legal conclusions as to which no answer is required. Otherwise, K&A denies the allegations set forth in Paragraph 83 insofar as they are directed to K&A.

84.     Paragraph 84 contains no allegations of fact as to which an answer is required, since it merely identifies "transfers complained of." To the extent Paragraph 84 and sub-paragraphs 84(a) through 84(j) contain allegations of fact, K&A denies those allegations insofar as they are directed to K&A. The specific allegations in sub-paragraphs 84(b), 84(c), 84(d) and 84(i) are time barred in whole or in part, to the extent that the alleged transfers occurred prior to December 14, 2001, or otherwise fail to state claims upon which relief can be granted.

**FOURTH COUNT-Tortious Interference with Wal-Mart Arrangement as to Michael Konover**

1-81.   K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the Fourth Count insofar as it is directed to K&A.

82.     The allegations set forth in Paragraph 82 are not directed to K&A; accordingly, no response is required.

83.     The allegations set forth in Paragraph 83 are not directed to K&A; accordingly, no response is required.

**FIFTH COUNT-Breach of Fiduciary Duty as to Michael Konover**

1-81.   K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs

16

1 through 81 of its answer to the Fifth Count insofar as it is directed to K&A.

82.     The allegations set forth in Paragraph 82 are not directed to K&A; accordingly, no response is required.

83.     The allegations set forth in Paragraph 83 are not directed to K&A; accordingly, no response is required.

84.     The allegations set forth in Paragraph 84 are not directed to K&A; accordingly, no response is required.

85.     The allegations set forth in Paragraph 85 are not directed to K&A; accordingly, no response is required.

**SIXTH COUNT- Successor Liability as to KDC, Blackboard and Ripple**

1-81.   K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the Sixth Count.

82.     The allegations set forth in Paragraph 82 are not directed to K&A; accordingly, no response is required.

83.     The allegations set forth in Paragraph 83 are not directed to K&A; accordingly, no response is required.

84.     The allegations set forth in Paragraph 84 are not directed to K&A; accordingly, no response is required.

85.     The allegations set forth in Paragraph 85 are not directed to K&A; accordingly, no response is required.

86.     The allegations set forth in Paragraph 86 are not directed to K&A; accordingly, no

response is required.

## SEVENTH COUNT-Tortious Interference with the KMC's Subordination Agreement as to All Defendants

1-81.    K&A incorporates its responses to Paragraphs 1 through 81 above, as Paragraphs 1 through 81 of its answer to the Seventh Count.

82.    The allegations set forth in Paragraph 82 state legal conclusions; accordingly, no response is required.

83.    KMC's Guaranty Agreement in its entirety speaks for itself; accordingly, no response is required.

84.    The allegations set forth in Paragraph 84 state legal conclusions as to which no response is required; K&A denies any factual allegations set forth in Paragraph 84 insofar as they are directed to K&A.

85.    The allegations set forth in Paragraph 85 state legal conclusions as to which no response is required; K&A denies any factual allegations set forth in Paragraph 85 insofar as they are directed to K&A, except to admit that KMC made certain transfers to its shareholders and affiliates in the normal course of business.  K&A avers that Plaintiff's claims in Paragraph 85 are time barred in whole or in part, to the extent that the alleged transfers or payments occurred prior to December 14, 2002, or otherwise fail to state claims upon which relief can be granted.

86.    The allegations set forth in Paragraph 86 state legal conclusions as to which no response is required; K&A denies any factual allegations set forth in Paragraph 86 insofar as

18

they are directed to K&A.

87.    The allegations set forth in Paragraph 87 state legal conclusions as to which no response is required; K&A denies any factual allegations set forth in Paragraph 87 insofar as they are directed to K&A.

88.    The allegations set forth in Paragraph 88 state legal conclusions as to which no response is required; K&A denies any factual allegations set forth in Paragraph 88 insofar as they are directed to K&A.  K&A states that the allegations in Paragraph 88 are time barred in whole or in part, to the extent that the alleged transfers or payments occurred prior to December 14, 2002.

## AFFIRMATIVE DEFENSES[1]

### AFFIRMATIVE DEFENSE ONE

Plaintiff has failed to state claims upon which relief can be granted.

### AFFIRMATIVE DEFENSE TWO

Plaintiff's action and recovery are barred, in whole or in part, under the doctrines of res judicata and collateral estoppel.

### AFFIRMATIVE DEFENSE THREE

Plaintiff's action and recovery are barred in whole or in part by the merger of the contractual obligations in the mortgage and Guaranty Agreement into the Maryland Judgment.

---

[1]    The Fourth, Fifth and Sixth Counts are not directed to K&A.

**AFFIRMATIVE DEFENSE FOUR**

Plaintiff's action and recovery are barred in whole or in part by the applicable statutes of limitation.

**AFFIRMATIVE DEFENSE FIVE**

Plaintiff's action and recovery are barred, in whole or in part, because of its violations of public policy in its collection practices, including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate; aggravating the damage to the Property by purposefully deferring the eviction of The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.  Plaintiff's collection practices violate the public policy of the State of Maryland and the State of Connecticut, including those policies established by the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110, *et seq*.

**AFFIRMATIVE DEFENSE SIX**

Plaintiff's action and recovery are barred, in whole or in part, by the doctrine of unclean

hands because of its collection practices and other inequitable conduct, including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate; aggravating the damage to the Property by purposefully deferring the eviction of The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.

**AFFIRMATIVE DEFENSE SEVEN**

Plaintiff's action and recovery are barred, in whole or in part, under the doctrine of laches.

**AFFIRMATIVE DEFENSE EIGHT**

Plaintiff's action and recovery are barred, in whole or in part, because of its violation of the covenant of good faith and fair dealing inherent in the applicable loan documents, because of its unreasonable collection practices and its deviation from commercial reasonableness including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate;

aggravating the damage to the Property by purposefully deferring the eviction of The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.

## AFFIRMATIVE DEFENSE NINE

Plaintiff's action and recovery are barred under the doctrine of waiver.

## AFFIRMATIVE DEFENSE TEN

Plaintiff's action and recovery are barred by the doctrine of estoppel.

## AFFIRMATIVE DEFENSE ELEVEN

To the extent that Plaintiff has suffered any harm or losses, Plaintiff has unreasonably failed to mitigate its damages, and instead, has engaged in conduct designed specifically to inflate its alleged damages in order to maximize an unjust recovery against Defendants, including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate; aggravating the damage to the Property by purposefully deferring the eviction of

The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.

## AFFIRMATIVE DEFENSE TWELVE

To the extent that Plaintiff has suffered any harm or losses, Plaintiff's harm or losses resulted from causes other than the acts and occurrences alleged in the Amended Complaint, including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate; aggravating the damage to the Property by purposefully deferring the eviction of The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based

on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.

## AFFIRMATIVE DEFENSE THIRTEEN

To the extent that Plaintiff has suffered any harm or losses, such harm or losses were caused, aggravated, or contributed to by its own acts or omissions, by the acts or omissions of those over whom K&A had no control, or otherwise by acts for which K&A is not responsible, including seeking the recovery of items of damage to which it was not entitled; delaying the foreclosure proceedings in Maryland in order to enhance its recovery of default interest at an exorbitant rate; aggravating the damage to the Property by purposefully deferring the eviction of The Wire for nearly two years; delaying earnest efforts to lease vacant space at Diamond Point for a year and a half; failing to maintain the condition of the Property; manipulating the conditions of the foreclosure auction to drive down the sale price so that it could purchase the Property for its own account and then subsequently resell it at an inflated profit; failing to challenge or direct the Receiver to challenge the real property tax assessment for the Property; and by obtaining a favorable verdict against Wal-Mart/Sam's Club in the Maryland Action based on an argument that the occupancy of the Sam's Club space by The Wire was detrimental to the Property, and then taking steps to allow The Wire to remain at the Property following the trial in the Maryland Action.

## AFFIRMATIVE DEFENSE FOURTEEN

To the extent that the Third Count of Plaintiff's Complaint is directed to K&A, K&A

24

denies that a transfer of the Judgment Debtors' assets occurred within the scope of Conn. Gen. Stat. §52-552a *et seq.* (the "Act"), but states in the alternative that if, in fact, a transfer within the scope of the Act has occurred, the transferee(s) of such assets received the assets in good faith and for a reasonably equivalent value.

**AFFIRMATIVE DEFENSE FIFTEEN**

To the extent that the Third Count of Plaintiff's Complaint is directed to K&A, K&A denies that a transfer of the Judgment Debtors' assets has occurred within the scope of the Act, but states in the alternative that if, in fact, a transfer within the scope of the Act has occurred, the Plaintiff may not avoid the transfer.  Rather, the Plaintiff is only entitled to recover judgment for the value of the asset(s) transferred, as adjusted under the Act taking into account the equities involved, or the amount necessary to satisfy the Plaintiff's claim, whichever is less.

**AFFIRMATIVE DEFENSE SIXTEEN**

To the extent that the Third Count of Plaintiff's Complaint is directed to K&A, K&A denies that a transfer of the Judgment Debtors' assets has occurred within the scope of the Act, but states in the alternative that if, in fact, a transfer within the scope of the Act has occurred, the transferee(s) took in good faith and is, thus, entitled to the extent of the value given the Judgment Debtors for the transfer, to (1) a lien on or a right to retain any interest in the asset(s) transferred; (2) enforcement of any obligation incurred; or (3) a reduction in the amount of the liability on the judgment.

**AFFIRMATIVE DEFENSE SEVENTEEN**

To the extent that it receives additional payment for sums claimed to be due under the

25

Judgment, Plaintiff will be unjustly enriched.

**AFFIRMATIVE DEFENSE EIGHTEEN**

To the extent that Plaintiff has received funds from sources other than K&A, K&A is entitled to set off said sums against any amount deemed to be due from it.

**AFFIRMATIVE DEFENSE NINETEEN**

To the extent that Plaintiff seeks to recover for tortious interference with contract or prospective contract in the Seventh Count of the Complaint, any alleged actions of K&A were privileged.

**JURY TRIAL DEMAND**

Defendant and Counter-Plaintiff K&A demands a trial by jury of all claims in the Complaint that are triable of right by a jury.

Dated at Bridgeport, Connecticut, this 5th day of November, 2009.

> DEFENDANT,
> **KONOVER & ASSOCIATES, INC.**
>
> By: */s/ T. Scott Cowperthwait*
> James T. Shearin (ct01326)
> T. Scott Cowperthwait (ct26813)
> Steven J. Stafstrom (ct27907)
> Pullman & Comley, LLC
> 850 Main Street, P.O. Box 7006
> Bridgeport, CT  06601-7006
> jtshearin@pullcom.com
> tscowperthwait@pullcom.com
> sstafstrom@pullcom.com
> Telephone 203 330 2000
> Facsimile 203 576 8888

## CERTIFICATION OF SERVICE

I hereby certify that on November 5, 2009, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system. The following counsel and/or parties have appeared in this case as of this date:

John B. Nolan, Esq.
Erick M. Sandler, Esq.
Erik H. Beard, Esq.
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103

William J. Murphy, Esq.
Conor B. O'Croinin, Esq.
Murphy & Shaffer LLC
36 South Charles Street, Suite 1400
Baltimore, MD 21201

Theodore J. Tucci, Esq.
Michael Kolosky, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103

Jeff Joyce, Esq.
Joyce & McFarland LLP
2300 Bank of America Center
700 Louisiana, Suite 2300
Houston, Texas 77002

Mark S. Shipman, Esq.
Cheryl Gabes Rice, Esq.
Shipman, Sosensky & Marks, LLC
135 South Road
Farmington, CT 06032

Mark S. Baldwin, Esq.
Stephen R. Klaffky, Esq.
Brown Rudnick, LLP
City Place I, 38th Floor
185 Asylum Street
Hartford, CT 06103

   /s/ T. Scott Cowperthwait
James T. Shearin (ct01326)
T. Scott Cowperthwait (ct26813)
Steven J. Stafstrom (ct27907)

Bridgeport/70796.1/TSCOWPERTHWAIT/791865v4

27