UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WELLS FARGO BANK, N.A., TRUSTEE, | : |
| Plaintiff, | : |
| vs. | :   No. 3:05cv01924(CFD)(WIG) |
| MICHAEL KONOVER, | : |
| KONOVER DEVELOPMENT CORPORATION, | |
| KONOVER CONSTRUCTION CORPORATION, | : |
| KONOVER & ASSOCIATES, INC., | |
| BLACKBOARD LLC, and | : |
| RIPPLE, LLC, | |
| | : |
| Defendants. | |

-------------------------------------------------------------X

ORDER ON DEFENDANT'S MOTION TO COMPEL [DOC. # 643]

Defendant Michael Konover has moved for an order compelling Plaintiff Wells Fargo Bank N.A. to produce each of its electronic communications with Sarah Longson, Esquire, the Maryland attorney who served as the Foreclosure Trustee in the Maryland Foreclosure Action. At issue are 78 documents containing 110 e-mail communications that Plaintiff maintains are protected from disclosure by the attorney-client privilege since Longson served as outside counsel to Plaintiff[1] after the Diamond Point loan went into default.

Discussion

Where subject-matter jurisdiction is premised on the diversity of the parties, the federal courts have concluded that issues of attorney-client privilege are substantive and, thus,

---

[1] Longson's client was actually ORIX Capital Markets, LLC ("ORIX"), which served as the special servicer of the loan pool, which included the Diamond Point loan. Plaintiff Wells Fargo serves as trustee for the certificate holders, which include ORIX. No one has disputed Wells Fargo's right to assert the attorney-client privilege on behalf of ORIX.

1

controlled by the law of the forum state. See Fed. R. Evid. 501; Safeco Ins. Co. of Am. v. Vecsey, 259 F.R.D. 23, 27-28 (D. Conn. 2009); Walsh v. Seaboard Sur. Co., 184 F.R.D. 494, 496 n.3 (D. Conn. 1999). Connecticut has adopted the most significant relationship test of the Restatement (Second) of Conflict of Laws § 188 to resolve choice-of-law issues. Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co., 243 Conn. 401, 414 (1997). Under this test, Maryland substantive law on privilege would apply since Maryland clearly has the most significant ties to the communications at issue.[2]

Under Maryland law, the attorney-client privilege prevents the disclosure of confidential communications made by a client to his attorney for the purpose of obtaining legal advice. E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc., 351 Md. 396, 406 (1998). The Maryland Supreme Court has "essentially adopted" the definition of the attorney-client privilege set forth in Wigmore on Evidence:

> (1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

Id. at 415 (quoting Harrison v. State, 276 Md. 122, 135 (1975) (quoting John H. Wigmore, Wigmore on Evidence § 2292, at 554 (McNaughton rev. ed. 1961))). Because application of the privilege withholds relevant information from the fact-finder, the Maryland courts have held that the attorney-client privilege should be narrowly construed. Id. (citing cases).

The Maryland Supreme Court has emphasized that only attorney-client communications

---

[2] The parties do not dispute that the substantive law of Maryland applies to this discovery dispute.

"*pertaining to legal assistance* and *made with the intention of confidentiality*" are within the ambit of the privilege.  Id. at 415-16 (italics in original) (quoting Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 37 (D. Md. 1974)) .  Thus, in order for a communication to be privileged, it "*must relate to professional advice*" and to the subject matter about which such advice is sought.  Id. (italics in original).  The communications must be for the "*primary* purpose of soliciting legal, rather than business, advice."  Id. (citations omitted, italics in original).  "Communications with regard to business advice are unprotected."  Id. at 422 (quoting 5 Lynn McLain, Maryland Evidence § 503.9 at 493 (1987) (internal quotations omitted)).

With regard to the confidentiality prong of the attorney-client privilege, the Maryland Supreme Court has held that in order for a communication to be considered confidential, it is essential that it not be intended for disclosure to third persons.  Id. at 417 (citing United States v. (Under Seal), 748 F.2d 871, 874 (4th Cir. 1984) (in which the court held that the attorney-client privilege did not apply to a whole series of corporate documents which could not reasonably have been expected to remain confidential)).  "If a client communicates information to his attorney with the understanding that the information will be revealed to others, that information . . . will not enjoy the privilege."  United States v. (Under Seal), 748 F.2d at 875.  The Maryland Supreme Court in E.I. du Pont de Nemours further noted that, in determining whether communications between an attorney and client were intended to be conveyed to a third party, the courts have looked at the role of the attorney at the time the communications were made.[3]

---

[3] In the E.I. du Pont de Nemours case, the Maryland Supreme Court considered the issue of whether an attorney who is acting as a collection agent is performing a legal function or business function. The court noted that, while it has not specifically addressed this issue, a number of courts from other jurisdictions had held that the attorney was performing a business function and, thus, no privilege attached to communications from the client.  351 Md. At 417

351 Md. at 417.

In the instant case, Defendant challenges Plaintiff's invocation of the attorney-client privilege to protect its communications with Longson on the ground that, as Foreclosure Trustee, Longson owed a fiduciary duty to both the borrower and lender, which prevented her from having privileged communications with Plaintiff about the foreclosure proceedings.[4]  Maryland substantive law recognizes that a foreclosure trustee owes a fiduciary duty to parties on both sides of the transaction, i.e., the mortgagor and mortgagee, or borrower and lender.  The Maryland Code § 15-102(a)(3)(i) defines a "fiduciary" as including a "trustee acting under a deed . . . or appointed by the court."  In Simard v. White, 383 Md. 257, 312 (2004), the Maryland Supreme Court emphasized that a trustee "not only represents the holder of the note secured by the deed of trust, but also the owners of the property" (quoting Waters v. Talbott, 165 Md. 70, 75 (1933)).  The court further cited Edgar G. Miller, Jr., Equity Procedure § 456 at 538, for the proposition that a "mortgagee acting under power of sale acts not for himself alone, but as a fiduciary, and for the benefit of all parties interested in the proceedings."  See generally E.W. Holmes, Annotation, Duty and Liability of Trustee Under Mortgage Deed of Trust Securing Debt to Mortgagor, Subsequent Purchaser, or Lienor, 117 A.L.R. 1054 (1938 & Supp. 2009).

What is not as clear is how an attorney's dual roles as foreclosure trustee and counsel to one of the parties affects the attorney-client privilege.  Neither side has cited any Maryland

---

(citing cases).

[4] Apparently it is not an uncommon practice in Maryland for counsel for the mortgagor to be appointed as the foreclosure trustee.  See Hersh v. Allnutt, 252 Md. 513, 517 (1969) (noting that the practice of naming a vendor's attorney as the attorney to make the sale in a purchase money mortgage has been recognized for years as being proper).

caselaw directly on point. Defendant argues that the attorney's dual status results in a complete waiver of the privilege, citing In re Brokers, Inc., No. 04-53451, 2006 WL 897137, at *2 (Bankr. M.D.N.C. Mar. 27, 2006). In that case, the court held that any communications relating to a deed of trust in which the attorney was named as trustee were not privileged because, in that capacity, the attorney-trustee was a disinterested third party acting as the agent of both the debtor and creditor. However, as Plaintiff points out, neither that case nor In re Sunrise Securities Litigation, 130 F.R.D. 560, 595 (E.D. Pa. 1989), also relied on by Defendant, holds that a blanket waiver of the attorney-client privilege occurs. Rather a court must determine which "hat" the trustee was wearing at the time the communication was made. See In re Brokers, 2006 WL 897137, at *2 (holding that the client could not assert the attorney-client privilege as to communications in which the attorney was acting as a disinterested third party). Plaintiff's approach is supported by dictum in E.I. du Pont de Nemours, in which the Maryland Supreme Court instructed that a court must consider the role of the attorney at the time of the communication to determine if the communication was confidential. 351 Md. at 417; see generally Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 228-29 (4th ed. 2001).

      Based on the holdings of the Maryland Supreme Court recognizing the fiduciary duty that the trustee owes to both the mortgagor and mortgagee, and the general principles that apply when an attorney has dual roles, the Court finds that a Maryland court would not apply a blanket waiver exception to the attorney-client privilege as urged by Defendant, but rather would examine each of the communications at issue to determine whether the attorney was acting as outside counsel for the client or was acting as the foreclosure trustee at the time the

communication was made.

Additionally, the Court finds that, even when Longson was acting as counsel for Plaintiff, some of the communications withheld by Plaintiff are not privileged because they were not made for the purpose of obtaining legal advice. See Burlington Industries, 65 F.R.D. at 37-39; Jones v. Murphy, 256 F.R.D. 510, 512 (D. Md. 2008), aff'd, — F. Supp. 2d —, 2009 WL 604937 (D. Md. Feb. 23, 2009). Some of the documents are merely reports of business matters, and others are no more than transmittal documents, which are not privileged. See ABB Kent-Taylor, Inc. v. Stallings and Co., 172 F.R.D. 53, 57-58 (W.D.N.Y. 1996) ("The mere fact a communication is made directly to an attorney, or an attorney is copied in on a memorandum does not mean that the communication is necessarily privileged."); United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994) (holding that there is no privilege for corporate counsel who is giving, or corporate employees who are seeking, predominately business advice as opposed to legal advice).

Lastly, Defendant argues that Plaintiff has waived the attorney-client privilege by virtue of its disclosure of certain privileged communications to third parties. Plaintiff responds that Maryland does not recognize subject matter waiver of the attorney-client privilege. The Court disagrees.

On the subject of waiver, the Maryland courts have held that "express and implied waivers of the privilege are universally recognized limitations on client power to hold the privilege." Elkton Care Center Assocs. Ltd. P'ship v. Quality Care Mgmt, Inc., 145 Md. App. 532, 546 (2002) (citing Harrison, 276 Md. at 137-38). Although the privilege may be waived either expressly or by implication, only the client has the power to waive the privilege. Parler &

Wobber v. Miles & Stockbridge, 359 Md. 671, 691 (2000); City of College Park v. Cotter, 309 Md. 573, 591 (1987). Additionally, a client may waive all communications on a particular subject by virtue of his disclosure of a privileged communication with his attorney on that particular subject. In Harrison, 276 Md. at 136, the Maryland Supreme Court held, "[g]enerally, the client's offer by his own testimony as to a specific communication with his attorney constitutes a waiver *as to all other communications to the attorney on the same subject matter*. The attorney's testimony concerning such communications thus becomes admissible by virtue of the client's voluntary testimony in that regard." (Emphasis added). Thus, this Court finds that the Maryland courts do recognize subject matter waiver of the attorney-client privilege. However, for a waiver to have occurred, the communication disclosed by the client must have been privileged.

In this case, most of the communications on which Defendant relies in support of its waiver argument were communications by Longson in her capacity as foreclosure trustee (Def.'s Ex. 16, 20, 21, 22, 23), and, thus, are not privileged communications. See Smith v. State, 394 Md. 184, 202 (2006).

As for Longson's response to a question on cross-examination (Def.'s Ex. 17), to which Plaintiff's counsel objected but did not claim privilege, the Maryland courts have generally disfavored finding a waiver under circumstances where the communication was first solicited on cross-examination. See Harrison, 276 Md. at 138-39. Moreover, Longson's response was a one-line statement that revealed little of substance concerning communications with her client. Id. (noting that where courts have found a waiver of the privilege during cross-examination, the disclosures generally have been substantive and detailed) (citing cases). Clearly, this one-line

answer did not constitute a waiver as to all communications between Longson and her client. Furthermore, this disclosure was not by the client but by Longson. The Court has found no Maryland case that has held that a waiver of the attorney-client privilege occurs when the client's attorney fails to raise an objection of privilege during cross-examination of another attorney of the client.

Lastly, Defendant cites to a privileged document produced by Plaintiff's expert witness in the Texas Litigation in response to a subpoena. Plaintiff responds somewhat disingenuously that it is not clear from whom or how its expert received the document. As Defendant points out, this is information that would be known by Plaintiff, not by Defendant. Presumably Plaintiff's expert received the document from Plaintiff. The Court agrees with Defendant that as to the limited subject matter of this document - the defeasance language in the Note - there was a waiver of the attorney-client privilege, and any other privileged communications on this particular subject must be disclosed.

With these principles in mind, the Court has carefully reviewed <u>in camera</u> the unredacted copies of the 78 documents provided by Plaintiff. The documents were divided into two groups: Group I, documents that were redacted in part, and Group II, documents which were withheld in their entirety. After reviewing the documents, the Court finds that the following documents, or certain redacted portions of the documents, are <u>not</u> protected from disclosure based upon the attorney-client privilege[5] and must be produced:

<u>Group I - Documents Redacted in Part</u>

---

[5] The document numbers are taken from the first column of the WFB Privilege Log (Def.'s Ex. 12).

- # 44 in its entirety;
- # 633 in its entirety;
- # 634 in its entirety;
- # 645 in its entirety;
- the first full redacted paragraph of # 646;
- the second redacted paragraph of # 686;
- page 1 of # 688 and the second redacted paragraph on page 2 of # 688 ("Let . . . responsibilities");
- the second redacted paragraph on page 1 of # 700;
- the first two redacted paragraphs on page 1 of # 704 ("Nothing . . . morning"), and all of page 2 of # 704;
- the first three redacted sentences ("In the foreclosure . . . resending to you.") and the last three redacted lines ("the MSJ . . . DG") on page 1 of # 706, the first two redacted paragraphs on page 2 of # 706 ("Nothing . . . morning."), and page 3 of # 706;
- the first redacted sentence of # 715;
- the first redacted paragraph of # 719 and the word "before" in the second redaction on page 1 of # 719;
- the first two redacted paragraphs on # 780 ("Will do . . . speak now!");
- # 781 in its entirety;
- # 1419 in its entirety;
- # 1680 in its entirety;

- # 1725 in its entirety;

- # 1728 in its entirety;

- # 1730 in its entirety;

- # 1731 in its entirety;

- the last redacted paragraph on page 2 of # 1934 and the redacted paragraph on page 3;

- # 1959 in its entirety;

- # 2133 in its entirety;

- the first two paragraphs of # 2294 ("Hi . . . link");

- the second and third redacted paragraphs on page 1 of # 2299;

- the first phrase in the first redacted section on page 1 of # 2300 ("No . . . yet"), the second redacted section on page 1, and the last redacted e-mail at the bottom of page 3 and top of page 4.

Group II - Documents Withheld in their Entirety

- # 1574 in its entirety;

- # 1950 in its entirety;

- # 1998 in its entirety;

- # 2008 in its entirety;

- # 2012 in its entirety;

- the second e-mail on page 1 and the third e-mail on pages 1-2 of # 2014;

- # 2021 in its entirety;

- the second and third e-mails (both dated 02/01/06) on # 2177;

- # 2198 in its entirety;

- # 2221 in its entirety;

- # 2240 in its entirety;

- # 2309 in its entirety;

- # 2318 in its entirety;

- # 2437 in its entirety;

- # 2438 in its entirety;

- # 2649 in its entirety;

- # 2749 in its entirety;

- # 2955 in its entirety;

The Court's sustains Plaintiff's claim of attorney-client privilege as to the documents or redacted portions of documents produced for in camera review that are not listed above. Additionally, on January 28, 2010, Plaintiff submitted one additional document for the Court's in camera review, referred to as "Item 2002 (first page)." The Court agrees with Plaintiff that this document is protected from disclosure by the attorney-client privilege.

## Conclusion

For the reasons set forth above, Defendant's Motion to Compel Production of Plaintiff's Communications with Foreclosure Trustee [Doc. #643] is GRANTED IN PART AND DENIED IN PART.

SO ORDERED, this   5th   day of March, 2010, at Bridgeport, Connecticut.

　　　　　　　　　　　　　　　　　　　 /s/ *William I. Garfinkel*
　　　　　　　　　　　　　　　　　　　WILLIAM I. GARFINKEL
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge