## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., TRUSTEE | : | NO. 3:05CV1924 (AWT) |
| | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| MICHAEL KONOVER, | : | |
| | : | |
| Defendant. | : | JANUARY 27, 2012 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE MARYLAND COURT'S FINDINGS OF FACT AND JUDGMENT (DOC. NO. 837) AND IN SUPPORT OF CROSS-MOTION TO TAKE JUDICIAL NOTICE OF RELEVANT FINDINGS AND JUDGMENT OF THE MARYLAND COURT

Plaintiff Wells Fargo Bank, N.A. (the "Trustee") respectfully submits this memorandum of law in opposition to defendant Michael Konover's ("Konover") motion *in limine* (Doc. No. 837) seeking to exclude the findings of fact and judgment entered by the Circuit Court for Baltimore County in *Wells Fargo Bank Minnesota, N.A. v. Diamond Point Plaza, L.P.*, No. 03-C-03-002449 (the "Maryland Action"). This memorandum is also submitted in support of the Trustee's cross-motion requesting that the Court take judicial notice of the relevant findings and judgment in the Maryland Action on collateral estoppel grounds and instruct the jury during trial that Judge Souder made such findings, which are binding on Konover.

## I.        INTRODUCTION

Konover's argument that the Maryland court's judgment and findings are inadmissible hearsay fails:  he ignores the principle that any hearsay limitation on admitting judicial findings into evidence must yield to the law of preclusion.  *E.g.*, Strong, *McCormick on Evidence* 451 (5th ed. 1999) (courts are "often unwilling to admit judgments in previous cases *if neither res judicata nor collateral estoppel*" are applicable) (emphasis added).

**ORAL ARGUMENT REQUESTED**

In this veil-piercing case, the Court has analyzed the preclusive effect of the Maryland Judgment[1] on multiple occasions. Early on, the Court (*Droney, J.*) rejected Konover's argument that res judicata precludes veil piercing, while explaining that:

- "matters presented in the Maryland action will be relevant to proving 'complete domination' of the Judgment Debtors or 'unity of interest' of the entities within the Konover Organization;"

- "both actions involve similar allegations and similar motivations – fraud and inequitable conduct within the Konover Organization to benefit members of the Organization at the expense of outside creditors;" and

- "the facts at issue in the Maryland action overlap with the facts at issue in this case…"

*Wells Fargo Bank, N.A. v. Konover*, 3:05-cv-1924 (CFD), 2008 U.S. Dist. LEXIS 21506, at *11-12 (D. Conn. Mar. 20, 2008).

More recently, the Court dismissed several of Konover's affirmative defenses on res judicata grounds because "the issues that the defendants wish to litigate in their affirmative defenses have already been litigated in Maryland and a final judgment has been entered on each issue." *Wells Fargo Bank, N.A. v. Konover*, 3:05-cv-1924 (CFD), 2011 U.S. Dist. LEXIS 32079, at *102 (D. Conn. Mar. 28, 2011).

The issue now at hand is how to conduct the trial of this action in a manner that permits the parties to present to the jury the overlapping matters that were also at issue in the Maryland

---

[1] The Maryland court entered two judgments jointly and severally against four Konover entities: KMC, Diamond Point Plaza, L.P. ("DPPLP"), Diamond Point Management Corporation, and Oriole Commercial Associates (collectively, the "Judgment Debtors"). The primary judgment, originally in the amount of nearly $23 million, was entered in December, 2005 based upon findings of fact and conclusions of law issued in August, 2005. In September, 2009, following appeals of the underlying judgment, a second judgment, in the amount of $1,443,208.81, was entered jointly and severally against the Judgment Debtors for attorneys' fees and costs. For ease of reference, both judgments will be referred to collectively as the "Maryland Judgment." The total unpaid amount of the Maryland Judgment for which the Trustee is seeking to have Konover held liable exceeds $19 million with interest continuing to accrue.

Action while honoring the preclusive effect of the Maryland Judgment.  That balance can be struck only by taking judicial notice of the findings actually and necessarily determined by the Maryland court that also are relevant to the Trustee's claims.  Konover cannot escape those binding findings by turning to the law of hearsay.

The Maryland findings are binding on Konover under the doctrine of collateral estoppel; many are highly relevant to key issues in this case.  Konover, and companies with which he is in privity, litigated and lost the Maryland Action.  In addition to being a defendant in the Maryland case to defend (unsuccessfully) a fraudulent transfer claim, Konover had by far the most to lose on the liability claims against the borrower and the guarantor of the Diamond Point Plaza mortgage loan (the "Loan").  The most pertinent of the claims determined in the Maryland Action was whether a company of which Konover is the sole shareholder and chairman of the board of directors, Konover Management Corporation ("KMC"), would be liable under its limited guarantee of the Loan.  Under basic principles of preclusion law, Konover cannot now contest the detailed factual findings actually and necessarily determined by the Maryland court in rendering the Maryland Judgment.

The Court should deny Konover's motion *in limine* and instead should instruct the jury that Judge Souder in the Maryland Action entered a judgment and made findings of fact in support of it that are binding on the parties.  Although all of the findings are relevant to this dispute, as either necessary background or direct or circumstantial evidence, the Trustee submits that a tailored presentation of the findings can be made to the jury.  Attached hereto as Exhibit A is a copy of the findings in the Maryland Action with the findings of which the Trustee requests the taking of judicial notice highlighted for the Court's convenience.

## II.   BACKGROUND

### A.   The Trustee's Veil Piercing Claims

This is a veil-piercing suit brought by the Trustee to have Konover held liable for the unpaid amount of the Maryland Judgment jointly and severally with KMC.  The evidence at trial will show that Konover used his complete domination of KMC to ensure that KMC's guaranty of the Loan, and ultimately the judgment entered upon that guaranty, would be worthless.  The key components to the Trustee's case are set forth in its Contentions filed with the Joint Trial Memorandum and summarized in Section II of its memorandum in opposition to Konover's motion *in limine* (Doc. No. 834) ("Motion 834 Opp'n").  The Trustee will refer to those documents to the extent that the facts underlying the Trustee's claim pertain to the instant motion.

### B.   The Maryland Action, Findings and Judgments

On March 6, 2003, the Trustee filed the Maryland Action for breach of contract against the borrower, DPPLP, and the guarantor, KMC.  On June 21, 2004, the Trustee filed its Third Amended Complaint in the Maryland Action, which was the operative complaint through trial, naming as additional defendants, *inter alia*, Konover, DPMC, Oriole and MCK, Inc.  Konover and MCK, Inc. (a company of which Konover has 100% ownership) were named in claims of misappropriation, conversion and fraudulent conveyance.

The Maryland court (*Souder, J.*) held a six-day bench trial in April, 2005.  On May 5, 2005, Judge Souder announced during a post-trial hearing that she intended to find the Judgment Debtors liable under the recourse provisions of the loan and the Guaranty.  On August 15, 2005, the Maryland Court issued its Findings of Fact and Conclusions of Law, which were amended on August 24. 2005 ("Maryland Findings").  On December 5, 2005, an Amended Final Judgment

was entered in the Maryland Action against the Judgment Debtors (including KMC) in an amount of nearly $23 million for intentional misrepresentation and gross negligence and against Konover personally in the amount of $633,000 for fraudulent transfer.  The trial court initially denied the Trustee's request for attorneys' fees.

All parties to the Maryland Action appealed and on September 29, 2006, the Maryland Court of Special Appeals affirmed the monetary judgments (including both the recourse liability judgment against KMC and the fraudulent transfer judgment against Konover) and reversed and remanded the case for additional consideration as to the attorneys' fees issue.  *Wells Fargo Bank Minn., N.A. v. Diamond Point Plaza L.P.*, 908 A.2d 684 (Md. Ct. Spec. App. 2006).  The defendants in the Maryland Action appealed again.  On August 23, 2007, the Maryland Court of Appeals affirmed the Maryland Court of Special Appeals.  *Diamond Point Plaza, L.P. v. Wells Fargo Bank, N.A.*, 929 A.2d 932 (Md. 2007).  On remand, the trial court denied the Trustee's request for attorneys fees, but on May 8, 2009, the Court of Special Appeals reversed that decision and instructed the trial court to enter judgment in the amount of $1,443,208.81 in attorney's fees.  *Wells Fargo Bank Minn., N.A. v. Diamond Point Plaza L.P.*, 185 Md. App. 489, 971 A.2d 360 (2009).  An additional judgment for attorneys' fees was eventually entered on September 14, 2009.

The detailed Maryland Findings are consequential to many of the issues in this action. For example, the Maryland court found that the borrower, DPPLP, knew when it secured the loan in 2000 that a major tenant, Sam's Club (a Walmart subsidiary), was planning to vacate the premises.  *Md. Findings* at 19.  Both DPPLP and "Michael Konover knew that Sam's decision to relocate was 'significant,'" and "Michael Konover also recognized" that this information "would make th[e] [proposed] loan a transaction" that "a number of lenders . . . would not want."  *Id.* at

16, 19.  The Maryland court found that DPPLP intentionally and fraudulently withheld this information from the lender in order to obtain the loan.  *Id.* at 21-23.

The Maryland court found a number of facts that directly establish Konover's state of mind with respect to the Trustee's efforts to collect money that it was rightfully owed.  The Maryland court determined that in November, 2002, Konover received $633,000 from DPPLP ***"with the intention of further depleting [its] assets to deprive Wells Fargo of the rents to which it was rightfully owed."***  *Id.* at 38-40 (emphasis added).  Konover knew that this transfer "would render Diamond Point insolvent," but he nonetheless ***"received the transfer with the intent to hinder, defraud or delay [DPPLP'S] creditors, in particular, Wells Fargo."***  *Id.* (emphasis added).  Based on these findings, the Maryland court entered the $633,000 judgment against Michael Konover for fraudulent transfer.

The question for the Court is whether issues, which were "fully litigated and decided in the previous litigation in Maryland," *Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 32079, at *100, 102 n.57, should now be deemed settled for purposes of this case.  Specifically, the Trustee requests that the Court take judicial notice of certain findings relating to:  (i) the recourse judgment against KMC (*see Md. Findings* at n.3 and ¶¶ 35, 93, 97, 101, 105, 108, 109, 114, 122); and (ii) the fraudulent transfer judgment against Konover (*see Md. Findings* ¶¶ 171-73, 176-79, 184-87, 194-96, 200, 202-04, 208, 213, 214, 218, 231, 232, 236, 354-56, 361, 362, 366, 369).  These findings, which are binding on Konover, serve as direct or circumstantial evidence which support piercing the corporate veil of KMC.  They also serve as essential, relevant background facts for the jury.[2]

---

[2]  Issues relating to other findings of the Maryland court are likely to arise at trial, and the Trustee reserves its rights to use the findings as permitted by law and under the Federal Rules of Evidence.  For example, Judge Souder expressly found that the Konover and other Konover-related witnesses "were motivated to tell a story in a way that makes their version of the events

The relevance of facts regarding the fraud found in the Maryland Action to support recourse liability is explained in Section IV.B.3 of the Trustee's Motion 834 Opposition, which is hereby incorporated by reference.  The relevance of facts regarding the $633,000 fraudulent transfer received by Michael Konover is explained in Section IV.B.7 of the Motion 834 Opposition, which is hereby incorporated by reference.  Konover is bound by these findings for the reasons set out below.

## III.   ARGUMENT

### A.   Collateral Estoppel Bars Konover From Relitigating Issues Decided In The Maryland Action.

#### 1.   The Governing Law.

The basic principle underlying the law of collateral estoppel is a simple one:  A litigant should receive one, but only one, "full and fair opportunity to litigate an issue." *Montana v. United States*, 440 U.S. 147, 153 (1979).  After that, the judicial system's interests in conserving resources and promoting uniformity outweigh a party's interest in pursuing repetitive litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

These general principles are fully applicable in Maryland.[3]  The Maryland courts, like those in most jurisdictions, have long "applied the *Restatement (Second) of Judgments* in determining the applicability of issue preclusion."  *Clark v. Clark*, 1994 U.S. App. LEXIS

---

unreliable," and, thus, rejected their testimony. *Md. Findings* at 17, ¶ 91. Judge Souder also found that the testimony of a top Konover officer, James Ainsworth, who will be a witness in this case, was not credible in testifying about the $633,000 transfer. *Id.* at 57, ¶ 204.  If any such witness testifies at trial, the Trustee should be permitted to cross-examine witnesses on "prior occasions when his testimony in other cases has been criticized by [a] court as unworthy of belief," s*ee United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011), and intends to do so.

[3] The Maryland Judgment is entitled to "the same preclusive effect" as that which it would receive "in the courts of the State from which the judgment[] emerged."  *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *see* 28 U.S.C. § 1738.

33685, *7 (4th Cir. 1994); *see also* Summ. J. Ruling at 2 n.5 (March 20, 2008) (noting that "both Connecticut and Maryland follow the *Restatement (Second), Judgments* (1982) on res judicata"). The rule under the *Restatement* is that "'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 504 (Md. 1989), quoting *Restatement (Second) of Judgments* § 27 (1982); *Colandrea v. Wilde Lake Community Ass'n*, 761 A.2d 899, 907, 909-10 (Md. 2000) (same).

The Maryland courts have sometimes characterized the inquiry as a four-element test. *E.g.*, *Washington Suburban Sanitary Commission v. TKU Assocs.*, 376 A.2d 505, 514 (Md. 1977) (stating standard as requiring:  (1) identity between the issues, (2) a final judgment on the merits, (3) that the precluded party was a party to the prior action, and (4) that the precluded party receive a fair opportunity to be heard).  Other decisions frame the analysis as a two-step inquiry.  *Jordan v. Moore*, 2010 U.S. Dist. LEXIS 24305 (D. Md. 2010) ("the issue to be precluded must have been (1) actually litigated; and (2) essential to a valid and final judgment").  Whatever the precise formulation the bottom line is, however, the same:  the rule "simply means" that "in a second suit between the same parties, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive." *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 456 (2006).

### 2.    <u>Konover Is Precluded From Relitigating The Maryland Court's Findings</u>.

The Maryland court's findings fully satisfy these standards.  Konover was a party to the Maryland action.  The final judgment in that case actually and necessarily determined the issues

addressed by the Maryland court's detailed findings, several of which the issues decided in the

Maryland Action are at issue once again in this case.

**a.**     <u>**Konover Was A Party To The Maryland Action**</u>.

It is a "basic premise of preclusion law" that a judgment generally binds only the parties,

that is, the people "by or against whom a lawsuit is brought." *Smith v. Bayer Corp.*, 131 S. Ct.

2368, 2379 (2011). This rule is clearly satisfied here. Konover was a named defendant in the

Maryland action for purposes of the claim involving the fraudulent transfer of $633,000 from

Diamond Point's rent account. He has also admitted, in his own motion for summary judgment

on *res judicata* grounds earlier in this case, that he was a "party" to the Maryland action for

preclusion purposes. *See* Konover's Mem. in Support of Motion for Partial Summ. J. at 11, doc

no. 175 (March 12, 2007) ("the first element of Maryland's *res judicata* test is satisfied" because

"Michael Konover was a defendant in the Maryland Action and is one of the defendants" in this

case).

Trying to avoid the preclusive effect of the Maryland Findings, Konover relies on the fact

that he was not a party in the Maryland Action for purpose of the recourse liability claims to

which the bulk of the Maryland Findings apply. The law of privity eliminates that distinction.

*See Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 341 n.5 (2004). The privity doctrine applies

when a party to a prior adjudication is "so identified in interest with another" that the two can

fairly be said to "represent the same legal right." *Anyanwutaku v. Fleet Mortgage Group, Inc.*,

85 F. Supp. 2d 566, 572-73 (D. Md. 2000). A classic example of a "privity" relationship is that

"between a close corporation and its sole or controlling stockholder." *Sparks Nugget, Inc. v.*

*Commissioner*, 458 F.2d 631, 639 (9th Cir. 1972); *see, e.g., EDP Med. Computer Sys., Inc. v.*

*United States*, 2005 U.S. Dist. LEXIS 29062, *20 (E.D.N.Y. 2005) ("as EDP's majority

-9-

shareholder, she was certainly in privity with EDP").  So long as the owner of the "closely-held

corporation participate[s] at trial," the presumption is that "one opportunity to litigate interests

that concern them in common" is enough.  *Bodnar v. Brinsfield*, 60 Md. App. 524, 536 (1984),

quoting *Restatement (Second) of Judgments* § 59(3); *see also Lawrence v. UMLIC-Five Corp.*,

2007 NCBC 30 (N.C. Bus. Ct. 2007) (noting that courts applying collateral estoppel "in the

context of. . .  piercing claim[s]" have frequently found privity where the party enjoys "extensive

ownership or control over the corporate entity" and "actively participate[d] in the prior

litigation") (citing cases).[4]

     Konover was and remains the controlling shareholder of *all* the Konover-related

defendants in the Maryland Action.  He is the sole shareholder of both KMC and DPMC.  *See*

---

[4] Konover previously relied upon Restatement (Second) of Judgments § 59(5) in arguing
that he is not precluded from relitigating the Maryland Findings.  His reliance on that provision
was, and continues to be, misplaced.  *First*, cases invoking § 59(5) involve instances involving
the entry of a default judgment against the corporation in the first action, and thus are at the
opposite end of the spectrum from this case, where the underlying judgment was the result of a
six-day trial, attended and participated in by Konover, and tested by multiple appeals, which
were pursued at Konover's direction.  *See North Atlantic Distribution, Inc. v. Teamsters Local
Union No. 430*, 497 F. Supp. 2d 315, 325 (D.R.I. 2007) (corporation and its president were not
liable under a default judgment entered against an affiliated company on an alter ego theory
because they did not have notice or an opportunity to defend the action against the affiliate);
*Bates Mktg. Assocs., Inc. v. Lloyd's Elecs., Inc.*, 190 N.J. Super. 502 (App. Div. 1983) (default
judgment entered against wholly-owned subsidiary of defendant corporations); *Hadford v. Credit
Bureau of Havre*, 1996 ML 96 (Mont. Dist. Ct. 1996) (default judgment against alleged business
conduit of defendant corporation).

     *Second*, the purpose of § 59(5) is to address the scenario that was at issue in *Zenith Radio
Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969), *i.e.*, where an alter ego "finding" or
stipulation made in a proceeding in which the alleged alter ego never had an opportunity to
litigate the veil-piercing issue is sought to be enforced against that alleged alter ego.  *Cf. Dudley
v. Smith*, 504 F.2d 579 (5th Cir. 1974) (rejecting argument that in a veil-piercing case there must
be full relitigation of substantive issues of liability and damages before alter ego can be held
liable for debtor's obligations); *see Restatement (Second) Judgments* § 59, cmt. g (citing *Zenith*
and *Dudley* for statement that "personal liability may be imposed only on a stockholder who had
a fair opportunity to litigate the basis of his liability and notice that personal liability is sought to
be imposed).  Konover is being afforded the opportunity to litigate the veil-piercing issues; there
is no basis to also allow him to also litigate issues already decided in Maryland.

Rule 56(a)(1) Statement at 2-3, doc. no. 706 (March 1, 2010).  He also owns 93 percent and 86

percent, respectively, of both DPPLP and Oriole.  *Id.*  Given this unity of interests, there is no

reason why Konover should now receive a second "opportunity to litigate the issues" decided

against these entities in the Maryland Action.  *See Bodnar*, 60 Md. App. at 536.

The unity of interest comes into clearest focus when one considers KMC's interest in defending

the Maryland Action and Konover's substantial interest in that defense.  Konover has made the

point many times in this case that the only asset of the borrower, DPPLP, was Diamond Point

Plaza, which the Trustee had the right to foreclose on regardless of any recourse liability

finding.[5]  The reason why there was such a vigorous defense of the Maryland Action – all the

way to Maryland's highest court – was because of the risk to Konover and his business that

KMC's guaranty would be triggered by a recourse liability finding.  Only one individual had

both the legal and financial incentives to defend the Maryland Action – Michael Konover.[6]

Further buttressing this conclusion is the fact that Konover was "an active participant" in the

Maryland Action.  *See id*.  Konover previously submitted a declaration attempting to downplay

his participation in that case, but the admissions in his declaration actually confirm his active

role.  Konover states that he appeared as a witness in the Maryland action.  Konover Decl. ¶ 10,

attached hereto as Exhibit B.  He states that he attended several days of the six-day trial.  *Id*. He

also admits that he personally directed the lengthy appeals process in the Maryland action.  *See*

*id*. ¶¶ 15-16.  Konover's extensive participation is more than sufficient to establish privity

---

[5] DPPLP also owned $633,000 in cash from rents collected prior to Konover's decision to
not have DPPLP make its monthly mortgage payment; Konover received that cash in a "cash
sweep" within days of the default.

[6] Of course, Konover also controlled the defense of the $633,000 fraudulent transfer
claim asserted against him personally.  Konover's suggestion that he defended the claim against
him in Maryland but did not actively participate in defending the much larger claim against
KMC is absurd on its face and belied by the facts.

between Konover and the corporate entities he owns and controls.  *See, e.g.*, *Bodnar*, 60 Md.

App. at 535-36 (finding privity where officers and directors "were fully aware of the nature and

object of the proceedings," "appeared at the trial," and "testified"); *In re Teltronics Services,*

*Inc.*, 762 F.2d 185, 190-91 (2d Cir. 1985) ("substantial shareholder" held to be in privity with

corporation where he "submitted an affidavit" and testified in the prior adjudication).

**b.**     **The Maryland Court's Findings Were Actually Litigated And**
**Essential To Judgment.**

Because Konover was a party to the Maryland Action, he is bound by that court's

findings on all issues "actually litigated" and "essential" to the judgment.  *Standard Fire*, 395

Md. at 456; see *Restatement (Second) of Judgments* § 27.  To apply this standard, a reviewing

court must examine the record in the prior adjudication and identify "the findings of ultimate

fact" that "necessarily lay behind th[e] judgment."  *Colandrea*, 761 A.2d at 909.  The goal is to

separate out the first court's fully "considered determinations" from other "determinations . . .

hav[ing] the characteristics of *dicta*."  *Restatement (Second) of Judgments* § 27, cmt. h.  In some

cases—particularly cases involving general jury verdicts—this inquiry may require a careful

parsing of the "testimony," jury "instructions," and verdict forms from the prior adjudication.

*Manikhi v. Mass Transit Admin.*, 360 Md. 333, 366 (2000).  But where, as in the Maryland

Action, the prior adjudication was tried to the court, the inquiry becomes a good deal more

simple.  The "express findings of fact and conclusions of law" entered by the judge will

generally make clear the issues necessarily determined by the court in reaching its judgment.  *See*

Wright & Miller, *Federal Practice and Procedure* § 4420.

In this case, the Maryland court conducted a six-day bench trial and then laid out, in

detailed 63-page findings, all of the issues that it actually and necessarily determined.  The court

detailed each step of its reasoning on each of the claims raised by the Trustee.  Most important

-12-

for present purposes, the opinion provided specific findings of fact in support of both:  the court's decision that the Diamond Point defendants fraudulently concealed from the lender the impending departure of Sam's Club from Diamond Point Plaza, *see Md. Findings* at 16-20; and the court's decision to hold Konover personally liable for the fraudulent transfer, *see id.* 39-40.

*First*, the Maryland court explicitly found that DPPLP and other entities owned and controlled by Konover fraudulently procured financing for the Diamond Point Plaza property from its lender (the Trustee's predecessor in interest).  The court found that DPPLP knew at the time it obtained the loan that Sam's was planning to relocate, *see* Maryland Findings at 19, and DPPLP intentionally and fraudulently withheld this information from the lender in order to obtain the loan, *see id.* at 31-33.  In light of these findings, which were explicitly affirmed on appeal, there can be no doubt that these issues were actually litigated and decided in the Maryland Action.  *See Diamond Point Plaza L.P.*, 929 A.2d at 946 (holding that Diamond Point "made a fraudulent misrepresentation in a commercial document, for the purpose of inducing [the lender] to extend a loan").  Nor can there be any doubt that the Maryland court's decision to impose recourse liability based on fraudulent concealment hinged on these essential factual findings.  *See id.* at 52 (essential elements of fraudulent concealment include both failure to disclose a material fact and "inten[t] to defraud or deceive").  The Maryland court's findings on these issues are therefore binding in this "second suit between the same parties."  *See Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 456 (2006).

*Second,* the findings of fact in the Maryland Action also make clear that the court actually and necessarily determined Konover's fraudulent transfer of Diamond Point funds and his attendant state of mind.  The opinion explained that, in November 2002, Diamond Point was left insolvent after a transfer of its $633,000 to Michael Konover.  *Id.*  The court found that the

"transfer was made without fair consideration"; that both DPPLP and Michael Konover "knew the $633,000 cash sweep would render" DPPLP insolvent; and that Konover "accepted the conveyance with the intention of further depleting Diamond [Point's] assets to deprive Wells Fargo" of money that "it was rightfully owed." *Id.* The court thus found that "Michael Konover received the transfer with the intent to hinder, defraud or delay [Diamond Point's] creditors, and in particular, Wells Fargo." *Id.* On appeal, the Maryland Court of Appeals agreed, stating that the trial court had correctly "see[n] the transaction for what it was—the fraudulent transfer of . . . funds from the reach of the creditors of Diamond Point to Konover." *Diamond Point Plaza L.P.*, 929 A.2d at 950.

These express findings are the lynchpin of the Maryland court's decision to impose personal liability against Konover. To enter that decision, the court needed to find that Konover received the funds with a fraudulent intent to avoid DPPLP's creditors. *See Berger v. High Gear Tire and Auto Supply*, 263 A.2d 507, 510 (Md. 1970) ("[e]ven if the grantor has a fraudulent intent, this will not vitiate or impair a conveyance *unless the grantee participates in the fraudulent intent*") (emphasis added). The finding was thus essential to the court's judgment, and it is now "conclusive" in any "subsequent action between the parties, whether on the same or a different claim.'" *See Murray*, 555 A.2d at 504, quoting *Restatement (Second) of Judgments* § 27.

<strong>c.    <u>The Issues Decided In The Maryland Action Are Again At Issue In This Case.</u></strong>

Both of these sets of previously litigated issues—DPPLP's fraudulent procurement of the loan and Michael Konover's fraudulent transfer—will be important issues at trial on the Trustee's veil-piercing claims. *See* Relevancy Memorandum §§ IV.A.3, IV.A.7.

-14-

Far from "confus[ing] the jury," *see* Konover Mem. at 7, the fraudulent procurement of Loan and the fraudulent transfer received by Konover are in fact important and material evidentiary issues.[7]

The Court has recognized that the jury here will need to determine whether Konover structured and executed the Portfolio Sales in November 2002 and February 2003 with intent "to avoid" KMC's "liabilit[ies]" to the Trustee. *Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 32079, at *25-26. The Maryland court's findings are highly probative on this key state-of-mind issue. The Maryland court found that, in November, 2002, Michael Konover received assets from DPPLP "with the intent to hinder, defraud or delay its creditors, in particular, Wells Fargo." *Md. Findings* at 38-40. That finding goes directly to Konover's state of mind. It demonstrates that Michael Konover had committed frauds in November, 2002, the same month in which he executed the initial Portfolio Sales and mere weeks before he took another $1.1 million out of KMC. The finding of fraudulent intent as to DPPLP thus tends to show that Konover acted with a similar intent when he drained KMC of its assets.[8]

--------

[7] Konover's memorandum wrongly suggests that the grant of summary judgment on other veil-piercing claims related to the Diamond Point defendants establishes that "the actions of these entities is [*sic*] not at issue in this case." Konover Mem. at 7  Quite the contrary, the grant of summary judgment says nothing one way or the other about the relevance of information relating to these entities on the Trustee's remaining veil-piercing claims. *See, e.g., Roe v. Sims*, 2007 U.S. Dist. LEXIS 22207, *21-*22 (C.D. Ill. 2007) (facts underlying a previously dismissed claim "may still be relevant and admissible evidence to support [a plaintiff's] remaining claims"); *Jones v. Blockbuster, Inc.*, 2003 U.S. Dist. LEXIS 12041, *8 (E.D. Pa. 2003) (same).

[8] Notwithstanding their relevance, Konover expresses concern that the findings might "be given undue weight by the jury." Konover Mem. at 11. But since issue preclusion applies to these findings, the jury could not possibly give them any more weight than the *conclusive and binding* weight which they are due. Konover also claims that the Maryland court's fraudulent-transfer findings constitute improper "other acts" evidence under Fed. R. Evid. 404(b). *See id.* The law of issue preclusion is not affected by the Rules of Evidence. Even if it were, however, the Maryland court's findings would clearly be proper evidence under Rule 404(b), as they go to both "motive" and "intent."

That the issues necessarily decided in the Maryland Action may be "evidentiary" in this case—rather than "ultimate" issues of liability—does not diminish the preclusive effect of the Maryland Findings.  There was a time, to be sure, when courts frequently limited issue preclusion to facts that were "ultimate" or decisive in the second case, as opposed to simply "mediate datum."  *See, e.g.*, *The Evergreens v. Nunan*, 141 F.2d 927, 930-31 (2d Cir. 1944) (L. Hand, J.) ("no fact decided in the first [case] conclusively establishes any 'mediate datum' in the second, or anything except a fact 'ultimate' in that suit"); *Restatement (First) of Judgments* § 336 (Supp. 1949) (same).  After an initial period of acceptance, however, this so-called "*Evergreens* rule" eventually fell out of favor.  *See* 18 Wright & Miller, *Federal Practice & Procedure* § 4424; *United States v. Kramer*, 289 F.2d 909, 917 (2d Cir. 1961) (Friendly, J.).  Courts came to realize that the distinction between "ultimate" and "mediate" facts did not "correspond[] . . . to any intelligible reasons for limiting preclusion."  *Synanon Church v. United States*, 820 F.2d 421, 426 (D.C. Cir. 1987).  The *Restatement (Second) of Judgments*, which the Maryland courts apply, also rejected the *Evergreens* rule in favor of an inquiry into "whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment."  *Id.* § 27, cmt. j; *see also Wise v. State*, 47 Md. App. 656, 663-64 (1981) (declining to "distinguish[] between ultimate facts and evidentiary facts for purposes of relitigation").

The Restatement (Second) approach applies here.  Michael Konover has already had a full opportunity to litigate the issues necessarily decided by the Maryland court's judgment.  Those issues are now settled, and Konover "deserves no rematch after a defeat fairly suffered."  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).

**B.** **The Federal Rules of Evidence Do Not Limit The Preclusive Effect Of The Maryland Court's Judgment.**

**1.** **Limitations On Admitting Judicial Findings Into Evidence Have No Impact On The Law Of Collateral Estoppel.**

Konover's motion *in limine* does not dispute, and at one point appears to admit, that under the law of issue preclusion "Mr. Konover may not be permitted to contest" the Maryland court's findings of fact. Konover Mem. at 11. Instead, Konover argues that judicial findings from a previous case are inadmissible under the Federal Rules of Evidence. *See, e.g.*, Fed. R. Evid. 801, 803.

It is certainly true that judicial findings of fact, when relied upon for their truth, are hearsay and generally do not qualify under the public-records exception of the federal rules. Fed. R. Evid. 803(8); s*ee, e.g., Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993). The problem for Konover, however, is that collateral estoppel is not an evidentiary doctrine. It is a rule of substantive law, and the Federal Rules of Evidence set no limits on its reach. *See, e.g.,* Fed. R. Evid. 803 adv. comm. notes (hearsay rules do "not deal with the substantive effect of the judgment" and come into play only "[w]hen . . . the doctrine of *res judicata* does not apply to make the judgment either a bar or a collateral estoppel"). As such, the preclusive effects of the Maryland court's factual findings are in no way linked to or dependent upon their evidentiary admissibility. *See, e.g.*, *United States v. De La Rosa*, 171 F.3d 215, 219-20 (5th Cir. 1999) (noting that a prior judgment is generally inadmissible and irrelevant "once it is determined" that collateral estoppel does not apply).[9]

---

[9] *See also Torah Soft, Ltd. v. Drosnin*, 2003 U.S. Dist. LEXIS 16273, *3-*4 (S.D.N.Y. 2003) (the rule that a "judicial finding in one case is inadmissible hearsay when proffered as evidence in another action" is "fine as far as it goes," but it does not extend to situations where "judicial findings in the earlier case may have preclusive effects in the latter").

Limitations on admitting judicial findings into evidence, such as those relied upon by Konover, have been crafted to avoid rendering collateral estoppel superfluous. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-32 (5th Cir. 1998) ("broad judicial notice" of factual findings would threaten to make collateral estoppel "superfluous"); *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.*, 146 F.3d 66, 71 (2d Cir. 1998). There is no such concern here because collateral estoppel is the basis for taking judicial notice of the Maryland Judgment and Findings. Strong, *McCormick on Evidence* 451 (5th ed. 1999) (courts may decline "to admit judgments in previous cases *if neither res judicata nor collateral estoppel*" are applicable) (emphasis added).

**2.      The Court Should Instruct The Jury During Trial That the Maryland Court Made Findings That Are Bindings on the Parties.**

In this case, for the reasons explained above, collateral estoppel *does* apply. The question before the court is thus a preclusion issue—not an evidentiary issue—and the Court should treat the Maryland Findings as it would treat any other prior determination entitled to preclusive effect.

Specifically, the Court should instruct the jury during trial that: (i) in the Maryland Action Judge Souder entered judgment and determined the facts highlighted in the attached Exhibit A; and (ii) the jury must accept Judge Souder's findings as binding and correct in its deliberations in this case. *E.g.*, Devitt & Blackmar, *Federal Jury Practice and Instructions* 636 (3d Ed. 1977) (sample collateral estoppel instruction informing jury that "[t]here has been a judicial determination in litigation to which the defendant was a party" and "[t]he defendant is bound by that determination"); American Bar Association, *Model Jury Instructions in Antitrust Cases*, at G-26 to G-29 (describing "standard collateral estoppel instruction[s]," which operate much like an instruction relating to a "stipulated or judicially-noticed fact"); *see* Woolley, *Mass*

*Torts and the Seventh Amendment's Reexamination Clause*, 83 Iowa L. Rev. 499, 521 (1998)

("Preclusion law traditionally presumes a jury will follow instructions to give the findings of an

earlier jury preclusive effect");  *New Eng. Estates, LLC v. Town of Branford*, 294 Conn. 817,

n.29 (2010) (noting that "[t]he court instructed the jury that" certain prior determinations were

"to be given preclusive effect in the present case").[10]

## IV.   CONCLUSION

The motion *in limine* should be denied, and the Court should instruct the jury on the

preclusive effects of the Maryland court's findings.

PLAINTIFF,
WELLS FARGO BANK, N.A., TRUSTEE


By: /s/ Erick M. Sandler
    John B. Nolan (ct 05583)
    Erick M. Sandler (ct 25029)
    Jeffrey P. Mueller (ct 27870)
    Day Pitney LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbnolan@daypitney.com
    Email: emsandler@daypitney.com
    Email: jpmueller@daypitney.com

---

[10] *See also Adams v. United States*, 2011 U.S. Dist. LEXIS 116323 (D. Idaho 2011) (noting that the court would "instruct[] the jury on the preclusive effect" of a previous jury's verdict); *Wellogix, Inc. v. Accenture, LLP*, 2011 U.S. Dist. LEXIS 119298, at *14 (S.D. Tex. 2011) ("Our April 22, 2011 Order held that this finding was entitled to preclusive effect against Wellogix, which was reiterated in [a] jury instruction" at trial); *Wash. Alder, LLP*, 2004 U.S. Dist. LEXIS 9650, at *18-19 (D. Or. 2004) (noting that court planned to "consult with parties regarding the manner of instructing the jury about [its] preclusion determinations," and that it would craft these instructions so as "to minimize any prejudice to Defendant"); *R.J. Reynolds Tobacco Co. v. Brown*, 70 So.3d 707 (Fla. App. 2011) ("the trial court properly applied the [earlier] findings, instructing the jury on the[ir] issue preclusion effect").

OF COUNSEL:

Jeff Joyce (phv 0871)
Lindsey Simmons (phv 04273)
Joyce, McFarland + McFarland LLP
712 Main Street, Suite 1500
Houston, TX 77002
Phone: (713) 222-1112
Fax: (713) 513-5577
Email: jjoyce@jmmllp.com
Email: lsimmons@jmmllp.com

## <u>CERTIFICATION</u>

I hereby certify that on this 27th day of January, 2012, the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's CM/ECF system.


_/s/   Erick M. Sandler_____
Erick M. Sandler